IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNTER WYLIE,<br>　　Plaintiff,<br><br>v.<br><br>BIG THIRST, INC. AND MATT<br>MCGINNIS,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:24-cv-01512-ADA |

## DEFNDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Big Thirst, Inc. and Matt McGinnis file this Motion for Summary Judgment against Plaintiff Hunter Wylie and respectfully show the Court:

### I.   INTRODUCTION

1.   Defendants file this motion for summary judgment pursuant to the instructions of the Court at the hearing on September 30, 2025. The Court said at the hearing it would give Plaintiff 30 days to find the email he claimed met the requirements of the Statue of Frauds. The Court invited Defendants to file a motion for summary judgment if the email was not produced. Plaintiff did not produce the email, so Defendants file this motion for summary judgment.

### II.   SUMMARY JUDGMENT STANDARD

2.   Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Firemans Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296

1

(5th Cir. 1997). When the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir. 1995).

## III. SUMMARY JUDGMENT EVIDENCE

3. This motion is supported by the declarations of Matt McGinnis and John Thomas contained in Defendants' Appendix filed herewith.

## IV. FACTUAL BACKGROUND

4. This is a suit on the promissory note – that Defendants did not sign.

5. Plaintiff Hunter Wylie ("Plaintiff") alleges Lauren Wylie Donoho ("Donoho") and Defendant Matt McGinnis co-founded Defendant Big Thirst, Inc, an ecommerce company in the liquor industry.[1]

6. Plaintiff alleges he loaned $50,000 ***to Donoho*** as evidenced by a Loan Agreement and Promissory Note "the Note".[2] A copy of the Note is attached as Exhibit 1 to the declaration of Matt McGinnis, Def. App. 2-9.

7. Donoho is Plaintiff's daughter.[3]

8. Plaintiff does not allege either Defendant signed the Note. Rather, he alleges in ¶12 of his complaint that Defendant "McGinnis on behalf of Big Thirst expressly assumed the Note the day after it was signed."[4] Plaintiff does not allege in his complaint that assumption was in a writing signed by either Defendant.

---

[1] Plaintiff Hunter Wylie's Original Complaint [Doc 1] ¶8. That allegation is not true, but that is irrelevant for this motion.
[2] Plaintiff Hunter Wylie's Original Complaint [Doc 1] ¶11.
[3] McGinnis Declaration ¶4.
[4] Plaintiff Hunter Wylie's Original Complaint [Doc 1] ¶12.

9. Plaintiff loaned his daughter, Donoho, $50,000. Plaintiff did not loan the money to Defendants. For whatever reason, Plaintiff and Donoho chose, key word "chose," to have the loan be to Donoho instead of to Big Thirst. Defendants did not receive $50,000 from Plaintiff - Donoho did. Furthermore, Donoho did not contribute or loan $50,000 to Big Thirst after receiving the loan from her father. Instead, she contributed two $10,000 deposits from her personal account and said it could only be done in that amount at a time. Donoho also spent approximately $23,000 more on Big Thirst's behalf at various times for various items from her personal account.[5]

10. McGinnis, as agent for Big Thirst, agreed Big Thirst would pay **Donoho** back for the money she contributed to Big Thirst or spent on its behalf. Defendants never agreed to pay Plaintiff for the Note. Neither Defendant signed the Note. McGinnis never agreed to assume the Note, either individually or on behalf of Big Thirst. In fact, McGinnis never had any communications whatsoever with Plaintiff until about two years after the Note was signed when Plaintiff first alleged Big Thirst was liable on the Note.[6]

11. There was litigation, both in state[7] and federal court[8], between Big Thirst and Donoho after the Note was signed. Judge Pitman sanctioned Donoho $80,137.50 in that litigation which was ultimately settled with Big Thirst forgiving the sanctions and repurchasing Donoho's shares in Big Thirst for $370,000. The $370,000 settlement was more than enough for Donoho to pay her father back on the Note. Significantly, Donoho's attorney in that litigation was Lema Mousilli, *the same attorney who represents Plaintiff* in this case. The settlement agreement in that case was signed in October 2024. This case was filed two months later.[9]

---

[5] McGinnis Declaration ¶5, Def App 1.
[6] McGinnis Declaration ¶6, Def App 2.
[7] Big Thirst, Inc. v. Laurent Wylie Donoho, No. D-1-GN-22-001678, in the 459th District Court, Travis County, Texas.
[8] Big Thirst, Inc. v. Laurent Wylie Donoho, A 22-CA-467 RP in the Western District of Texas
[9] McGinnis Declaration ¶7, Def App 2.

12. Plaintiff brings claims for breach of contract and unjust enrichment. Defendants are entitled to summary judgment on both claims.

## V. ARGUMENT AND AUTHORITIES

### BREACH OF CONTRACT

12. Defendants are entitled to summary judgment on Plaintiff's claim for breach of contract because (1) it is barred by the statute of frauds, and (2) Defendants never assumed the note.

*Statute of Frauds*

13. Plaintiff's claims against both Defendants are barred by the statute of frauds. The Texas statute of frauds requires that "a promise by one person to answer for the debt, default or miscarriage of another person" "is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." Tex. Bus. & Comm. Code Ann. §26.01. "The purpose of the statute of frauds is to prevent fraud and perjury in certain types of transactions by requiring certain agreements to be in writing and signed by the parties." *Lone Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 859 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The court in *First State Bank of Mathis v. McCoy*, 16 S.W.2d 340, 341 (Tex. App.—San Antonio 1929, no writ), held that a wife's oral promise to the bank to pay a note signed by her husband after her husband signed it was barred by the statute of frauds.

14. Plaintiff does not allege any facts that would bring this case within an exception to the statute of frauds. The allegation that Defendants "expressly assumed" the contract is a legal conclusion. It is not supported by any facts. Plaintiff does not allege how the contract was

4

assumed, when it was assumed or any circumstances surrounding the alleged assumption. This was the basis of Defendants' Motion to Dismiss.[10]

15. Plaintiff's Response to Defendants Motion to Dismiss [Doc 10] alleged in ¶24:

"in this case Defendants confirmed their assumption of the contract in writing the day after the contract was signed **via email**. Compl. at ¶ 12. The contract itself was a full written contract that contained all essential elements of the parties' agreement. *Id* at ¶ 11. Defendants do not dispute this fact. Thus, in order for Defendants to assume the contract, all that was needed is a writing by the Defendants evidencing their assumption of said contract. **The email** which was written by Mr. McGinnis and was on Big Thirst's letterhead is sufficient to satisfy Texas' statute of frauds." (emphasis added)

16. Defendants have been adamant since the beginning of this case that no such email exists. Defendants' Reply to Plaintiff's Response to Defendant's Motion to Dismiss states in ¶4:

Plaintiff's claim that the extrinsic email was an assumption of the debt is a legal conclusion. The email was neither attached nor quoted, rather it was just characterized as an "assumption" which is a legal conclusion. Whether an email satisfies the statute of frauds depends on what it says. *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469-70 (5th Cir. 2002). Plaintiff's [] response fails because it improperly injects extrinsic evidence, and that extrinsic evidence is conclusory and insufficient to boot. Defendants are not trying to waste anyone's time [by filing a motion to dismiss]. They do not believe such an email exists and that is why Plaintiff has not quoted or attached it.

17. Defendants' Opposed Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss [Doc 17] states:

Defendants moved to dismiss because the statute of frauds squarely bars Plaintiff's claim. Plaintiff insists there is an email that meets the statute's writing requirement—yet this supposed "smoking gun" has never been disclosed, either in initial disclosures or after repeated, polite requests. It simply does not exist. ¶1

Given the utter lack of any evidence of a signed writing meeting the requirements of the statutes of frauds, requiring Defendants to engage in time consuming and burdensome discovery would be patently unfair. ¶2

There is only one reasonable inference from Plaintiff's repeated refusal to produce what he avers is a writing satisfying the statute of frauds: it doesn't exist. ¶3

Plaintiff claims an "email" proves Defendants assumed the debt. Despite repeated requests—including multiple meet-and-confer emails—Plaintiff has not produced any such

---

[10] Defendants' Motion to Dismiss [Doc 8]

5

email. See Exs. 1-5. Please read these emails. Plaintiff has also not produced the email in his initial disclosures. Ex. 6. The best inference is that no such email exists, and Plaintiff's claims fail accordingly. ¶5. [Those exhibits are resubmitted in support of this motion for summary judgment as Exhibits 1-6 to the Declaration of John Thomas, Def App 10-29.]

18.     The Court entered text orders on September 5 denying Defendants' motion to dismiss and Defendants' motion to stay discovery.

19.     The Court held a hearing on Plaintiff's Motion to Compel Discovery Responses and for Sanctions [Dkt. 26] on September 30, 2025. During the hearing, the Court inquired about the missing email. Plaintiff's counsel said they were searching for it. [This case was filed nine months earlier and the missing email had been the central issue during the intervening nine months]. The Court said it would give Plaintiff 30 days to produce the missing email and said it would allow Defendants to file a motion for summary judgment if it was not produced. *See*, Fed. R. Civ. P. 12(d).

20.     That 30 days expired without Plaintiff producing the email. When this deficiency was pointed out by Defendants, Plaintiff tried to back away from their claim there was an email.

21.     Plaintiff produced 623 pages of documents before the 30-day deadline. There was no email. Defendants' counsel wrote Plaintiff's counsel:

> "Judge Albright gave you 30 days to find and produce the email referred in Paragraph 24 of Plaintiff Hunter Wylie's Response to Defendants' Motion to Dismiss that states: 'Similarly, in this case Defendants confirmed their assumption of the contract in writing the day after the contract was signed via email.' … There is no email like that in the 623 pages you just produced. Please send me the email as the judge ordered so we all know which one it is and also know that your client's search has been completed and there are no other emails."[11]

---

[11] Thomas Declaration, Def App 30-32.

22. Plaintiff's counsel responded by referencing two documents, Wylie 004 and Wylie 005.[12] Those documents are attached on pages 33 and 34 of the Appendix. Neither of those documents satisfy the statute of frauds.

23. There is no assumption in Wylie 004. Donoho, who was also known as Lauren Wylie, writes "***I'll*** be paying interest out of pocket." (emphasis added) Matt McGinnis responds "As monthly payments don't start for 2 years, why will ***you*** be paying interest out of pocket." (emphasis added) There is no promise by Defendants to pay or assume anything, and certainly not a promise to Plaintiff. Plaintiff was not on the email chain, so no promise was made to him. Both Donoho and Mr. McGinnis are speaking in terms of ***Donoho*** paying the interest, not either Defendant paying it. Thus, there is no promise by Defendants to pay the debt in this email.

24. Wylie 005 is a text thread between Donoho and Mr. McGinnis. Donoho texts McGinnis: "We are all set, no payments for 2 years." McGinnis replies: "Thank you." There is no assumption or promise to pay by McGinnis.  Nor does Wylie 005 support Plaintiff's contention that "in this case Defendants confirmed their assumption of the contract in writing the day after the contract was signed via email." Wylie 005 is a text, not an email. There is no promise by Defendants to pay or assume anything, and certainly not a promise to Plaintiff. Plaintiff was not on the text thread, so no promise was made to him.  There is no promise of any type regarding the Note in this thread.

25. Plaintiff alleges in ¶12 of his complaint that Defendant Matt "McGinnis on behalf of Big Thirst ***expressly*** assumed the Note the day after it was signed." (emphasis added).[13] "To expressly assume a contract 'there must be promissory words or words of assumption on behalf of the assignee.'" *Blue Sky Satellite Sales & Theater Services, LLC v. K18th, LLC*, 2023 WL 8431244,

---

[12] Thomas Declaration, Def App 30-32.
[13] Plaintiff Hunter Wylie's Original Complaint [Doc 1] ¶12.

at *3 (Tex. App.—Houston [14th Dist.] Dec. 5, 2023, no pet.), *quoting*, *Wagner v. Apache Corp.*, 627 S.W.3d 277, 286 (Tex. 2021). There were no "promissory words or words of assumption" in either Wylie 004 or Wylie 005. Thus, Plaintiff's claims are barred by the statute of frauds. Summary judgment is appropriate when there are no promissory words or words of assumption. *Id*.

26. Plaintiff also alleges that Defendants "confirmed their assumption of the Contract [Note]" under oath on April 11, 2022, and again on April 21, 2022.[14] First, there was no assumption with promissory words or words of assumption, so there was nothing to "confirm." Second, there is no exception to the statue of frauds for admissions under oath. *Owens v. Curry, Tr. of Milton C. Curry & Mamie W. Curry Revocable Living Tr.*, No. 02-22-00182-CV, 2023 WL 3017928, at *5 (Tex. App.—Fort Worth Apr. 20, 2023, pet. denied).

27. There is an exception to the statute of frauds contained in the UCC for admissions under oath. The UCC requires all contracts for the sale of good for $500 or more be in writing, except "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted". Tex. Bus. & Com. Code Ann. § 2.201. However, the UCC does not apply here since this case does not involve the sale of goods. Tex. Bus. & Com. Code Ann. §2.102 ("this chapter applies to transactions in goods."). There is no similar exception under the statute of frauds in Tex. Bus. & Comm. Code Ann. §26.01 which applies here.

28. When the legislature makes an exception in one statute and not the other, the courts must assume the omission in the other was intentional. *Walker Cnty. ESD No. 3 v. City of Huntsville*, 658 S.W.3d 807, 819 (Tex. App.—Waco 2022, pet. denied). "We presume that the

---

[14] Plaintiff Hunter Wylie's Original Complaint [Doc 1] ¶12.

Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). Using these rules of construction, it is impossible for a court to create an exception to Tex. Bus. & Comm. Code Ann. §26.01 for testimony under oath.

### *There was no Assumption*

29.     Even putting the statute of frauds aside, there are no facts showing Defendants assumed the note. Defendants never agreed to pay Plaintiff Hunter Wylie. Defendants never uttered any promissory words or words of assumption with respect to the Note to Hunter Wylie or anyone else. Defendants never sent an email (or any other communication) confirming an assumption of the Note the day after it was signed or at any other time. In fact, McGinnis never had any communications whatsoever with Plaintiff until about two years after the Note was signed when Plaintiff first alleged Big Thirst was liable on the Note.[15]

30.     As just shown, Wylie 004 and Wylie 005 do not evidence an assumption.

31.     McGinnis did not confirm the assumption under oath either – contrary to Plaintiff's assertion that he did. The testimony under oath Plaintiff relies on occurred in the litigation between Big Thirst and Donoho that was described above. Donoho's attorney in that litigation was Lema

---

[15] McGinnis Declaration ¶6, Def App 2.

Mousilli, who's name at the time was Lema Barazi – the same attorney representing Plaintiff in this matter.

33. Defendants did not "confirm[] their assumption of the Note" under oath on April 21, 2022 - not anywhere close. At no point did Mr. McGinnis ever confirm Defendants' assumption of the Note or admit they had assumed it, and there are certainly no promissory words or words of assumption. On the contrary, it was clear throughout the transcript that Donoho obtained the loan from her father and then ***Donoho*** in turn contributed that money to Big Thirst who agreed to pay ***Donoho***, not Plaintiff.

> Ms. Mousilli said in her opening statement "She [Donoho] even borrowed $50,000 from her father to loan the company." Def App 37. That is totally inconsistent with the notion Defendants assumed the Note, because if they had, there would be no loan from Donoho to the company.

> McGinnis testified on direct that Donoho secured the loan from her father, that Donoho signed the loan agreement, and that Big Thirst was to repay ***Donoho*** for her contributions to Big Thirst. Def App 37, 40, 4).

> On her cross of McGinnis, Ms. Mousilli emphasized that it was Donoho who had loaned the money to Big Thirst, not her father, the Plaintiff. Def App 54-55. Ms. Mousilli even fought with McGinnis to get him to admit that. *Id*.

> Similarly, on direct examination, Ms. Mousilli asked her client Donoho "What loans, if any, did ***you*** make to Big Thirst?" Ms. Donoho answered, "***I*** provided a $50,000 loan to Big Thirst." Def App 50.

33. Defendants did not "confirm[] their assumption of the Note" under oath on April 11, 2022, either. That was the date Ms. Mousilli took McGinnis' deposition in the prior litigation. At no point did Mr. McGinnis ever confirm Defendants' assumption of the Note or admit they had assumed it, and there are certainly no promissory words or words of assumption. McGinnis testified:

> Donoho obtained a $50,000 loan from her father to fund her initial capital contribution of Big Thirst. Def App 53, 56, 57)

There was no written agreement, no verbal agreement and no agreement of any kind between Big Thirst and Plaintiff for that loan. Def App 53-54.

There was a verbal agreement between Big Thirst and Donoho to pay *Ms. Donoho* back. Def App 54-55.

Several of Ms. Mousilli's questions state that Ms. Donoho made the loan to Big Thirst and Ms. Mousilli elicited testimony that Big Thirst would pay ***Donoho*** back. Def App 54-56.

"Q: And that initial monetary contribution was a loan from her father to Big Thirst, correct? A: No. Q: How is that incorrect? A: That was a loan to her. Q: From? A: Her father. Q: Which Big Thirst promised to repay to *her*? A: We would have paid it back to *Lauren Wylie*" [who is also known as Lauren Donoho and whose full name was Lauren Wylie Donoho]. Def App 58.

The loan was reflected on Big Thirst's books as "Loan from Lauren" Def App 59, 61-63.

The $50,000 from Donoho's father "was going to be loaned to Big Thirst but it got loaned to Lauren Wylie." Def App 64-65.

Ms. Mousilli then questioned McGinnis about an email he had written Jacquelyn Tomlinson and Ms. Donoho several months after the loan where he wrote "We have a 50,000 loan from Wylie's father, rather than an equity investment." "Q: So here you're acknowledging that there is a loan to Big Thirst? A: Correct. Q: From Ms. Donoho's father, correct? A: Yes. Q: This loan, the 50k loan from Ms. Donoho's father to Big Thirst has not been repaid has it? A: There is no loan from Wylie's dad to Big Thirst. It was made to her. Q: When you say it was made to her, why do you believe it was made to her? A: Because it was written to her as an individual with no name of Big Thirst on it. She doesn't sign it as Big Thirst. It's not written to Big Thirst. Q: It was the intention of everyone that it was to Big Thirst, Inc., wasn't it? A: Correct. Q: And we have proof of that here where you say: We have 50,000 family loan from Wylie's father, correct? A: Correct. Q: And Wylie is Lauren Donoho, correct? Yes. Q: So we have an acknowledgment that this 50k loan was to Big Thirst, Inc. from Wylie's or Lauren Donoho's father correct? A: Correct." Def App 66-68.

34.     Defendants did not "confirm their assumption of the Note" in this deposition. All that last exchange proves is that Mr. McGinnis loosely worded an email saying "We have a 50,000 loan from Wylie's father, rather than an equity investment" instead of the longer version of "We have a $43,000 loan from Wylie who in turn borrowed the money she lent Big Thirst from her father, rather than an equity investment."

That is not a judicial admission.

11

> The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery.

*Owens*, 2023 WL 3017928, at *5. Among other things, it was not deliberate, clear and unequivocal. McGinnis explained in the middle of the questioning that the loan from Plaintiff was to his daughter, not Big Thirst and explained why. That was also clear from all the prior testimony by McGinnis about the loan earlier in the deposition. It was also clear from McGinnis' and Donoho's testimony at the hearing on the temporary injunction *10 days later* on April 21, 2022, quoted above. Ms. Mousilli said in her opening statement for that temporary injunction hearing "She [Donoho] even borrowed $50,000 from her father to loan the company." Cross examination over lose language in one email cannot overcome (1) the plain language of the Note, (2) the parol evidence rule, (3) the statute of frauds, (4) the repeated testimony from McGinnis in the deposition – including in the cross over the email, (5) Donoho's testimony, and (6) Ms. Mousilli's opening statement.

## UNJUST ENRICHMENT

35.     Defendants are entitled to summary judgment on Plaintiff's claim for unjust enrichment because (1) Defendants have not been unjustly enriched, (2) unjust enrichment cannot be used to avoid the statute of frauds, (3) Defendants did not obtain a benefit from Plaintiff, (4) Defendants had no communications with Plaintiff, so there could be no fraud, duress, taking undue advantage of Plaintiff by Defendants, and (5) there was no fraud, duress or undue advantage, and (6) unjust enrichment is not a cause of action.

***Defendants have not been unjustly enriched.***

36.     Defendants have not been unjustly enriched. They paid Donoho back. They paid her back 10 times over with the $370,000 settlement payment plus the $80,137.50 in forgiven sanctions.

***Unjust enrichment cannot be used to avoid the statute of frauds***

37.     Unjust enrichment cannot be used to avoid the statute of frauds. A plaintiff who has had its breach of contract claim barred by the statute of frauds cannot avoid that result with a claim for unjust enrichment, otherwise the statute of frauds becomes meaningless. *Moore v. Bearkat Energy Partners, LLC*, No. 10-17-00001-CV, 2018 WL 683754, at *8-9 (Tex. App.—Waco Jan. 31, 2018, no pet.).

***Defendants did not obtain a benefit from Plaintiff***

38.     Plaintiff has no claim for unjust enrichment because Defendants did not obtain a benefit from Plaintiff. "A party may recover under the unjust enrichment theory when one person **has obtained a benefit from another** by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (emphasis added). "Unjust enrichment includes a transfer **to the defendant by the plaintiff**, resulting in a material gain to the defendant and material loss by the plaintiff." *Banion v. Geovera Specialty Ins. Co.*, No. CV H-15-1595, 2016 WL 7242536, at *3 (S.D. Tex. Dec. 15, 2016) (emphasis added). Unjust enrichment "requires showing a 'nexus' between the parties, such as "a **transfer to the defendant by the plaintiff**, resulting in a material gain to the defendant and material loss by the plaintiff." *Jyue Hwa Fu v. Yeh Chin Chin*, No. 3:18-CV-2066-N-BN, 2020 WL 7049161, at *6 (N.D. Tex. Oct. 23, 2020), report and recommendation adopted, No. 3:18-CV-2066-N-BN, 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020) (emphasis added). Unjust enrichment is a claim belonging to the "giving party" against the "enriched party." *Sandoval v. G Town Entm't, Inc.*, No. EP-16-CV-262-DB, 2017

WL 5054288, at *9 (W.D. Tex. Aug. 29, 2017). Plaintiff did not transfer the money to Defendants; he transferred the money ($50,000) to his daughter. His daughter then contributed two $10,000 deposits from her personal account and said it could only be done in that amount at a time. Donoho also spent approximately $23,000 more on Big Thirst's behalf at various times for various items from her personal account.[16] Defendants never even got $50,000. Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim because they received nothing of value from Plaintiff. *Sandoval,* 2017 WL 5054288, at *9.

***Defendants had no communications with Plaintiff***

39.  "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros.*, 832 S.W.2d at 41. Defendants had no communications with Plaintiff around the time the loan was made. The only communications Defendants had with Plaintiff were about two years later when Plaintiff started asserting Defendants had assumed the Note. Thus, Defendants could not have committed fraud, put Plaintiff under duress, or taken undue advantage of him. *Moore v. Bearkat Energy Partners, LLC*, No. 10-17-00001-CV, 2018 WL 683754, at *9 (Tex. App.—Waco Jan. 31, 2018, no pet.).

***There is no fraud, duress or undue advantage***

40.  The only alleged wronging here is that Defendants assumed the loan. As proven above, Defendants did not assume the loan. Thus, summary judgment is proper because there is no fraud, duress, or undue advantage. *Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, No. SA-21-CV-00768-XR, 2022 WL 20508282, at *8 (W.D. Tex. Dec. 21, 2022).

***Unjust enrichment is not an independent cause of action***

---

[16] McGinnis Declaration ¶5. Def App 1.

41. "[U]njust enrichment is not an independent cause of action but is instead a theory upon which an action for restitution may rest." *Roach v. Berland*, 2015 WL 5097987, at *2 (N.D. Tex. Aug. 31, 2015). *See also*, *Nacogdoches Heart Clinic, P.A. v. Pokala*, 2013 WL 451810, at *18 (Tex. App.—Tyler Feb. 6, 2013, pet. denied); *Moore v. Bearkat Energy Partners, LLC*, 2018 WL 683754, at *5 n.3 (Tex. App.—Waco Jan. 31, 2018, no pet.); *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.); *Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.); *Oxford Fin. Companies, Inc. v. Velez*, 807 S.W.2d 460, 465 (Tex. App.—Austin 1991, writ denied). The growing consensus among Texas courts of appeal and federal district courts in Texas is that unjust enrichment is not a separate cause of action. *Denicus v. Bosacker*, 2021 WL 2715978, at *8 (W.D. Tex. Jan. 26, 2021). As a result, federal courts, including judge Hightower and others in this district, grant motions to dismiss causes of action for unjust enrichment. *See*, *Granting Hands LLC v. Rad Exotics LLC*, 2024 WL 3995404, at *12 (N.D. Tex. July 31, 2024); *Denicus,* 2021 WL 2715978, at *8; *Llort v. BMW of N. Am., LLC*, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020); *Roach*, 2015 WL 5097987, at *2-3. 10.

## ATTORNEY'S FEES

42. Defendants have pled for attorney's fees under the terms of the loan. Should this motion be granted, Defendants request leave to file a motion for attorney's fees.

## **PRAYER**

For the foregoing reasons, Defendants pray that this Court grant Defendants' Motion for Summary Judgment and allow Defendants to file a motion for their attorney's fees.

Dated: November 12, 2025           Respectfully Submitted,

                                          */s/John W. Thomas*
                                          JOHN W. THOMAS

        State Bar No. 19856425
        THOMAS WILLIAMS MCCONNELL PLLC
        2104 San Antonio Street
        Second Floor
        Austin, Texas 78701
        Telephone: (512) 495-1447
        Email: jt@twmattorneys.com

        *ATTORNEY FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record listed below via e-mail and through the Court's e-filing portal on November 12, 2025.

Lema Mousilli
MOUSILLI LAW, PLLC
11807 Westheimer Road
Suite 550, PMB 624
Houston, TX 77077
Telephone: (281) 305-9313
Email: lema@mousillilaw.com
*Attorney for Plaintiff*

        */s/ John W. Thomas*
        John W. Thomas