**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HUNTER WYLIE,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 1:24-CV-01512-DAE** |
| | § | |
| | § | **(JURY DEMANDED)** |
| **BIG THIRST, INC. and MATT** | § | |
| **MCGINNIS,** | § | |
| *Defendants*. | § | |

---

**PLAINTIFF'S RESPONSE TO**
**DEFNDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

      **COMES NOW**, Plaintiff, Hunter Wylie ("**Plaintiff**"), in the above-styled and numbered cause, and respectfully file this Plaintiff's Response to Defendants Big Thirst, Inc. and Matt McGinnis's Motion for Summary Judgment (the "**Response**" to the "**Motion**"), respectfully requesting this Honorable Court to deny the Motion, including for those reasons set forth hereinbelow, and, in support thereof, would respectfully show unto this Honorable Court as follows:

TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

   **A.**  Cases ............................................................................................................ iii

   **B.**  Statutes ......................................................................................................... v

   **C.**  Rules ............................................................................................................. v

   **D.**  Treatises ....................................................................................................... v

II.   Introduction ................................................................................................................. 1

III.  Statement of Facts ....................................................................................................... 2

IV.  Issues Presented .......................................................................................................... 6

V.   Summary Judgment Standard ...................................................................................... 6

VI.  Argument and Authorities ........................................................................................... 9

   A.  Legal Principles .......................................................................................... 9

      1.  Breach of Contract. ............................................................................... 9

      2.  Unjust Enrichment. ............................................................................... 9

   B.  Defendants Fail To Negate Plaintiff's Breach of Contract Claim. ................................. 10

      1.  The Statute Of Frauds Does Not Bar Enforcement In This Case. ................................ 10

      2.  Even if the Statute of Frauds is found to apply, exceptions preclude its application. .. 13

      3.  Mrs. Donoho signed the Note as an agent of Big Thirst and with full authority to do so. 16

   C.  Defendants Fail To Negate Plaintiff's Quantum Meruit/Unjust Enrichment Claim. ....... 17

VII.  Conclusion and Prayer for Relief ................................................................................... 20

# TABLE OF AUTHORITIES

**A.** <u>Cases</u>

*Alexander v. Eeds,*
  392 F.3d 138 (5th Cir. 2004) ................................................................................. 8
*Amoco Prod. Co. v. Smith,*
  946 S.W.2d 162 (Tex. App. 1997) ....................................................................... 18
*Armstrong v. Am. Home Shield Corp.,*
  333 F.3d 566 (5th Cir. 2003) ................................................................................. 8
*Axxiom Mfg., Inc. v. McCoy Invs., Inc.,*
  846 F. Supp. 2d 732 (S.D. Tex. 2012) .................................................................. 8
*Baptist Mem. Hosp. Sys. v. Sampson,*
  969 S.W.2d 945 (Tex. 1998) ............................................................................... 16
*Baranowski v. Hart,*
  486 F.3d 112 (5th Cir. 2007) ................................................................................. 8
*Bashara v. Baptist Memorial Hospital System,*
  685 S.W.2d 307 (Tex. 1985) ............................................................................... 20
*Bocchi Americas Associates Inc v. Commerce Fresh Mktg. Inc.,*
  515 F.3d 383 (5th Cir. 2008) ........................................................................ 11, 12
*Botello v. Misener–Collins Co.,*
  469 S.W.2d 793 (Tex. 1971) ............................................................................... 11
*Boudreaux v. Swift Transp. Co., Inc.,*
  402 F.3d 536 (5th Cir. 2005) ............................................................................ 8, 9
*Byers v. Dall. Morning News, Inc.,*
  209 F.3d 419 (5th Cir. 2000) ................................................................................. 7
*Campbell v. Northwestern National Life Insurance Co.,*
  573 S.W.2d 496 (Tex. 1978) ................................................................................. 9
*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................... 7
*Chastain v. Cooper & Reed,*
  152 Tex. 322, 257 S.W.2d 422 (1953) ................................................................ 16
*City of Ingleside v. Stewart,*
  554 S.W.2d 939 (Tex. Civ. App.—Corpus Christi 1977, *writ ref'd n.r.e.*) ......... 9, 10
*Cobb v. Johnson,*
  101 Tex. 440, 108 S.W. 811 (Tex. 1908) ............................................................ 11
*Colbert v. Dallas Joint Stock Land Bank,*
  129 Tex. 235, 102 S.W.2d 1031 (1937) ................................................................ 9
*Cruz v. Andrews Restoration, Inc.,*
  364 S.W.3d 817 (Tex. 2012) ............................................................................... 15
*Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.,*
  965 F.3d 365 (5th Cir. 2020) ............................................................................... 19
*Dynegy, Inc. v. Yates,*
  422 S.W.3d 638 (Tex. 2013) .......................................................................... 10, 15
*First National Bank of Arizona v. Cities Service Company,*
  391 U.S. 253 (1968) ............................................................................................... 8

*Forsyth v. Barr,*
   19 F.3d 1527 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994) ...................... 8

*Forsyth v. Barr,*
   513 U.S. 871, 115 S.Ct. 195 (1994) ................................................................................. 8

*Gaines v. Kelly,*
   235 S.W. 3d 179 (Tex. 2007) ......................................................................................... 16

*Haas Drilling Co. v. First Nat'l Bank,*
   456 S.W.2d 886 (Tex. 1970) .......................................................................................... 15

*Hallmark v. United Fid. Life Ins. Co.,*
   155 Tex. 291, 286 S.W.2d 133 (1956) ............................................................................ 16

*Hester Int'l Corp. v. Fed. Republic of Nig.,*
   879 F.2d 170 (5th Cir. 1989) .......................................................................................... 16

*Hussong v. Schwan's Sales Enterprises, Inc.,*
   896 SW 2d 320 (Tex. App.—Houston [1st Dist.] 1995) ..................................................... 9

*In re Sanchez Energy Corp.,*
   661 B.R. 522 (Bankr. S.D. Tex. 2024) ............................................................................ 19

*Jupiter Enterprises, Inc v. Harrison,*
   No. 05–00–01914–CV, 2002 WL 318305 (Tex. App.—Dallas Mar. 1, 2002) ....................... 18

*Little v. Liquid Air Corp.,*
   37 F.3d 1069 (5th Cir. 1994) (*en banc*) ..................................................................... 7, 8

*Littlefield v. Forney Indep. Sch. Dist.,*
   268 F.3d 275 (5th Cir. 2001) ........................................................................................... 8

*Malacara v. Garber,*
   353 F.3d 393 (5th Cir. 2003) ........................................................................................... 9

*Martinez v. Schlumberger, Ltd.,*
   338 F.3d 407 (5th Cir. 2003) ........................................................................................... 7

*Miller v. CitiMortgage, Inc.,*
   970 F. Supp. 2d 568 (N.D. Tex. 2013) ............................................................................ 14

*Moore Burger, Inc. v. Phillips Petroleum Co.,*
   492 S.W.2d 934 (Tex. 1972) .......................................................................................... 14

*Nagle v. Nagle,*
   633 S.W.2d 796 (Tex. 1982) .......................................................................................... 14

*NationsBank, N.A. v. Dilling,*
   922 S.W.2d 950 (Tex. 1996) (per curiam) ....................................................................... 16

*Padilla v. LaFrance,*
   907 S.W.2d 454 (Tex.1995) ........................................................................................... 11

*Ragas v. Tenn. Gas Pipeline Co.,*
   136 F.3d 455 (5th Cir. 1988) ........................................................................................... 7

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,*
   336 F.3d 410 (5th Cir. 2003) ........................................................................................... 8

*Rourke v. Garza,*
   530 S.W.2d 794 (Tex. 1975) .......................................................................................... 16

*Septimus v. Univ. of Houston,*
   399 F.3d 601 (5th Cir. 2005) ........................................................................................... 9

*Stokes v. Carcavba, LLC,*
   No. EP-22-CV-00271-ATB, 2024 WL 1023068 (W.D. Tex. Mar. 8, 2024) ............................ 7

*Stults v. Conoco, Inc.*,
   76 F.3d 651 (5th Cir. 1996) ........................................................................ 7, 8
*Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
   199 F.3d 788 (5th Cir. 2000) .......................................................................... 18
*Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
   21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) ............................ 18
*Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
   300 S.W.3d 348 (Tex. App. –Dallas 2009) ............................................................... 18
*Truly v. Austin*,
   744 S.W.2d 934 (Tex. 1988) ........................................................................... 9
*Tubacex, Inc. v. M/V Risan*,
   45 F.3d 951 (5th Cir. 1995) .......................................................................... 7
*Villarreal v. Grant Geophysical, Inc.*,
   136 S.W.3d 265 (Tex. App.—San Antonio 2004, *pet. denied*) ............................................. 19
*Wallace v. Tex. Tech Univ.*,
   80 F.3d 1042 (5th Cir. 1996) .......................................................................... 8

**B.**   Statutes

TEXAS BUSINESS & COMMERCE CODE § 26.01 ....................................................... 1, 11

**C.**   Rules

FEDERAL RULE OF CIVIL PROCEDURE 56 ......................................................... 2, 6, 7, 8
TEXAS RULE OF CIVIL PROCEDURE 94 .............................................................. 10

**D.**   Treatises

George P. Roach, Unjust Enrichment in Texas: Is It a Floor Wax or a Dessert Topping?, 65
   BAYLOR L. REV. 153 (2013) ............................................................................ 19

## II. <span style="font-variant: small-caps">Introduction</span>

1.    This action stems from Defendants, Big Thirst, Inc. ("**Big Thirst**") and Matt McGinnis's ("**Mr. McGinnis**") (collectively, "**Defendants**"), outright refusal to abide by their obligations to repay the $50,000.00 loaned to them by Plaintiff based solely upon a vendetta that Defendants possess against Plaintiff's daughter Lauren Wylie Donoho ("**Mrs. Donoho**") due to prior litigation amongst those parties.[1] Not only was it everyone's understanding, including Mr. McGinnis, that the $50,000.00 the Loan Agreement and Promissory Note ("**Note**"; *see* **Exhibit A**) was for Big Thirst, Inc., specifically for "investment," Defendants also assumed the Note in writing, and Mr. McGinnis confirmed this assumption of the Note under oath multiple times in the prior state court proceeding.

2.    Simply put, Defendants' Motion is an improper attempt to re-litigate the very same arguments this Court has already rejected. The only real difference is that Defendants now pivot and argue that summary judgment is warranted because Plaintiff did not produce what they call a "smoking gun email" – something the law does not require. The statute of frauds may be satisfied through multiple writings read together; it does not require a single formal writing. But the Motion disregards the applicable law and the substantial evidence before this Court evidencing such a writing, and Defendants' arguments fail for multiple reasons, including:

    a.    The statute of frauds does not apply to the transaction at issue.

    b.    Even if it did apply, the $50,000 Note was always intended as startup capital for Big Thirst that would be repaid by the company—a fact Defendants repeatedly acknowledged in multiple contemporaneous writings, emails, and sworn testimony by Defendants, all of which constitute a sufficient memorandum under § 26.01—and that

---

[1] *See, e.g.*, Travis County case (WYLIE 161-170)

Defendants repeatedly expressly assumed the loan.

c.   Defendants' argument that they "never received" the money is contradicted by these facts, which establish Defendants directly and exclusively accepted and used the full $50,000 for Big Thirst's startup and operations, with Mr. McGinnis admitting that at least $43,000 was spent directly on Big Thirst or deposited into its account.

d.   Unjust enrichment is overwhelmingly supported by the summary-judgment evidence.

e.   The Note was signed by Mrs. Donoho as an agent of Big Thirst and Big Thirst subsequently ratified the act of Mrs. Donoho as its agent.

3.   The statute of frauds may be satisfied through multiple writings, sworn testimony, or a memorandum reflecting the essential terms. And even if Defendants had not assumed the obligation in writing, the main-purpose doctrine and promissory estoppel independently bar Defendants' statute of frauds defense. Further, Defendants' unjust-enrichment argument ignores well-settled Texas authority holding that a party may not retain benefits—such as a $50,000 capital infusion—without making restitution.

4.   Defendants now seek to evade their contractual and legal obligations to Plaintiff based upon selective citations to certain evidence, but once the full background of the $50,000.00 is revealed, Defendants Motion fails entirely. Summary judgment is appropriate ***only*** when there is no genuine dispute as to any material fact. FED. R. CIV. P. 56. Defendants have not—and cannot—meet this burden, including because, at minimum, the evidence raises genuine disputes of material fact on every issue Defendants raise – with many of such disputes created by Defendants' own inconsistent testimony. For these reasons alone, the Motion must be denied.

### III.   STATEMENT OF FACTS

5.   Mrs. Donoho and Mr. McGinnis are co-founders of Big Thirst, an e-commerce company for clients in the liquor industry. *See* Exhibit 1 at 1-2, ¶ 3; Exhibit 2 at 1, ¶ 1 & 2, ¶ 4.

6.    In late 2020, Mrs. Donoho approached Mr. McGinnis about developing the innovative platform. *See* Ex. 1 at 1-2, ¶ 3; Ex. 2 at 2, ¶ 5 & 2, ¶ 6. During January 2021, Mrs. Donoho and Mr. McGinnis agreed to a 50/50 partnership to form Big Thirst and began working together on its development. Ex. 2 at 2, ¶ 6.

7.    In January 2021, they contracted a financial advisor to build out their 3-year projections for Big Thirst. Ex. 2 at 2, ¶ 6. As part of the payment, I built the advisor's website and logo, as the plan was to trade work as payment for her financial planning services. *Id.* From January 2021 to October 6, 2021, Mrs. Donoho worked full-time on developing the tech stack, including the website bigthirst.com, the source code for the order management and fulfillment system, and all of Big Thirst's operations. Ex. 2 at 2, ¶ 7. On February 3, 2021, Mrs. Donoho provided Mr. McGinnis with a prototype of an e-commerce environment built on the same Shopify instance that Big Thirst's current bigthirst.myshopify.com ran on. *Id.*

8.    Mr. McGinnis is the Chief Executive Officer (**"CEO"**) and minority shareholder of Big Thirst. Ex. 1 at 2, ¶ 3; Ex. 2 at 3, ¶ 10. As such, Mr. McGinnis is the principal operator of Big Thirst and personally makes decisions regarding, participates in, directs, exercises control over, and benefits from Big Thirst's unlawful activities. *Id.*

9.    On or about July 19, 2021, Plaintiff loaned Mrs. Donoho, an officer and director of Big Thirst, via promissory note, the sum of $50,000 in order to serve as the initial capital investment in Big Thirst and finance all of its initial operations. Ex. 1 at 2, ¶ 4; Ex. 2 at 3, ¶ 11; Exhibit A. Mrs. Donoho and Plaintiff executed the Note on or about July 19, 2021 after receiving approval from Mr. McGinnis via email, reflecting the terms of the $50,000 Note, including its repayment and interest terms, with the parties to the Note agreeing that the Note would be effective July 22, 2021. Ex. 1 at 2, ¶ 4; Ex. 2 at 3-4, ¶ 11; Ex. A. The funds were originally deposited into Mrs. Donoho's personal account since Mr. McGinnis failed to open a corporate bank account until late

August 2021, five and a half months after he incorporated the company and two months prior to the public launch in October. Ex. 2 at 4, ¶ 11. All funds were approved by Mr. McGinnis prior to purchasing. *Id.*

10. The $50,000 Note was always made with the parties' express understanding that the $50,000 would be used solely to finance Big Thirst's operations during its initial phase of business. Ex. 1 at 2, ¶ 5; Ex. 2 at 4, ¶ 12. Notably, it was made clear that the $50,000 loan was needed in order to secure the additional funding, including the $250,000 SBA loan. *Id.* In fact, prior to the initiation of the Note, on July 9, 2021, Mr. McGinnis, as a representative of Big Thirst, expressly "[w]e [Big Thirst] are getting a loan for $50[k]." *Id.*; Exhibit B at 1. Mr. McGinnis, as representative of Big Thirst, sent an additional email on July 13, 2021 which expressly acknowledges an "[u]nsecured: $50k loan" as funding for Big Thirst, with Plaintiff as the lender. Ex. 1 at 2, ¶ 5; Ex. 2 at 4, ¶ 12; Exhibit C at 1-2. Further, Mr. McGinnis, on behalf of Big Thirst, expressly assumed the Note the day after it was signed via both email and text message with Mrs. Donoho. Ex. 1 at 2, ¶ 5; Ex. 2 at 4, ¶ 12; Exhibit D at 1; Exhibit E at 1.

11. These acknowledgements continued, including when, a month later, Mr. McGinnis, again, acknowledged that the Note was part of monies used "[t]o fund [Big Thirst's] start-up costs" when clarifying to Frost Bank that the $50,000 was a loan, not an equity investment and noting "[t]he funds borrowed by [Mrs. Donoho] from [Plaintiff] are to cover start-up operational costs for Big Thirst [] for legal expenses, subscriptions, and contractor services." Ex. 1 at 3, ¶ 7; Ex. 2 at 5, ¶ 14; Exhibit F at 1. Mr. McGinnis further confirmed this in a text with Mrs. Donoho – when he asked to list the loan as an investment not a gift. Ex. 1 at 3, ¶ 7; Ex. 2 at 5, ¶ 14; Exhibit G at 1. Indeed, according to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." Ex. 1 at 3, ¶ 7; Ex. 2 at 5, ¶ 14; Exhibit

H at 29:1-33:23. Additionally, in the Big Thirst Business Plan dated August 2021, Defendants acknowledge the "$50,000 in a family loan." Ex. 1 at 3, ¶ 7; Ex. 2 at 5, ¶ 14; Exhibit K at 4 & 9. At the very least, according to Mr. McGinnis, himself, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." Ex. 1 at 3, ¶ 7; Ex. 2 at 5, ¶ 14; Exhibit L at 98:2-24. However, the $50,000 loan funds were deposited in the account of Mrs. Donoho because Big Thirst did not have a bank account until a month after the Note was signed and funds delivered. Ex. 1 at 3, ¶ 7. All of the funds were used for the company and itemized details were sent in April 2022 prior to my resignation. Ex. 2 at 5, ¶ 14.

12. Moreover, Defendants further confirmed their assumption of the Note and Big Thirst's obligation to repay the $50,000 loaned by Plaintiff under oath on or about April 11, 2022. Ex. 1 at 3, ¶ 8; Ex. 2 at 5, ¶ 15; Ex. I at 3, ¶ 3.05 & 7, ¶¶ 7-8. Mr. McGinnis, on behalf of Big Thirst, again confirmed the assumption of the Note, and Big Thirst's obligation to repay the $50,000 loaned by Mr. Wylie, under oath on or about April 21, 2022. Ex. 1 at 3-4, ¶ 8; Ex. 2 at 5, ¶ 15; Ex. H at 32:5-8. These statements included testimony that (a) "It was always clear the loan was to be exclusively for the use of Big Thirst."; (b) "The loan was to be re-paid by Big Thirst."; (c) "A portion of the loan was deposited into the Big Thirst bank account."; (d) "The remainder was spent on business things."; and (e) "the agreement was still that the funds would be used exclusively for Big Thirst [], and that Big Thirst [] was still to be responsible for re-payment of the loan." *See* Ex. I at 3, ¶ 3.05; Ex. I at 7, ¶¶ 7-8; Ex. L at 98:2-101:23; Ex. L at 239:19-240:17; Ex. L at 281:19-283:8; Ex. L at 285:5-286:15. Further, Mr. McGinnis specifically testified that the funds were used for start up costs, including, *inter alia*, acquiring software licenses and a web domain, and paid from Big Thirst's account with Frost Bank. Ex. 1 at 4, ¶ 8; Ex. 2 at 5, ¶ 15; Ex. H at 34:1-36:21. No other loan was finalized until much later, such that this initial loan was the majority of the monies provided as startup monies for Big Thirst. Ex. 1 at 4, ¶ 8; Ex. 2 at 5-6, ¶ 15; Ex. H at 34:1-36:21;

Ex. 1 at 3, ¶ 3.06 & 7, ¶¶ 7-8.

13. Accordingly, Defendants were obligated to repay the principal amount due under the Note, plus any other interest, fees, and charges under the terms and conditions set forth in the Note. Ex. 1 at 4, ¶ 9; Ex. 2 at 6, ¶ 16. Pursuant to the terms of the Note, monthly installments of $1,048.90 were to be made beginning on August 1, 2023. Ex. 1 at 4, ¶ 9; Ex. 2 at 6, ¶ 16. Yet, Defendants have failed to make a single payment under the Note. *Id.* Thus, Defendants have defaulted under the Note by failing to pay the amounts due thereunder. *Id.*

14. As of February 7, 2025, Defendants are indebted to Plaintiff in the amount of $80,488.82, plus any and all charges, interest, attorneys' fees, and costs and any other fees and amounts owed pursuant to the Note or by law. Ex .1 at 4-5, ¶¶ 10-11; Ex. 2 at 6, ¶ 17. The Note specifically provides for attorney's fees to be paid to the prevailing party. *Id.*

15. Plaintiff and Mrs. Donoho attempted to settle this matter directly with Defendants, however they refused to abide by their contractual obligations. Ex. 1 at 5, ¶ 12; Ex. 2 at 6, ¶ 18.

16. As a result, on December 9, 2024, Mr. Wylie filed a lawsuit alleging claims for breach of contract and unjust enrichment in order to protect his interests. Ex. 1 at 5, ¶ 13; Ex. 2 at 6, ¶ 19.

17. On November 12, 2025 Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims. Ex. 1 at 5, ¶ 14; Ex. 2 at 6, ¶ 20.

### IV.  ISSUES PRESENTED

18. Whether Defendants have met their burden on summary judgment to show that, when all of the competent summary judgment evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to Plaintiff, no genuine issue of material fact exists as to each element of Plaintiff's claims.

### V.  SUMMARY JUDGMENT STANDARD

19. FEDERAL RULE OF CIVIL PROCEDURE 56 authorizes summary judgment only where a party

"shows that there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 324; *see also Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

20.  Summary judgment is appropriate if the movant shows "a fact cannot be or is genuinely disputed" based on "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case." *Domain Prot.*, 426 F.Supp. 3d at 369 (*citing Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)). Thus, "[t]he moving party bears the initial burden of establishing that no genuine fact dispute exists, either by pointing to evidence so establishing, or by pointing out a lack of evidence to support the nonmovant's case." *Stokes v. Carcavba, LLC*, No. EP-22-CV-00271-ATB, 2024 WL 1023068, *2 (W.D. Tex. Mar. 8, 2024) (*citing* FED. R. CIV. P. 56(c)(1)(A)–(B); *Celotex*, 477 U.S. at 324–325).

21.  Only if the movant meets this burden does the burden then shift to the nonmovant to "designate specific facts showing that there is a genuine issue for trial" beyond mere reliance on the allegations or denials in the nonmovant's pleadings. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (*citing Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in

which that evidence'" supports resolution of the material factual issues in its favor. *Stults*, 76 F.3d at 656 (*quoting Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994)); *Anderson*, 477 U.S. at 248–250 (*citing First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–289 (1968)); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 742 (S.D. Tex. 2012) (*citing Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)); *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

22.   When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must view the evidence presented in the record in the light most favorable to the nonmoving party and make all reasonable inferences from such evidence in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996); *see McClain*, 2023 WL 361554 at *3 (*citing Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003); *quoting Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004)); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (*citing Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003); *Little*, 37 F.3d at 1075). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075. But, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…consider the fact undisputed for purposes of the motion." *Wylde*, 2020 WL 1809724 at *2 (*quoting* FED. R. CIV. P. 56(e)(2)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses" in making its ruling, nor does Rule 56 "impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment

is not properly before the Court, even if it exists in the summary judgment record." *McClain*, 2023 WL 361554 at *4 (*citing Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)); *Boudreaux*, 402 F.3d at 540 (*citing Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (*quoting Anderson*, 477 U.S. at 251–252).

## VI.    ARGUMENT AND AUTHORITIES

### A.  Legal Principles

#### 1.  *Breach of Contract.*

23. The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 SW 2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995).

#### 2.  *Unjust Enrichment.*

24. Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it. *Colbert v. Dallas Joint Stock Land Bank*, 129 Tex. 235, 102 S.W.2d 1031, 1034 (1937). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). This remedy "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Id.*; *see Campbell v. Northwestern National Life Insurance Co.*, 573 S.W.2d 496, 498 (Tex. 1978). Recovery in quantum meruit will be had when non-payment for the services rendered would "result in an unjust enrichment to the party benefited by the work." *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, *writ ref'd n.r.e.*)). Recognizing that quantum meruit is founded on unjust enrichment, the

Texas Supreme Court set out the following elements of a quantum meruit claim:

1) valuable services were rendered or materials furnished;
2) for the person sought to be charged;
3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;
4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex. 1985) (*quoting Stewart*, 554 S.W.2d at 943).

**B.  Defendants Fail To Negate Plaintiff's Breach of Contract Claim.**

25.  In this case, (1) there is indisputably a valid contract; (2) Plaintiff fully performed by providing the monies under the Note; (3) Defendants breached by wholly failing to make any payments on the Note; and (4) Plaintiff has suffered damages, including the lack of repayment of the Note and any costs or fees incurred.

26.  Notably, Defendants do not directly challenge the Note. Instead, they focus on the non-existence of an alleged email that Defendants contend Plaintiff failed to produce, arguing Plaintiff's claim for breach of contract must fail because (1) it is barred by the statute of frauds and (2) Defendants never assumed the note. However, Defendants' arguments are red herrings, as Mrs. Donoho signed the Note with the clear understanding of everyone involved that the loan – including Defendants, and funds thereunder, were exclusively for the use and benefit of Big Thirst, Inc. – something Defendants have confirmed multiple times since the loan was received by Defendants.

*1.  The Statute Of Frauds Does Not Bar Enforcement In This Case.*

27.  The party pleading the statute of frauds bears the initial burden of establishing its applicability. TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). To satisfy the Texas statute of frauds, a promise may be evidenced by a "memorandum of" the promise

that is (1) in writing and (2) signed by the party to be charged with the promise. TEX. BUS. & COM. CODE § 26.01(a).

28.   "The statute of frauds writing requirement may be satisfied by two or more documents." *Bocchi Americas Associates Inc v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 391 (5th Cir. 2008) (*citing Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex.1995)). "Further, the 'memorandum' need not embody all of the terms agreed upon." *Bocchi*, 515 F.3d at 391 (*quoting Botello v. Misener–Collins Co.*, 469 S.W.2d 793, 794–795 (Tex. 1971)).

29.   Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds. *Bocchi*, 515 F.3d at 391 (*citing Cobb v. Johnson*, 101 Tex. 440, 108 S.W. 811, 812 (Tex. 1908)).

30.   As Defendants correctly state, "a promise by one person to answer for the debt, default, or miscarriage of another person" must be "in writing" and "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE § 26.01(a), (b)(2). However, Defendants' attempt to reframe the issue as a "promise to answer for the debt of another" under Section 26.01(b)(2) ignores the reality of the transaction: Defendants were not promising to pay someone else's debt; they were acknowledging their own obligation to repay startup capital provided for their business.

31.   Defendants cannot create a genuine fact dispute by contradicting their own prior sworn testimony. Thus, as an initial matter, Defendants have failed to meet their initial burden of showing the statute of frauds applies.

       *i*     *Defendants assumed the Note.*

32.   It is indisputable that Defendants assumed the Note. While Defendants correctly contend that Mrs. Donoho's name, not Mr. McGinnis or Big Thirst, appear on the Note with a signature, that argument fails to consider the entirety of the evidence.

33.  In this case, including as set forth above, at least the following undisputed facts exist regarding the liability for the Note: (a) in a July 9, 2021 email Mr. McGinnis references a "$50k loan" needed to start Big Thirst; (b) in a July 13, 2021 email, Mr. McGinnis states Big Thirst is receiving a "$50k loan from Hunter Wylie (Lauren's dad)"; (c) in a second July 13, 2021 email, Mr. McGinnis writes the loan will be "enough to get up and running"; (d) in August 2021 marketing materials for Big Thirst, the $50,000 family loan is referred to as startup funding; (e) Mr. McGinnis provided sworn testimony from April 11, 2022 and April 21, 2022 in which he admits Big Thirst received and used the $50,000 and was responsible for repayment; and (f) that the parties discussed potentially getting a loan from Plaintiff at least a month prior to the Note.

34.  Defendants' attempts to deny their assumption of the Note is clearly contrary to the facts, which include emails identifying Plaintiff's $50,000 loan as Big Thirst's startup capital; Mr. McGinnis's admissions that Big Thirst received and used the funds; Big Thirst's own marketing materials identifying the loan as corporate capital; confirmations of the assumption under oath by both Mr. McGinnis and Big Thirst. Thus, Defendants indisputably confirmed their assumption of the Note in writing on multiple occasions, including the day after the contract was signed via email, and including to third parties, including Frost Bank and Mr. Kareem Hajjar.

        *ii    The emails and text messages of Defendants satisfy the Statute of Frauds.*

35.  Nevertheless, even assuming arguendo, that the statue of frauds does apply to the Note, the statute of frauds is satisfied.

36.  "In the instant case, there are a number of writings, which, taken together, evidence an agreement between" the parties. *Bocchi*, 515 F.3d at 391. In *Bocchi*, the Fifth Circuit held that a combination of a letter evidencing an offer, the cashing of a cashier's check constituting acceptance, and a fax, which was unsigned by the party to be charged but was on that party's letterhead taken together constituted a writing sufficient to satisfy Texas' statute of frauds. *See id.*

37. Similarly, in this case, including as set forth above, multiple undisputed facts exist establishing the status of all parties in view of the Note, including emails, texts, and business documents. These writings specifically confirm Defendants' assumption of the Note in writing on multiple occasions. Further, the contract itself was a full written contract that contained all essential elements of the parties' agreement. Id at ¶ 11. Defendants do not dispute this fact. Thus, in order for Defendants to have assumed the Note, all that was needed is a writing by Defendants evidencing their assumption of said contract. Again, there exists multiple writings making this assumption more than clear. For example, the emails written by Mr. McGinnis on Big Thirst's letterhead is sufficient to satisfy Texas' statute of frauds, as well as the statements in the Big Thirst Business Plan provided to third parties.

   iii    *Mr. McGinnis is individually liable.*

38. At worst, under Defendants' own arguments, and the facts in this case, Mr. McGinnis's multiple communications to multiple different parties acknowledging that the loan was being assumed cause Mr. McGinnis to be liable for the payments, if Big Thirst disagrees that Mr. McGinnis spoke on its behalf in these communications. Regardless, the facts remain that there is more than sufficient evidence of the contractual obligations of Defendants and the use of the funds from the Note for Big Thirst.

39. Indeed, Mr. McGinnis personally negotiated funding, made express repayment assurances, directed the use of loan proceeds, and confirmed Big Thirst's repayment obligations under oath. At a minimum, Mr. McGinnis's personal involvement and conduct create a triable issue regarding individual assumption and liability.

   **2.    *Even if the Statute of Frauds is found to apply, exceptions preclude its application.***

   i    *Promissory Estoppel bars application of the statute of frauds.*

40. Even if these writings were insufficient, the promissory estoppel exception to the statute

of frauds is satisfied. Promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury." *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972). "To invoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 581 (N.D. Tex. 2013) (*citing Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)). "Moreover, the agreement which was the subject of the oral promise must be in writing at the time the oral promise to sign was made." *Id*.

41.  Here, Mr. McGinnis, both for himself and on behalf of Big Thirst, did promise to sign the Note. Ex. 1 at 2-3, ¶ 6; Ex. 2 at 4, ¶ 13. Although he never did, this is sufficient to invoke the promissory estoppel exception to the statute of fraud as the agreement that was the subject of the oral promise (the contract between Mr. Wylie and Mrs. Donoho) was in writing at the time Mr. McGinnis' oral promise was made. Ex. 2 at 4, ¶ 13; Exhibit L at 98:5-101:15 & 282:2-15; Exhibit I at 13, ¶ 7. Mr. McGinnis promised—both orally and in writing—that Big Thirst would repay the loan, knowing Plaintiff was relying on those statements. *Id.* Plaintiff relied on these statements by funding Big Thirst's startup costs. Ex. 1 at 3, ¶ 6; Ex. 2 at 4, ¶ 13. Additionally, at the time of the Note, Mrs. Donoho was both an officer and director of Big Thirst, and Plaintiff relied on this, in addition to Mr. McGinnis's statements, in loaning the money for use by Big Thirst. Ex. 1 at 3, ¶ 6; Ex. 2 at 4, ¶ 13; Ex. I at 2, ¶ 3.04 & 12, ¶ 6; Ex. L at 187:4-188:8 & 282:2-15. Under *Moore Burger*, enforcement of the contract in this case is required to prevent injustice.

*ii   The Main Purpose Doctrine bars application of the statute of frauds' suretyship provision.*

42.   Even if the Statute of Frauds is erroneously found to apply and that there is a suretyship, a recognized exception to the suretyship provision is the main purpose doctrine which applies where the promisor's primary objective was to secure a benefit for itself. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 827-828 (Tex. 2012). The main purpose doctrine requires a plaintiff to prove: (1) the defendant intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the defendant's own use and benefit—that is, the benefit it received was the defendant's main purpose for making the promise. *Yates*, 422 S.W.3d at 642 (*citing Cruz*, 364 S.W.3d at 828). Importantly, the question of intent to be primarily responsible for the debt is a question for the finder of fact, <u>taking into account all the facts and circumstances of the case</u>. *Id*. (*citing Haas Drilling Co. v. First Nat'l Bank*, 456 S.W.2d 886, 889 (Tex. 1970)) (emphasis added). Here, the evidence shows: Defendants received and used the $50,000 to start Big Thirst; a majority of those funds were spent directly on Big Thirst expenses; and Big Thirst's business could not launch without these funds. Thus, Defendants' main purpose was self-benefit, not guaranteeing another's debt.

43.   Either way, there is no disputing that there is at least a genuine issue of material fact regarding this doctrine, including because, here, Defendants received the $50,000, used it to start Big Thirst, including spending it on software, web hosting, vendors, and startup expenses, and deposited it into Big Thirst's account.

44.   Therefore, Plaintiff has brought forth sufficient evidence for his breach of contract claim and Defendants' Motion must be denied.

### 3.    *Mrs. Donoho signed the Note as an agent of Big Thirst and with full authority to do so.*

45.   It is undisputed that, at the time she signed the Note, Mrs. Donoho was the Chief Operating Officer of Big Thirst. *See* Ex. I at 2, ¶ 3.04 & 12, ¶ 6. Plaintiff was also aware of this fact and specifically relied on it when making the Promissory Note. *Id.*

46.   The Texas Supreme Court has recently stated the following regarding agency:

> An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Hester Int'l Corp. v. Fed. Republic of Nig.*, 879 F.2d 170, 181 (5th Cir. 1989).
>
> …
>
> Apparent authority, we have said, is based on estoppel, arising "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998). We have further noted that the principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex. 1975) (*citing Hallmark v. United Fid. Life Ins. Co.*, 155 Tex. 291, 286 S.W.2d 133 (1956)). Moreover, when making that determination, only the conduct of the principal is relevant. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996) (per curiam). Finally, the standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 427 (1953). Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority.

*Gaines v. Kelly*, 235 S.W. 3d 179, 182-183 (Tex. 2007).

47.   Moreover, an agent's authority is presumed to be co-extensive with the business entrusted to their care, and includes those contracts and acts incidental to the management of the particular business with which they are entrusted. *Gaines*, 235 SW 3d at 185. At the time she signed the Note, Mrs. Donoho was indisputably acting as an agent of Big Thirst; specifically, she was acting as the Chief Operating Officer and a director – including as confirmed by Defendants. Ex. L at 187:4-188:8.

48.   McGinnis was also well-aware that Mrs. Donoho was acting on behalf of Big Thirst in

regards to the Note, as reflected by the overwhelming evidence in this case:

1. A July 9, 2021 email, wherein Mr. McGinnis, while discussing "raising money" for the "startup of Big Thirst," explains that they "are getting a loan for $50[2] (*sic*) that will be subordinated to a SBA loan of $250k and a $100k revolver."
2. A July 13, 2021 email, again regarding funding for Big Thirst, wherein Mr. McGinnis specifically mentions a "$50k loan" from "Hunter Wylie [Plaintiff] (Lauren Wylie's Dad)."
3. An earlier email on July 13, 2021, wherein McGinnis references the loans, including the Note, and states "That will be enough to get up and running," referring to the company, Big Thirst, Inc.
4. August 2021 marketing materials, Big Thirst, Inc. states: "To fund our start-up costs, we are seeking a $50,000 family loan, and a loan from the Small Business Administration (SBA) of $250,000 in 1H 2021, with a revolving credit facility of $100,000 in 2H 2021"

49.  Furthermore, in his April 2022 testimony, McGinnis specifically admits:

To fund its operation, Big Thirst, Inc. was to secure a loan. Donoho secured a loan from her father. It was always clear that the loan was to be exclusively for the use of Big Thirst, Inc.'s start-up costs. The loan was to be re-paid by Big Thirst, Inc. At the last minute, Donoho insisted that she alone be the borrower. However, the agreement was still that the funds would be used exclusively for Big Thirst, Inc., and that Big Thirst, Inc. was still to be responsible for re-payment of the loan. A portion of the loan funds were in fact used to secure software applications and to the develop the data dashboard.

Ex. I at 13, ¶ 7 (emphasis added). Indeed, according to Mr. McGinnis, the Note as supposed to be directly to Big Thirst, and Mrs. Donoho was the one who obtained it. Ex. L at 282:2-15.

50.  Thus, not only was Mrs. Donoho – a director and the Chief Operating Officer of Big Thirst – given express authority to enter into the Note on behalf of Big Thirst, any alleged lack of authority is clearly incorrect in view of the subsequent approval and ratification of the acts of Mrs. Donoho, including an express agreement that Big Thirst would make the payments.

**C.  Defendants Fail To Negate Plaintiff's Quantum Meruit/Unjust Enrichment Claim.**

51.  "Unjust enrichment is an equitable theory of recovery that is based on an implied

---

[2] Mr. McGinnis later confirmed, under oath, that this was in reference to the $50,000 Note. *See* Ex. L at 281:23-282:1.

agreement to pay for benefits received." *Jupiter Enterprises, Inc v. Harrison*, No. 05–00–01914–CV, 2002 WL 318305, *3 (Tex. App.—Dallas Mar. 1, 2002) (citations omitted). "To recover under unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Id.* (citations omitted).

52. Defendants do not dispute that they received a benefit from Plaintiff to the tune of $50,000, which financed all of Big Thirst's initial operations. Nor do they dispute that they accepted those funds. Under the circumstances (which are that Defendants expressly promised to repay the money both orally and in writing on multiple occasions to multiple parties), Defendants should have reasonably expected that Plaintiff expected to be repaid by them. Even though all the elements are met, Defendants contest that they should equitably be required to return the benefit they received.

53. "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. –Dallas 2009). "The plaintiff must establish that the defendant received money 'which in equity and good conscience belongs to the plaintiff.'" *Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) (*quoting Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997)). "A claim for unjust enrichment lies where the circumstances give rise to an implied or quasi-contractual obligation to return benefits." *Texas Carpenters*, 21 F. Supp. 2d at 678. Plaintiff has alleged facts sufficient to create

an implied or quasi-contractual obligation to return the benefits. Defendants do not, in fact, dispute that they promised to return the benefits.

54.  While Defendants claim that a showing of fraud, duress, or undue advantage is required, this is not what Texas law requires. "To be sure, some Texas courts have stated that 'recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong' and '[u]njust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'" *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 380 (5th Cir. 2020) (*quoting Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, *pet. denied*) (cleaned up) (emphasis added). "Faced with this language, some observers—including Petrolink—have suggested Texas law actually recognizes two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit." *Id.* (*citing* George P. Roach, Unjust Enrichment in Texas: Is It a Floor Wax or a Dessert Topping?, 65 Baylor L. Rev. 153, 226–228 (2013)). Accordingly, Plaintiff's position is that a showing of fraud, duress, or undue advantage is not required under Texas law.

55.  However, if the Court disagrees, Plaintiff believes that sufficient facts exist to constitute undue advantage in any event. "Although not well-defined under Texas law, courts have found undue advantage in cases where an offending party took advantage of a position of trust or where the offending party did not pay for goods or services." *In re Sanchez Energy Corp.*, 661 B.R. 522, 548 (Bankr. S.D. Tex. 2024) (*citing Petrolink*, 965 F.3d at 382). Here, Defendants certainly took advantage of a position of trust as Mr. McGinnis and Mrs. Donoho were forming a company together and owed each other fiduciary duties of care and loyalty. Mrs. Donoho, and Plaintiff, her father, trusted Mr. McGinnis and Big Thirst's promises to repay Plaintiff for the advanced $50,000 in funds to start Big Thirst's operations. Moreover, Defendants indisputably did not repay the

funds – and have continued to refuse to do so despite Mr. McGinnis previously testifying that payment would be made following the resolution of the case between Big Thirst and Mrs. Donoho. *See* Ex. L at 99:11-101:15.

56.   According to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." Ex. H at 29:1-33:23. At the very least, according to Mr. McGinnis, himself, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." Ex. L at 98:2-24.

57.   In sum, there are genuine issues of material fact showing that 1) valuable services were rendered or materials furnished by Plaintiff – namely, the funds under the Note; 2) for the use and benefit of Defendants – namely, for startup expenses; 3) which services and materials were accepted by Defendants, used and enjoyed by them – namely, Defendants took the money, deposited it in their account, and used the money for their operation; and 4) under such circumstances as reasonably notified Defendants that Plaintiff in performing such services was expecting to be paid by Defendants – including based on specific promises made by Defendants regarding such repayment. *See Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex. 1985).

58.   Therefore, Plaintiff has brought forth sufficient evidence for his unjust enrichment claim, and Defendants' Motion must be denied.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

NOW WHEREFORE, for at least those reasons stated in this response, Plaintiff has failed to meet its burden on summary judgment, and, thus, Defendants hereby respectfully request this Honorable Court deny Defendants' Motion in its entirety. Plaintiff prays for such other and further relief, whether general or special, at law or in equity, to which Plaintiff may be shown to be justly

entitled.

DATED: November 26, 2025    Respectfully submitted,

              Mousilli Law, PLLC

          BY: */s/ Shea N. Palavan*
              Shea N. Palavan
               TX Bar No. 24083616
              Lema Mousilli
               TX Bar No. 24056016
              11807 Westheimer Road
              Suite 550, PMB 624
              Houston, Texas 77077
              Tel: (281) 305-9313
              service@mousillilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service on this November 26, 2025, via electronic filing manager as follows:

John W. Thomas
**THOMAS WILLIAMS MCCONNELL PLLC**
2104 San Antonio St., 2nd Floor
Austin, Texas 78701
Tel: (512) 495-1447
jt@twmattorneys.com

Attorney for Defendants,
Big Thirst, Inc. and Matt McGinnis

_/s/ Shea N. Palavan_
Shea N. Palavan