IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **HUNTER WYLIE,**<br>    *Plaintiff*, | § § § | |
| V. | § § | CIVIL CASE NO. 1:24-CV-01512-DAE |
| **BIG THIRST, INC. and MATT MCGINNIS,**<br>    *Defendants*, | § § § § § § | (JURY DEMANDED) |

### DECLARATION OF HUNTER WYLIE IN SUPPORT OF
### PLAINTIFF'S RESPONSE TO (D.I. 39)
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Hunter Wylie, hereby declare the following, which is true and correct based on my personal knowledge, or, where stated, based on information and belief:

1. My name is Hunter Wylie, and I am a party to this action ("**Plaintiff**"). I assert the facts set forth herein, which are true and correct based on my personal knowledge, unless specifically stated as based on information and belief, and, if called as a witness, I could, and would, competently testify thereto.

2. I am the Plaintiff in the case of *Hunter Wylie vs. Big Thirst Inc. and Matt McGinnis*, Case No. 1:24-cv-01512 currently pending in the Western District of Texas. I submit this declaration in support of Plaintiff's Response to (D.I. 39) Big Thirst, Inc. and Matt McGinnis's Motion for Summary Judgment ("**Motion**").

3. In late 2020, my daughter, Lauren Wylie Donoho ("**Mrs. Donoho**") approached Mr. McGinnis about developing an innovative platform that could be used to better support an e-commerce solution in the liquor industry after installing a competitor's inferior e-commerce

solution. During her time at Big Thirst, Mrs. Donoho was both a director and officer—the Chief Operations Officer—of Big Thirst. Mr. McGinnis is the Chief Executive Officer (**"CEO"**) and minority shareholder of Big Thirst.

4. Specifically, on or about July 19, 2021, after numerous discussions between Mrs. Donoho and Mr. McGinnis, Mrs. Donoho relayed the agreement with Mr. McGinnis to me regarding a loan on behalf of Big Thirst, and I loaned Big Thirst the sum of $50,000 via promissory note signed by Mrs. Donoho as agent for Big Thirst in order to serve as the initial capital investment in Big Thirst and finance all of its initial operations. *See* Exhibit A. I executed the Note on or about July 19, 2021 reflecting the terms of the $50,000 Note, including its repayment and interest terms, with the parties to the Note agreeing that the Note would be effective July 22, 2021. *Id.*

5. The $50,000 Note was always made with the parties' express understanding that the $50,000 would be used solely to finance Big Thirst's operations during its initial phase of business. Notably, it was made clear that the $50,000 loan was needed in order to secure the additional funding, including the $250,000 SBA loan. In fact, prior to the initiation of the Note, on July 9, 2021, Mr. McGinnis, as a representative of Big Thirst, expressly stated "[w]e [Big Thirst] are getting a loan for $50[k]." *See* Exhibit B at 1. Mr. McGinnis, as representative of Big Thirst, sent an additional email on July 13, 2021 which expressly acknowledges an "[u]nsecured: $50k loan" as funding for Big Thirst, with Plaintiff as the lender. *See* Exhibit C at 1-2. Further, Mr. McGinnis, on behalf of Big Thirst, expressly assumed the Note the day after it was signed via both email and text message with Mrs. Donoho. *See* Exhibit D at 1; Exhibit E at 1.

6. Further, Mr. McGinnis, both for himself and on behalf of Big Thirst, did promise—both orally and in writing—that Big Thirst would repay the loan, knowing I was relying on those statements. Although Mr. McGinnis never made such payments, the agreement that was the subject of the oral promise (the contract between Mrs. Donoho and myself) was in writing at the time Mr.

Page **2** | 7

[Declaration of Hunter Wylie in Support of Plaintiff's Response to (D.I. 39) Defendants' Motion for Summary Judgment]   Case No.: 1:24-CV-01512-DAE

McGinnis's oral promise was made. *See* Exhibit L at 98:5-101:15 & 282:2-15; Exhibit I at 13, ¶ 7. I explicitly relied on these statements by Mr. McGinnis in funding Big Thirst's startup costs. Additionally, at the time of the Note, Mrs. Donoho was both an officer and director of Big Thirst, and I expressly relied on this, in addition to Mr. McGinnis's statements, in loaning the money for use by Big Thirst. *See* Ex. I at 2, ¶ 3.04 & 12, ¶ 6; Ex. L at 187:4-188:8 & 282:2-15.

    7. These acknowledgements to pay continued, including when, a month later, Mr. McGinnis, again, acknowledged that the Note was part of monies used "[t]o fund [Big Thirst's] start-up costs" when clarifying to Frost Bank that the $50,000 was a loan subrogated to the SBA loan (which was not a part of the terms of the agreement), not an equity investment and noting "[t]he funds borrowed by [Mrs. Donoho] from [Plaintiff] are to cover start-up operational costs for Big Thirst [] for legal expenses, subscriptions, and contractor services." *See* Exhibit F at 1. Mr. McGinnis further confirmed this in a text with Mrs. Donoho, when he asked to list the loan as an investment not a gift. *See* Exhibit G at 1. Indeed, according to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." Exhibit H at 29:1-33:23. Additionally, in the Big Thirst Business Plan dated August 2021, Defendants acknowledge the "$50,000 in a family loan." *See* Exhibit K at 4 & 9. At the very least, according to Mr. McGinnis, himself, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." Ex. L at 98:2-24. However, the $50,000 loan funds were deposited in the account of Mrs. Donoho because Big Thirst did not have a bank account until a month after the Note was signed and funds delivered.

    8. Moreover, Defendants further confirmed their assumption of the Note and Big Thirst's obligation to repay the $50,000 loaned by me, under oath on or about April 11, 2022. *See* Ex. I at 3, ¶ 3.05 & 7, ¶¶ 7-8. Mr. McGinnis, on behalf of Big Thirst, again confirmed the assumption of

the Note, and Big Thirst's obligation to repay the $50,000 loaned by me, under oath on or about April 21, 2022. *See* Ex. H at 32:5-8. Further, Mr. McGinnis specifically testified that the funds were used for start up costs, including, *inter alia*, acquiring software licenses and a web domain, and paid from Big Thirst's account with Frost Bank. *See id.* at 34:1-36:21. No other loan was finalized until much later, such that this initial loan was the majority of the monies provided as startup monies for Big Thirst. *See id.*; Ex. I at 3, ¶ 3.06 & 7, ¶¶ 7-8.

9. Accordingly, Defendants were obligated to repay the principal amount due under the Note, plus any other interest, fees, and charges under the terms and conditions set forth in the Note. Pursuant to the terms of the Note, monthly installments of $1,048.90 were to be made beginning on August 1, 2023. Yet, Defendants have failed to make a single payment under the Note. Thus, Defendants have defaulted under the Note by failing to pay the amounts due thereunder.

10. I have drafted an amortization schedule based upon the terms and conditions of the Note, which evidences the total amount owed to me by Defendants pursuant to the Note, including all interest and late fees. Pursuant to the terms of the Note, the interest rate is 5.25% per annum and there is also a late payment penalty of 2% assessed each month for any late payment, calculated based upon the amount of principal and any accrued interest under the contract. The amortization schedule includes what the original loan payout would have been if payments were made on time and the current amount owed with penalties on the first of the month when the loan remains in default.

11. As of February 7, 2025, Defendants are indebted to me in the amount of $80,488.82, plus any and all charges, interest, attorneys' fees, and costs and any other fees and amounts owed

pursuant to the Note or by law. The Note specifically provides for attorney's fees to be paid to the prevailing party.

12. Mrs. Donoho and I attempted to settle this matter directly with Defendants, however they refused to abide by their contractual obligations.

13. As a result, on December 9, 2024, I filed the instant lawsuit alleging claims for breach of contract and unjust enrichment in order to protect his interests.

14. On November 12, 2025 Defendants filed a Motion for Summary Judgment on my claims.

15. Attached hereto as Exhibit A is a true and correct copy of the Loan Agreement and Promissory Note signed by Mrs. Donoho and myself for a $50,000 loan for startup costs for Big Thirst, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE154-WYLIE160.

16. Attached hereto as Exhibit B is a true and correct copy of an email exchange between Matt McGinnis, Mrs. Donoho, and Big Thirst's corporations advisor, Kareem Hajjar, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE001-WYLIE001.

17. Attached hereto as Exhibit C is a true and correct copy of an email exchange between Matt McGinnis, Mrs. Donoho, and Big Thirst's corporations advisor, Kareem Hajjar, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE002-WYLIE002.

18. Attached hereto as Exhibit D is a true and correct copy of an email exchange between Matt McGinnis and Mrs. Donoho acknowledging that the Note had been signed to fund Big Thirst, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE004-WYLIE004.

19. Attached hereto as Exhibit E is a true and correct copy of a screenshot of text messages exchanged on July 20, 2021 between Mrs. Donoho and Mr. McGinnis, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE005-WYLIE005.

20. Attached hereto as Exhibit F is a true and correct copy of an email exchange between Matt McGinnis, Mrs. Donoho, and Big Thirst's advisors at Frost Bank, Jacquelyn Tomlinson and Danielle Quintero, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE014-WYLIE014.

21. Attached hereto as Exhibit G is a true and correct copy of a screenshot of text messages exchanged on November 17, 2021 between Mrs. Donoho and Mr. McGinnis, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE015-WYLIE015.

22. Attached hereto as Exhibit H is a true and correct copy of the transcript from the hearing for Application of Temporary Injunction held on April 21, 2022 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE016-WYLIE151.

23. Attached hereto as Exhibit I is a true and correct copy of the verified original petition and supporting affidavit of Mr. McGinnis filed on April 11, 2022 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE161-WYLIE175.

24. Attached hereto as Exhibit J is a true and correct copy of a Certification of Beneficial Owners for Big Thirst's Frost Bank account dated July 2, 2021 listing both Mr.

[DECLARATION OF HUNTER WYLIE IN SUPPORT OF PLAINTIFF'S RESPONSE TO (D.I. 39) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT]   Case No.: 1:24-CV-01512-DAE

Page **6** | 7

McGinnis and Mrs. Donoho as owners, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE187-WYLIE188.

25. Attached hereto as Exhibit K is a true and correct copy of the Big Thirst, Inc. Business Plan dated August 2021, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE189-WYLIE217.

26. Attached hereto as Exhibit L is a true and correct copy of the transcript from the videotaped deposition of Matt McGinnis on March 28, 2024 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, 1:22-CV-00467-RP, in the Austin Division of the United States District Court for the Western District of Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE268-WYLIE623.

27. Attached hereto as Exhibit M is a true and correct copy of the Confidential Settlement Agreement between both Defendants and Mrs. Donoho, acknowledging Mrs. Donoho's status as an officer and director of Big Thirst, confirming I was not part of the settlement, and resolving the dispute in *Big Thirst, Inc. v. Lauren Wylie Donoho*, 1:22-CV-00467-RP, in the Austin Division of the United States District Court for the Western District of Texas, as produced by Defendants and served on Plaintiff in this case on March 18, 2025 as documents Bates labeled D000007-D000020.

28. Attached hereto as Exhibit N is a true and correct copy of an email exchange between Matt McGinnis and Mrs. Donoho, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE260-WYLIE263.

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct, and that this declaration is executed on November 26, 2025, at St. Paul, Marion County, Oregon.

Hunter Wylie