1:24-CV-01512-DAE
Plaintiff
EXHIBIT
2
_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HUNTER WYLIE,** | § | |
|     *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 1:24-CV-01512-DAE** |
| | § | |
| | § | **(JURY DEMANDED)** |
| **BIG THIRST, INC. and MATT** | § | |
| **MCGINNIS,** | § | |
|     *Defendants,* | § | |
| | § | |

**DECLARATION OF LAUREN WYLIE DONOHO IN SUPPORT OF**
**PLAINTIFF'S RESPONSE TO (D.I. 39)**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, <u>Lauren Wylie Donoho</u>, hereby declare the following, which is true and correct based on my personal knowledge, or, where stated, based on information and belief:

1. My name is Lauren Wylie Donoho, I am a founder, owner, and was the Chief Operating Officer of Defendant, Big Thirst, Inc. ("**Plaintiff**"). I assert the facts set forth herein, which are true and correct based on my personal knowledge, unless specifically stated as based on information and belief, and, if called as a witness, I could, and would, competently testify thereto.

2. I submit this declaration in support of Plaintiff's Response to (D.I. 39) Big Thirst, Inc. and Matt McGinnis's Motion for Summary Judgment ("**Motion**").

3. Since 2010, I have been in website design, digital marketing, solutions development, and project management. I have built and managed over fifty (50) websites of all sizes as an independent contractor for creative agencies and personal clients. Twenty-five (25) of them are Shopify stores. The largest is a multi-site WordPress site for a publicly-traded company valued at $1.5 billion, where I managed multiple agency and client-side teams.

Page **1** | **9**

[DECLARATION OF LAUREN WYLIE DONOHO IN SUPPORT OF PLAINTIFF'S RESPONSE TO (D.I. 39) DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT]                         Case No.: 1:24-CV-01512-DAE

4.  I am a co-founder of Big Thirst, Inc. ("**Big Thirst**") along with additional co-founder Matt McGinnis ("**Mr. McGinnis**"). I am familiar with the creation and organization of Big Thirst, an e-commerce company for clients in the liquor industry.

5.  In late 2020, I approached Mr. McGinnis about developing an innovative platform that could be used to better support an e-commerce solution in the liquor industry after installing a competitor's inferior e-commerce solution.

6.  In late 2020, I approached Mr. McGinnis about developing the innovative platform. During January 2021, Mr. McGinnis and I agreed to a 50/50 partnership to form Big Thirst and began working together on its development. In January 2021, we contracted a financial advisor to build out a 3-year projections for Big Thirst. As part of the payment, I built the advisor's website and logo, as the plan was to trade work as payment for her financial planning services.

7.  From January 2021 to October 6, 2021, I worked full-time on developing the tech stack, including the website bigthirst.com, the source code for the order management and fulfillment system, and all of Big Thirst's operations. On February 3, 2021, I provided Mr. McGinnis with a prototype of an e-commerce environment built on the same Shopify instance that Big Thirst's current bigthirst.myshopify.com ran on.

8.  Unbeknownst to me, on March 3, 2021, Mr. McGinnis formed Big Thirst with himself as sole director and shareholder. I later learned he did so using funds generated by my work during the trade deal with the financial advisor noted in paragraph 6, despite my being directly involved in its formation, operation, and funding. After I discovered that Mr. McGinnis had created Big Thirst with himself as sole owner behind my back, I confronted him about it, and we eventually agreed that I would own 45% of the company. Mr. McGinnis later diluted this percentage to 27%, as represented by the 2,700,000 shares of Big Thirst's common stock given to me.

9. Prior to leaving Big Thirst, I made repeated requests for shareholder and corporate governance information and documents; however, none of that information was provided to me. On December 13, 2022, I sent Big Thirst a formal demand for inspection of books and records. After a six-month delay, I finally received information in response to my request from June of 2023. After reviewing the information I received, I found that the documents reflected that my interest in Big Thirst had been improperly and substantially reduced to 19.29%, which is a sizeable difference from my promised 27%.

10. Mr. McGinnis is the Chief Executive Officer (**"CEO"**) and majority shareholder of Big Thirst. As such, Mr. McGinnis is the principal operator of Big Thirst and personally makes decisions regarding, participates in, directs, exercises control over, and benefits from Big Thirst's unlawful activities. However, neither Mr. McGinnis, nor any of the other Board members, which consist of Mr. McGinnis's wife and best friend, have ever operated any e-commerce platforms, developed data and analytics reports, built websites, merchant systems, or set up technical solutions for any scale of operations. Although Mr. McGinnis made himself the majority owner of Big Thirst, again using my funds, all he did was name it and incorporate it. He built none of it and contributed 10% of the working capital, whereas I worked with my father to contribute 90% of the working capital ($50,000), managed every aspect of the organization including all of the day-to-day operations, and built all of the operations and tech stack. In fact, Mr. McGinnis did not open a bank account for Big Thirst until August 23, 2021.

11. Specifically, on or about July 19, 2021, Plaintiff loaned me, an officer and director of Big Thirst, via promissory note, the sum of $50,000 in order to serve as the initial capital investment in Big Thirst and finance all of its initial operations and secure a $250,000 SBA loan. *See* Exhibit A. I executed the Note on or about July 19, 2021 after receiving approval from Mr.

[DECLARATION OF LAUREN WYLIE DONOHO IN SUPPORT OF PLAINTIFF'S RESPONSE TO (D.I. 39) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT]

Case No.: 1:24-CV-01512-DAE

McGinnis via email, reflecting the terms of the $50,000 Note, including its repayment and interest terms, with the parties to the Note agreeing that the Note would be effective July 22, 2021. *Id*. The funds were originally deposited into my personal account since Mr. McGinnis failed to open a corporate bank account until late August 2021, five and a half months after he incorporated the company and two months prior to our public launch in October. All funds were approved by Mr. McGinnis prior to purchasing.

12.     The $50,000 Note was always made with the parties' express understanding that the $50,000 would be used solely to finance Big Thirst's operations during its initial phase of business. In fact, prior to the initiation of the Note, on July 9, 2021, Mr. McGinnis, as a representative of Big Thirst, expressly stated "[w]e [Big Thirst] are getting a loan for $50[k]." *See* Exhibit B at 1. Mr. McGinnis, as representative of Big Thirst, sent an additional email on July 13, 2021 which expressly acknowledges an "[u]nsecured: $50k loan" as funding for Big Thirst, with Plaintiff as the lender. *See* Exhibit C at 1-2. Further, Mr. McGinnis, on behalf of Big Thirst, expressly assumed the Note the day after it was signed via both email and text message with me. *See* Exhibit D at 1; Exhibit E at 1.

13.     Further, Mr. McGinnis, both for himself and on behalf of Big Thirst, did promise— both orally and in writing—that Big Thirst would repay the loan, knowing Plaintiff was relying on those statements. Although he never did, the agreement that was the subject of the oral promise (the contract between Plaintiff and myself) was in writing at the time Mr. McGinnis's oral promise was made. *See* Exhibit L at 98:5-101:15 & 282:2-15; Exhibit I at 13, ¶ 7. Plaintiff relied on these statements by funding Big Thirst's startup costs. Additionally, at the time of the Note, I was both an officer and director of Big Thirst, and Plaintiff relied on this, in addition to Mr. McGinnis's

statements, in loaning the money for use by Big Thirst. *See* Ex. I at 2, ¶ 3.04 & 12, ¶ 6; Ex. L at 187:4-188:8 & 282:2-15.

14.     These acknowledgements continued, including when, a month later, Mr. McGinnis, again, acknowledged that the Note was part of monies used "[t]o fund [Big Thirst's] start-up costs" when clarifying to Frost Bank that the $50,000 was a loan, not an equity investment and noting "[t]he funds borrowed by [Mrs. Donoho] from [Plaintiff] are to cover start-up operational costs for Big Thirst [] for legal expenses, subscriptions, and contractor services." *See* Exhibit F at 1. Mr. McGinnis further confirmed this in a text with me, when he asked to list the loan as an investment not a gift. See Exhibit G at 1. Indeed, according to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." Exhibit H at 29:1-33:23. Additionally, in the Big Thirst Business Plan dated August 2021, Defendants acknowledge the "$50,000 in a family loan." *See* Exhibit K at 4 & 9. At the very least, according to Mr. McGinnis, himself, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." Ex. L at 98:2-24. All of the funds were used for the company and itemized details were sent in April 2022 prior to my resignation.

15.     Moreover, Defendants further confirmed their assumption of the Note and Big Thirst's obligation to repay the $50,000 loaned by Plaintiff under oath on or about April 11, 2022. *See* Ex. I at 3, ¶ 3.05 & 7, ¶¶ 7-8. Mr. McGinnis, on behalf of Big Thirst, again confirmed the assumption of the Note, and Big Thirst's obligation to repay the $50,000 loaned by Plaintiff, under oath on or about April 21, 2022. *See* Ex. H at 32:5-8. Further, Mr. McGinnis specifically testified that the funds were used for start up costs, including, *inter alia*, acquiring software licenses and a web domain, and paid from Big Thirst's account with Frost Bank. *See id.* at 34:1-36:21. No other

[DECLARATION OF LAUREN WYLIE DONOHO IN SUPPORT OF PLAINTIFF'S RESPONSE TO (D.I. 39) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT]

Case No.: 1:24-CV-01512-DAE

loan was finalized until much later, such that this initial loan was the majority of the monies provided as startup monies for Big Thirst. *See id.*; Ex. I at 3, ¶ 3.06 & 7, ¶¶ 7-8.

16.     Accordingly, Defendants were obligated to repay the principal amount due under the Note, plus any other interest, fees, and charges under the terms and conditions set forth in the Note. Pursuant to the terms of the Note, monthly installments of $1,048.90 were to be made beginning on August 1, 2023. Yet, Defendants have failed to make a single payment under the Note. Thus, Defendants have defaulted under the Note by failing to pay the amounts due thereunder.

17.     As of February 7, 2025, Defendants are indebted to Plaintiff in the amount of $80,488.82, plus any and all charges, interest, attorneys' fees, and costs and any other fees and amounts owed pursuant to the Note or by law. The Note specifically provides for attorney's fees to be paid to the prevailing party.

18.     Plaintiff and myself attempted to settle this matter directly with Defendants, however they refused to abide by their contractual obligations.

19.     As a result, on December 9, 2024, Plaintiff filed a lawsuit alleging claims for breach of contract and unjust enrichment in order to protect his interests.

20.     On November 12, 2025 Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims.

21.     Attached hereto as Exhibit A is a true and correct copy of the Loan Agreement and Promissory Note signed by Plaintiff and myself for a $50,000 loan for startup costs for Big Thirst, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE154-WYLIE160.

22.     Attached hereto as Exhibit B is a true and correct copy of an email exchange

between Matt McGinnis, myself, and our corporations advisor, Kareem Hajjar, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE001-WYLIE001.

23.      Attached hereto as Exhibit C is a true and correct copy of an email exchange between Matt McGinnis, myself, and our corporations advisor, Kareem Hajjar, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE002-WYLIE002.

24.      Attached hereto as Exhibit D is a true and correct copy of an email exchange between Matt McGinnis and myself acknowledging that the Note had been signed to fund Big Thirst, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE004-WYLIE004.

25.      Attached hereto as Exhibit E is a true and correct copy of a screenshot of text messages exchanged on July 20, 2021 between myself and Defendant McGinnis, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE005-WYLIE005.

26.      Attached hereto as Exhibit F is a true and correct copy of an email exchange between Matt McGinnis, myself, and our advisors at Frost Bank, Jacquelyn Tomlinson and Danielle Quintero, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE014-WYLIE014.

27.      Attached hereto as Exhibit G is a true and correct copy of a screenshot of text messages exchanged on November 17, 2021 between myself and Defendant McGinnis, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE015-WYLIE015.

28.     Attached hereto as Exhibit H is a true and correct copy of the transcript from the hearing for Application of Temporary Injunction held on April 21, 2022 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE016-WYLIE151.

29.     Attached hereto as Exhibit I is a true and correct copy of the verified original petition and affidavit of Mr. McGinnis filed on April 11, 2022 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE161-WYLIE175.

30.     Attached hereto as Exhibit J is a true and correct copy of a Certification of Beneficial Owners for Big Thirst's Frost Bank account dated July 2, 2021 listing both Mr. McGinnis and myself as owners, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE187-WYLIE188.

31.     Attached hereto as Exhibit K is a true and correct copy of the Big Thirst, Inc. Business Plan dated August 2021, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE189-WYLIE217.

32.     Attached hereto as Exhibit L is a true and correct copy of the transcript from the videotaped deposition of Matt McGinnis on March 28, 2024 in the case *Big Thirst, Inc. v. Lauren Wylie Donoho*, 1:22-CV-00467-RP, in the Austin Division of the United States District Court for the Western District of Texas, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE268-WYLIE623.

33.     Attached hereto as Exhibit M is a true and correct copy of the Confidential

Settlement Agreement between both Defendants and myself, acknowledging my status as an officer and director of Big Thirst and resolving the dispute in *Big Thirst, Inc. v. Lauren Wylie Donoho*, 1:22-CV-00467-RP, in the Austin Division of the United States District Court for the Western District of Texas, as produced by Defendants and served on Plaintiff in this case on March 18, 2025 as documents Bates labeled D000007-D000020.

34.      Attached hereto as Exhibit N is a true and correct copy of an email exchange between Matt McGinnis and myself, as produced by Plaintiff and served on Defendants in this case on October 9, 2025 as documents Bates labeled WYLIE260-WYLIE263.

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct, and that this declaration is executed on November 26, 2026, at Newberg, Yamhill County, Oregon.

Lauren Wylie Donoho