## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **HUNTER WYLIE,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 1:24-CV-01512-DAE** |
| | § | |
| | § | **(JURY DEMANDED)** |
| **BIG THIRST, INC. and MATT** | § | |
| **MCGINNIS,** | § | |
| *Defendants*. | § | |

---

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Plaintiff, Hunter Wylie ("**Plaintiff**"), in the above-styled and numbered cause, and respectfully file this Plaintiff's Motion for Summary Judgment ("**Motion**") against Defendants, Big Thirst, Inc. ("**Big Thirst**") and Matt McGinnis ("**Mr. McGinnis**") (collectively, "**Defendants**"), respectfully requesting this Honorable Court to grant the Motion and enter judgment in favor of Plaintiff and against Defendants on Plaintiff's claims, including for those reasons set forth hereinbelow, and, in support thereof, would respectfully show unto this Honorable Court as follows:

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ........................................................................................................ iii

   **A.**  Cases ........................................................................................................................ iii

   **B.**  Statutes ................................................................................................................... iv

   **C.**  Rules ....................................................................................................................... iv

II.    Introduction ........................................................................................................... 1

III.   Statement of Facts ................................................................................................. 2

IV.   Issues Presented .................................................................................................... 2

V.    Summary Judgment Standard ............................................................................... 2

VI.   Argument and Authorities .................................................................................... 4

   A.  Legal Principles ..................................................................................................... 4

      1.  Breach of Contract. ......................................................................................... 4

      2.  Unjust Enrichment. ........................................................................................ 4

   B.  Plaintiff has Conclusively Proven his Breach of Contract Claim and Defendants Cannot Provide More Than a Scintilla of Evidence to Support their Affirmative Defenses Thereto. ..... 5

      1.  Defendants are clearly liable for breach of contract for their failure to make payments under the Note. ............................................................................... 5

   C.  Plaintiff has Conclusively Proven his Quantum Meruit/Unjust Enrichment Claim and Defendants Cannot Provide More Than a Scintilla of Evidence to Support their Affirmative Defenses Thereto. ........................................................................................................ 13

   D.  Defendants fail to provide more than a scintilla of evidence in support of their affirmative defenses. ................................................................................................................... 15

      1.  The Statute Of Frauds Does Not Bar Enforcement In This Case. ................................ 16

      2.  Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of payment. ..................................................................... 19

      3.  Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of waiver. ....................................................................... 19

      4.  Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of unclean hands. ............................................................ 19

      5.  Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of failure to mitigate. ..................................................... 20

VII.  Conclusion and Prayer for Relief ......................................................................... 21

### TABLE OF AUTHORITIES

**A.** <u>Cases</u>

*Am. Trigger Pullers LLC v. Wylde*,
   No. CV H-19-2694, 2020 WL 1809724 (S.D. Tex. Apr. 9, 2020) ..... 3
*Amoco Prod. Co. v. Smith*,
   946 S.W.2d 162 (Tex. App. 1997) ..... 14
*Armendariz v. Hudgens*,
   618 S.W.3d 750 (Tex. App.—El Paso 2020, *no pet.*) ..... 8, 9
*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
   173 F. Supp. 3d 363 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 Fed. Appx. 256
   (5th Cir. 2018) ..... 20, 21
*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
   725 Fed. Appx. 256 (5th Cir. 2018) ..... 20
*Bank of Saipan v. CNG Fin. Corp.*,
   380 F.3d 836 (5th Cir. 2004) ..... 20
*Bashara v. Baptist Memorial Hospital System*,
   685 S.W.2d 307 (Tex. 1985) ..... 4, 16
*Big Thirst, Inc. v. Lauren Wylie Donoho*,
   No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas ..... 1
*Bocchi Americas Associates Inc v. Commerce Fresh Mktg. Inc.*,
   515 F.3d 383 (5th Cir. 2008) ..... 16, 17
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..... 2
*City of Ingleside v. Stewart*,
   554 S.W.2d 939 (Tex. Civ. App.—Corpus Christi 1977, *writ ref'd n.r.e.*) ..... 4
*Colbert v. Dallas Joint Stock Land Bank*,
   129 Tex. 235, 102 S.W.2d 1031 (1937) ..... 4
*Cruz v. Andrews Restoration, Inc.*,
   364 S.W.3d 817 (Tex. 2012) ..... 19
*Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*,
   965 F.3d 365 (5th Cir. 2020) ..... 15
*Dynegy, Inc. v. Yates*,
   422 S.W.3d 638 (Tex. 2013) ..... 16, 19
*Gaines v. Kelly*,
   235 S.W. 3d 179 (Tex. 2007) ..... 6
*Hussong v. Schwan's Sales Enterprises, Inc.*,
   896 SW 2d 320 (Tex. App.—Houston [1st Dist.] 1995) ..... 4
*In re Sanchez Energy Corp.*,
   661 B.R. 522 (Bankr. S.D. Tex. 2024) ..... 15
*Jupiter Enterprises, Inc v. Harrison*,
   No. 05–00–01914–CV, 2002 WL 318305 (Tex. App.—Dallas Mar. 1, 2002) ..... 13, 14
*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) (*en banc*) ..... 3
*McClain v. I-10 Mac Haik CDJR Ltd.*,
   No. 4:21-CV-3240, 2023 WL 361554 (S.D. Tex. Jan. 23, 2023) ..... 3

*Miller v. CitiMortgage, Inc.*,
    970 F. Supp. 2d 568 (N.D. Tex. 2013)      18
*Miller v. Kennedy & Minshew, Prof'l Corp.*,
    142 S.W.3d 325 (Tex. App.—Fort Worth 2003, *pet. denied*)      9
*Moore Burger, Inc. v. Phillips Petroleum Co.*,
    492 S.W.2d 934 (Tex. 1972)      18, 19
*Septimus v. Univ. of Houston*,
    399 F.3d 601 (5th Cir. 2005)      3
*Stokes v. Carcavba, LLC*,
    No. EP-22-CV-00271-ATB, 2024 WL 1023068 (W.D. Tex. Mar. 8, 2024)      3
*Stults v. Conoco, Inc.*,
    76 F.3d 651 (5th Cir. 1996)      3
*Sw. Bell Media, Inc. v. Trepper*,
    784 S.W.2d 68 (Tex. App.—Dallas 1989, *no writ*)      6
*Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
    199 F.3d 788 (5th Cir. 2000)      14
*Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
    21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000)      14
*Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App. –Dallas 2009)      14
*Truly v. Austin*,
    744 S.W.2d 934 (Tex. 1988)      4
*Walker Ins. Services v. Bottle Rock Power Corp.*,
    108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, *no pet.*)      9
*Westport Ins. Corp. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*,
    662 F. Supp. 3d 727 (S.D. Tex. 2023)      20

**B.**  <u>Statutes</u>

TEXAS BUSINESS & COMMERCE CODE § 26.01      1, 16, 17

**C.**  <u>Rules</u>

FEDERAL RULE OF CIVIL PROCEDURE 56      1, 2, 3
TEXAS RULE OF CIVIL PROCEDURE 94      16

## II. INTRODUCTION

1. This action stems from Defendants' outright refusal to abide by their obligations to repay the $50,000.00 loaned to them by Plaintiff based solely upon a vendetta Defendants possess against Plaintiff's daughter Lauren Wylie Donoho ("**Mrs. Donoho**") due to prior litigation amongst those parties.[1] Not only was it everyone's understanding, including Mr. McGinnis's, that the $50,000.00 the Loan Agreement and Promissory Note ("**Note**"; *see* **Exhibit A**) was for Big Thirst, specifically for "investment," Defendants also assumed the Note in writing, and Mr. McGinnis confirmed this assumption of the Note under oath multiple times in the prior state court proceeding.

2. Simply put, despite both the testimony of all parties to this case and the documentary evidence produced in this case indisputably proving at least the following:

   a. The statute of frauds does not apply to the transaction at issue.
   b. Even if it did apply, the funds were always intended as startup capital for Big Thirst that they would repay—a fact Defendants repeatedly acknowledged in multiple contemporaneous writings, emails, and sworn testimony by Defendants, all of which constitute a sufficient memorandum under § 26.01—and Defendants repeatedly expressly assumed the loan.
   c. Defendants directly and exclusively accepted and used the full $50,000 for Big Thirst's startup and operations, with Mr. McGinnis admitting that at least $43,000 was spent directly on Big Thirst or deposited into its account.
   d. Unjust enrichment is overwhelmingly supported by the summary-judgment evidence.
   e. The Note was signed by Mrs. Donoho as an agent of Big Thirst and Big Thirst subsequently ratified the act of Mrs. Donoho as its agent.

3. Defendants seek to evade their contractual and legal obligations to Plaintiff based upon selective citations to certain evidence, but once the full background of the loan is revealed, summary judgment is clearly appropriate, as no genuine dispute as to any material fact exists on any element of any of Plaintiff's claims. FED. R. CIV. P. 56. Defendants have not—and cannot—show otherwise, including because the evidence overwhelmingly shows each and every element of Plaintiff's claims. For these reasons alone, Plaintiff's Motion must be granted.

---

[1] *See, e.g.*, *Big Thirst, Inc. v. Lauren Wylie Donoho*, No. D-1-GN-22-001678, in the 459th Judicial District Court of Travis County, Texas.

### III.    STATEMENT OF FACTS

4.    Including for the Court's benefit and to reduce unnecessary repetition, Plaintiff respectfully refers to, and incorporates by reference, as if set forth fully herein, the relevant facts previously set forth in Plaintiff's Response to Defendants Motion for Summary Judgment. *See* D.I. 42 at 2-6, ¶¶ 5-17. The supporting evidence and exhibits remain attached to the instant motion, such that only the listing of evidence in a lengthy Statement of Facts is omitted. *See* Exhibits 1-2 & Exhibits A-N.

### IV.    ISSUES PRESENTED

5.    Whether Plaintiff has met his burden on summary judgment to show that, when all competent summary judgment evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to Defendants, Plaintiff has conclusively proven, such that no genuine issue of material fact exists with respect to, each and every element of his claims against Defendants for breach of contract and unjust enrichment and that judgment should be entered in favor of Plaintiff against Defendants.

### V.    SUMMARY JUDGMENT STANDARD

6.    FEDERAL RULE OF CIVIL PROCEDURE 56 authorizes summary judgment only where a party "shows that there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 324. Summary judgment is appropriate if the movant shows "a fact cannot be or is genuinely disputed" based on "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's

case." *Domain Prot.*, 426 F.Supp. 3d at 369. Thus, "[t]he moving party bears the initial burden of establishing that no genuine fact dispute exists, either by pointing to evidence so establishing, or by pointing out a lack of evidence to support the nonmovant's case." *Stokes v. Carcavba, LLC*, No. EP-22-CV-00271-ATB, 2024 WL 1023068, *2 (W.D. Tex. Mar. 8, 2024).

7.    Only if the movant meets this burden does the burden then shift to the nonmovant to "designate specific facts showing that there is a genuine issue for trial" beyond mere reliance on the allegations or denials in the nonmovant's pleadings. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). But, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…consider the fact undisputed for purposes of the motion." *Am. Trigger Pullers LLC v. Wylde*, No. CV H-19-2694, 2020 WL 1809724, *2 (S.D. Tex. Apr. 9, 2020). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses" in making its ruling, nor does Rule 56 "impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record." *McClain v. I-10 Mac Haik CDJR Ltd.*, No. 4:21-CV-3240, 2023 WL 361554, *4 (S.D. Tex. Jan. 23, 2023). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

## VI.    ARGUMENT AND AUTHORITIES

### A.    Legal Principles

#### 1.    *Breach of Contract.*

8.    The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 SW 2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995).

#### 2.    *Unjust Enrichment.*

9.    Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it. *Colbert v. Dallas Joint Stock Land Bank*, 129 Tex. 235, 102 S.W.2d 1031, 1034 (1937). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). This remedy "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Id*. Recovery in quantum meruit will be had when non-payment for the services rendered would "result in an unjust enrichment to the party benefited by the work." *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, *writ ref'd n.r.e.*)). Recognizing that quantum meruit is founded on unjust enrichment, the Texas Supreme Court set out the following elements of a quantum meruit claim:

1) valuable services were rendered or materials furnished;
2) for the person sought to be charged;
3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;
4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex. 1985).

**B.** **Plaintiff has Conclusively Proven his Breach of Contract Claim and Defendants Cannot Provide More Than a Scintilla of Evidence to Support their Affirmative Defenses Thereto.**

*1.* *Defendants are clearly liable for breach of contract for their failure to make payments under the Note.*

10.   In this case, (1) there is indisputably a valid contract; (2) Plaintiff fully performed by providing the monies to Big Thirst via transfer to Mrs. Donoho (Big Thirst's COO at the time) under the Note, including because Big Thirst had no bank account at the time; (3) Defendants breached by wholly failing to make any payments on the Note; and (4) Plaintiff has suffered damages, including the lack of repayment of the Note and any associated costs or fees.

*i*   *The Note is a valid contract between Plaintiff and Defendants.*

11.   The Note is clearly a valid contract, as Notably, Defendants do not directly challenge the Note, or its validity. Rather, Defendants solely challenge whether they are the proper party liable for payments under the Note. However, any argument by Defendants they did not assume the payments on behalf of Mrs. Donoho or that they never made any statements or engaged in any conduct which affirmatively accepted the monies provided under the Note on behalf of Big Thirst (such that Big Thirst would have any obligation to make payments under the Note) simply falls flat in this case.

12.   Here, the most credible evidence shows that Mrs. Donoho indisputably signed the Note with Plaintiff as an authorized agent of Big Thirst (*i.e.*, an officer or director). Specifically, the signing of the Note was done with the clear understanding of *everyone* involved – *including* Defendants, Plaintiff, and Mrs. Donoho (including as an authorized agent for Big Thirst) – that the loan, and funds to be provided thereunder, were exclusively for the use and benefit of Big Thirst, Inc. – something Defendants have confirmed multiple times since the loan was received by Defendants via transfer to the bank account of Big Thirst's officer and director Mrs. Donoho, as Big Thirst did not have a bank account at the time of the loan. *See, e.g.*, Ex. 2 at 4, ¶ 11. Indeed, *it is indisputable that Defendants assumed the Note*. While Defendants contend that Mrs. Donoho's name, not Mr. McGinnis's or Big

Thirst's name, appear on the Note with a signature, that argument fails to consider the entirety of the evidence. To the contrary, all parties were aware of Mrs. Donoho's status as an authorized agent of Big Thirst, and the Note was entered into with such knowledge and awareness.

> a.    *Mrs. Donoho signed the Note with full authority to do so as an agent, officer, and director of Big Thirst.*

13.  It is undisputed that, at the time she signed the Note, Mrs. Donoho was the Chief Operating Officer of Big Thirst. *See* Ex. I at 2, ¶ 3.04 & 12, ¶ 6. Plaintiff was also aware of this fact and specifically relied on it when making the Promissory Note. *Id.*

14.  Regarding agency, the Texas Supreme Court has stated, generally, an agent's authority "depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)" based on how a reasonably prudent person would view the situation. *Gaines v. Kelly*, 235 S.W. 3d 179, 182-183 (Tex. 2007). "[T]o avoid personal liability, an agent has two duties[:] He must: (1) disclose his representative capacity, and (2) identify his true principal." *Sw. Bell Media, Inc. v. Trepper*, 784 S.W.2d 68, 72 (Tex. App.—Dallas 1989, *no writ*). Moreover, an agent's authority is presumed co-extensive with the business entrusted to their care, and includes those contracts and acts incidental to the management of the particular business so entrusted. *Gaines*, 235 SW 3d at 185. At the time she signed the Note, Mrs. Donoho was indisputably acting as an agent of Big Thirst; specifically, the Chief Operating Officer and a director – including as confirmed by Defendants. Ex. L at 187:4-188:8.

15.  Here, the evidence conclusively evidences that all parties agree that Mrs. Donoho was acting as an authorized agent of Big Thirst when obtaining the Note on behalf of Big Thirst. Indeed, sworn testimony from each of Plaintiff, Mr. McGinnis, and Mrs. Donoho indisputably shows Mrs. Donoho both disclosed her relationship with Big Thirst to Plaintiff and indicated that she was acting on behalf of Big Thirst. Moreover, the sworn testimony provided herewith indisputably shows that Mr.

McGinnis was also in agreement with Mrs. Donoho's actions as an agent of Big Thirst.

16.  Similarly, Defendants may incorrectly argue that, because any money transferred under the Note was from Plaintiff to Mrs. Donoho, not from Plaintiff to either Big Thirst or Mr. McGinnis, but such an argument likewise fails to consider the actual facts in this case. Again, the Note was negotiated mid-2022 and signed July 19, 2022, yet Mr. McGinnis did not open a bank account for Big Thirst until around a month later in August of 2022. As a result of this failure, Big Thirst did not have an account to which Plaintiff could transfer any funds under the Note. To avoid this limitation, the parties further agreed that the funds would be transferred from Plaintiff to Mrs. Donoho, solely for the benefit of, and under a valid contract with, Big Thirst.

17.  At best, Defendants may point to the fact that Mrs. Donoho signed the Note without explicitly writing her status as agent of Big Thirst, but that is insufficient to contradict the overwhelming evidence proving all parties were aware of Mrs. Donoho's agency and understanding and agreement by all parties that Big Thirst would be the beneficiary of the money, assume the obligations under the Note, and make all required payments on the Note.

18.  McGinnis was also well-aware that Mrs. Donoho was acting on behalf of Big Thirst in regards to the Note, as reflected by the overwhelming evidence in this case, Mr. McGinnis stated in communications that Big Thirst was to receive a $50,000 startup loan that would be funded by Mrs. Donoho's father, Plaintiff, including in emails sent on July 9, 2021 and July 13, 2021, in August 2021 marketing materials, and his April 2022 sworn testimony. *See* Exs 1-2; Ex. I at 13, ¶ 7. Indeed, according to Mr. McGinnis, the Note was supposed to be directly to Big Thirst, but Mrs. Donoho was the one who obtained it since Mr. McGinnis failed to open a bank account for Big Thirst until after the loan was funded by Plaintiff. Ex. L at 282:2-15.

19.  In addition to both express and implied agency, Mrs. Donoho further had apparent authority to act as Big Thirst's agent. "Apparent authority is based on a theory of estoppel, which arises 'either

from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Armendariz v. Hudgens*, 618 S.W.3d 750, 761 (Tex. App.—El Paso 2020, *no pet.*). "Apparent authority may arise when a principal intentionally or negligently induces parties to believe that a person is the principal's agent although the principal has not conferred any actual authority on that person." *Armendariz*, 618 S.W.3d at 540-541. "The essential elements required to establish that an agent took an action with apparent authority are: '(1) a reasonable belief in the agent's authority; (2) generated by some holding out or neglect of the principal; and (3) a justifiable reliance on the authority.'" *Armendariz*, 618 S.W.3d at 541.

20.   Here, the indisputable facts conclusively establish each of the elements of apparent authority. Plaintiff had a reasonable belief that Mrs. Donoho was acting as an agent for Big Thirst and that Big Thirst would be making payments on the Note because of express statements made by Defendants. These statements were made by Defendants with the knowledge and understanding by Plaintiff that such statements were made by Mr. McGinnis, who held himself out as speaking for Big Thirst, or, at worst, the outright negligence of Defendants in directly being involved in discussions wherein Mrs. Donoho was represented as acting for Big Thirst yet failing to correct this relationship if Defendants had actually disagreed. Further, Plaintiff's reliance on these statements were more than justified, as the reliance was based on discussions between all of the parties involved, including express statements made which establish Mrs. Donoho's agent status for Big Thirst.

21.   Even absent a showing of agency (which Plaintiff has more than conclusively shown in multiple instances), Defendants are liable under the Note, under the doctrine of ratification. "'[R]atification is a doctrine of agency law, and allows a principal to be bound by an agent's unauthorized contract in circumstances where the principal becomes aware of the contract and retains

benefits under it.'" *Armendariz*, 618 S.W.3d at 762. "Once ratified, a formerly unauthorized act is treated as if it had originally been authorized." *Armendariz*, 618 S.W.3d at 762. "[T]he elements of ratification include: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act." *Armendariz*, 618 S.W.3d at 762. "Ratification may be inferred by a party's course of conduct and need not be shown by express word or deed." *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 342–343 (Tex. App.— Fort Worth 2003, *pet. denied*). "The Texas Supreme Court has also stated that ratification includes the principal retaining a benefit under the agreement that it ratifies." *Armendariz*, 618 S.W.3d at 762. While an agency relationship often exists in cases involving ratification, it need not exist to cause the ratification to be effective and, at a minimum, ratification binds the principal to the specific action ratified but may not otherwise create an agency relationship. *Walker Ins. Services v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 552 n.9 (Tex. App.—Houston [14th Dist.] 2003, *no pet.*).

22.  As with agency, the evidence in this case conclusively proves Defendants, at a minimum, approved and ratified Mrs. Donoho's acts sufficient to authorize Mrs. Donoho's acts, even if Mrs. Donoho is erroneously held to not have had authority as an agent for Big Thirst. Here, despite Mrs. Donoho's actions that Defendants have now complained of, only after blatantly breaching the Note, being clearly performed under a valid agency relationship, Defendants subsequently ratified those acts by directly stating, to both the parties involved and to third-parties (*e.g.*, Frost Bank and Mr. Kareem Hajjar). These acts, and Defendants' statements therewith, were done with Defendants' full knowledge of Mrs. Donoho's acts in obtaining the Note on behalf of Big Thirst. Defendants' actions in ratifying Mrs. Donoho's acts was further done with not just the intent for Mrs. Donoho's acts to be considered valid but with direct statements to Mrs. Donoho and Plaintiff that Defendants would pay the Note. Moreover, the fact (as Big Thirst contends) Big Thirst is not a party to the Note, yet clearly knowingly retained the funds for its own benefit is sufficient to establish ratification.

23.  Thus, not only was Mrs. Donoho – a director and the Chief Operating Officer of Big Thirst – given *express* and *implied* authority, including by Mr. McGinnis, to enter into the Note on behalf of Big Thirst, any alleged lack of such authority is clearly incorrect in view of the subsequent creation of *apparent* authority and/or *approval and ratification* by Mr. McGinnis, and, thus, Big Thirst, of Mrs. Donoho's acts, including express agreement Big Thirst would make the payments. Therefore, Mrs. Donoho conclusively acted with authority as agent for Big Thirst, binding it under the Note.

        *b.*      *Defendants indisputably assumed all obligations under the Note.*

24.  Not only did Defendants, at worst, approve and ratify Mrs. Donoho's actions as an agent of Big Thirst, but Defendants have expressly assumed liability and obligation under the Note. In this case, including as set forth above, at least the following undisputed facts exist regarding Big Thirst's clear assumption of liability for the Note:

a.   in a July 9, 2021 email, Mr. McGinnis references a "$50k loan" needed to start Big Thirst – *i.e.*, Mr. McGinnis is representing that Big Thirst is expecting to have a loan in the amount of $50,000, the exact amount of the funds to be loaned under the Note to Mrs. Donoho *as agent for, and on behalf of, Big Thirst*;

b.   in a July 13, 2021 email, Mr. McGinnis states Big Thirst is receiving a "$50k loan from Hunter Wylie (Lauren's dad)" – *i.e.*, Mr. McGinnis is explicitly representing that the funds to be loaned under the Note in the amount of $50,000 is an amount for a loan to Big Thirst from Plaintiff, the exact amount to be loaned under the Note to Mrs. Donoho *as agent for, and on behalf of, Big Thirst*;

c.   in a second July 13, 2021 email, Mr. McGinnis writes the expected $50,000 loan from Plaintiff to Big Thirst via transfer to Big Thirst's agent, officer, and director, Mrs. Donoho, will be "enough to get up and running" – *i.e.*, the loan expected to be received by Big Thirst from Plaintiff was planned, at least by Mr. McGinnis, to be used for Big Thirst's costs;

d.   in August 2021 marketing materials for Big Thirst, the $50,000 family loan is expressly referred to as startup funding – *i.e.*, Defendants created and disseminated documentation meant for viewing by parties outside of Big Thirst which expressly referenced the loan expected to be received by Big Thirst from Plaintiff was planned, at least by Mr. McGinnis, to be used for Big Thirst's costs;

e.   Mr. McGinnis provided sworn testimony from April 11, 2022 and April 21, 2022 in which he clearly admits Big Thirst received and used the $50,000 loaned to Defendants under the Note via transfer to Mrs. Donoho (as agent, officer, and/or director of Big Thirst) and was understood and agreed by all parties to be responsible for repayment – *i.e.*, Mr. McGinnis has provided sworn testimony evidencing Defendants' assumption of the Note and approval of the acts committed by Mrs. Donoho *as agent for, and on behalf of, Big Thirst*; and

f.   that the parties discussed potentially getting a loan from Plaintiff on behalf of Big Thirst at

least a month prior to the Note, with the parties agreeing that the funds were to be transferred to Mrs. Donoho (due to Mr. McGinnis's failure to open a bank account for Big Thirst at that time), as Mrs. Donoho was at least an agent, officer, and director of Big Thirst at that time, and said transfer was made with the understanding and agreement that Big Thirst would be responsible for payment on the Note – *i.e.*, Defendants' obtaining funds from Plaintiff was not a simple, thoughtless dream concept of the parties, but, rather, a transaction discussed by all parties over multiple days.

25. Any attempt by Defendants to deny their undeniable assumption of the Note is clearly contrary to the facts, which include *Defendants' own emails* identifying Plaintiff's $50,000 loan as Big Thirst's startup capital; Mr. McGinnis's admissions that Big Thirst received and used the funds its costs, despite the funds having being transferred to Mrs. Donoho; Big Thirst's own marketing materials identifying the loan as corporate capital; confirmations of the assumption under oath by both Mr. McGinnis and Big Thirst. Thus, Defendants indisputably confirmed their assumption of the Note in writing on multiple occasions, including the day after the contract was signed via email, and including to third parties, including Frost Bank and Mr. Kareem Hajjar.

26. At worst, if not breach of contract, Defendants are liable for fraud or misrepresentation if they seek to now claim their express representation, and agreement with, approval of, and ratification of Mrs. Donoho's acts as agent for Big Thirst, are not what Defendants previously agreed to. Therefore, Defendants have assumed the Note and all obligations thereunder, including the obligation to make all payments thereunder.

       *c.*     *Mr. McGinnis is individually liable.*

27. Relatedly, at worst, under Defendants' own contentions, and the facts in this case, Mr. McGinnis's multiple communications to multiple different parties acknowledging that the loan was being assumed cause Mr. McGinnis to be liable for the payments, if Big Thirst disagrees that Mr. McGinnis spoke on its behalf in these communications. Regardless, the facts remain that there is more than sufficient evidence of the contractual obligations of Defendants and the use of the funds from the Note for Big Thirst. Indeed, Mr. McGinnis personally negotiated funding, made express

repayment assurances, directed the use of loan proceeds, and confirmed Big Thirst's repayment obligations under oath. At a minimum, Mr. McGinnis's personal involvement and conduct create a triable issue regarding individual assumption and liability.

      *ii*     *Plaintiff properly performed under the Note by transferring the funds.*

28. Defendants may argue there was no valid performance by Plaintiff under the Note in this case because Plaintiff never actually transferred any of the funds to Defendants, but, rather, transferred the funds to Mrs. Donoho. However, including as already discussed herein, this argument fails to appreciate the actual facts in this case, the majority of which are undisputed (because there can be no dispute) by Defendants. Specifically, including as noted above, Mr. McGinnis and Mrs. Donoho were officers and directors of Big Thirst at the time of the Note, and, thus, were agents of Big Thirst which could bind Big Thirst to contracts entered into on behalf of Big Thirst. Thus, during the negotiation and signing of the Note, Mrs. Donoho's statements and actions in obtaining the Note are considered binding on Big Thirst, so long as Mrs. Donoho had proper authority and Plaintiff was aware of at least some relationship between Mrs. Donoho and Big Thirst. Only now, as part of their defense, do Defendants contest this, without support and in direct contradiction of indisputable facts.

29. Thus, to be clear, under the Note, Plaintiff was obligated to provide funds in the amount of $50,000 to Big Thirst, via transfer to Mrs. Donoho, as Big Thirst did not have a bank account at the time. Therefore, Plaintiff's transfer of funds to Mrs. Donoho on behalf of Big Thirst conclusively shows Plaintiff provided the funds to Big Thirst as required under the Note.

      *iii*     *Defendants breached the contract by failing to make any payments under the Note.*

30. Despite Plaintiff's transfer of the loan funds, when Defendants eventually became obligated to make payments under the Note – after a two (2) year hold on payments, Defendants simply refused to make any payments, leading to the instant case. This refusal and failure to pay is without justification or excuse and serves as nothing more than a blatant breach of the Note by Defendants.

Therefore, Defendants indisputably breached the Note by such failure to pay.

    *iv*    *Plaintiff suffered damages from Defendants' breach.*

31.  Plaintiff's clearly suffered damages in an amount at least equal to the amounts owed under the Note. Moreover, due to the outright improper nature of Defendants' conduct, Plaintiff additionally suffered damages which may include any costs or fees incurred therefrom or therewith, punitive or exemplary damages, and attorneys' fees. Therefore, Plaintiff has conclusively proven he suffered damages from Defendants' unjustified breach of the Note.

## C.  Plaintiff has Conclusively Proven his Quantum Meruit/Unjust Enrichment Claim and Defendants Cannot Provide More Than a Scintilla of Evidence to Support their Affirmative Defenses Thereto.

32.  "Unjust enrichment is an equitable theory of recovery that is based on an implied agreement to pay for benefits received." *Jupiter Enterprises, Inc v. Harrison*, No. 05–00–01914–CV, 2002 WL 318305, *3 (Tex. App.—Dallas Mar. 1, 2002) (citations omitted). "To recover under unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Id.* (citations omitted).

33.  Defendants do not dispute they received a benefit from Plaintiff to the tune of $50,000, which financed all of Big Thirst's initial operations. Nor do they dispute that they accepted those funds. Under the circumstances (which are that Defendants expressly promised to repay the money both orally and in writing on multiple occasions to multiple parties), Defendants should have reasonably expected that Plaintiff expected to be repaid by them. Even though all the elements are met, Defendants contest that they should equitably be required to return the benefit they received.

34.  "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a

benefit or has passively received one which it would be unconscionable to retain." *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. –Dallas 2009). "The plaintiff must establish that the defendant received money 'which in equity and good conscience belongs to the plaintiff.'" *Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) (*quoting Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997)). "A claim for unjust enrichment lies where the circumstances give rise to an implied or quasi-contractual obligation to return benefits." *Texas Carpenters*, 21 F. Supp. 2d at 678. Plaintiff has alleged facts sufficient to create an implied or quasi-contractual obligation to return the benefits. Defendants do not, and, in fact, cannot, dispute that they promised to return the benefits.

35.    While Defendants claim that a showing of fraud, duress, or undue advantage is required, this is not what Texas law requires. "To be sure, some Texas courts have stated that 'recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong' and '[u]njust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'" *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 380 (5th Cir. 2020). "Faced with this language, some observers—including Petrolink—have suggested Texas law actually recognizes two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit." *Id.* Accordingly, Plaintiff's position is that a showing of fraud, duress, or undue advantage is not required under Texas law.

36.    However, if the Court disagrees, Plaintiff believes sufficient facts exist to constitute undue advantage in any event. "Although not well-defined under Texas law, courts have found undue advantage in cases where an offending party took advantage of a position of trust or where the offending party did not pay for goods or services." *In re Sanchez Energy Corp.*, 661 B.R. 522, 548

(Bankr. S.D. Tex. 2024). Here, Defendants certainly took advantage of a position of trust, as Mr. McGinnis and Mrs. Donoho were forming a company together and owed each other fiduciary duties of care and loyalty. Mrs. Donoho, and Plaintiff, her father, trusted Defendants' promises to repay Plaintiff for the advanced $50,000 in funds to start Big Thirst's operations. Moreover, Defendants indisputably did not repay the funds – and have continued to refuse to do so, despite Mr. McGinnis previously testifying payment would be made following resolution of the case between Big Thirst and Mrs. Donoho. *See* Ex. L at 99:11-101:15.

37.  According to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." Ex. H at 29:1-33:23. At the very least, according to Mr. McGinnis, himself, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." Ex. L at 98:2-24.

38.  In sum, the overwhelming evidence in this case conclusively establishes 1) valuable services were rendered or materials furnished by Plaintiff – namely, funds under the Note; 2) for the use and benefit of Defendants – namely, for startup expenses; 3) which services and materials were accepted by Defendants, used and enjoyed by them – namely, Defendants took the money, deposited it in their account, and used the money for their operation; and 4) under such circumstances as reasonable to notify Defendants Plaintiff, in performing such services, was expecting pay from Defendants – including based on specific promises made by Defendants regarding such repayment. *See Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex. 1985). Therefore, Plaintiff has brought forth sufficient evidence for his unjust enrichment claim, and Plaintiff's Motion must be granted.

**D.   Defendants fail to provide more than a scintilla of evidence in support of their affirmative defenses.**

39.  In response to Plaintiff's claims against them, Defendants assert the following affirmative

defenses in their Original Answer: (1) statute of frauds; (2) prior full payment of a debt; (3) waiver; (4) unclean hands; and (5) failure to mitigate. D.I. 30 at 3-4, ¶¶ 29-33.

1. ***The Statute Of Frauds Does Not Bar Enforcement In This Case.***

40.  The party pleading the statute of frauds bears the initial burden of establishing its applicability. TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). To satisfy the Texas statute of frauds, a promise may be evidenced by a "memorandum of" the promise (1) in writing and (2) signed by the party to be charged with the promise. TEX. BUS. & COM. CODE § 26.01(a). "The statute of frauds writing requirement may be satisfied by two or more documents." *Bocchi Americas Associates Inc v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 391 (5th Cir. 2008). "Further, the 'memorandum' need not embody all of the terms agreed upon." *Bocchi*, 515 F.3d at 391. Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds. *Bocchi*, 515 F.3d at 391.

41.  While Defendants may attempt to argue that the statute of frauds applied because "a promise by one person to answer for the debt, default, or miscarriage of another person" must be "in writing" and "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him," such an argument fails. TEX. BUS. & COM. CODE § 26.01(a), (b)(2). Any attempt by Defendants' to reframe the issue as a "promise to answer for the debt of another" under Section 26.01(b)(2) ignores the reality of the transaction: Defendants were not promising to pay someone else's debt; they were acknowledging their own obligation to repay startup capital provided for their business. In other words, the obligation was created, in the first instance, between Plaintiff and Defendants, with Mrs. Donoho merely acting as an agent for Defendants. This would be in direct contradiction to Mr. McGinnis's prior sworn statements. Indeed, Defendants cannot create a genuine fact dispute by contradicting their own prior sworn testimony. Thus, as an initial matter, Defendants have failed to meet their initial burden of showing the statute of frauds applies.

i    *The emails and text messages of Defendants satisfy the Statute of Frauds.*

42.  Nevertheless, even assuming arguendo, that the statue of frauds does apply to the Note, the statute of frauds is satisfied. "In the instant case, there are a number of writings, which, taken together, evidence an agreement between" the parties. *Bocchi*, 515 F.3d at 391. In *Bocchi*, the Fifth Circuit held that a combination of a letter evidencing an offer, the cashing of a cashier's check constituting acceptance, and a fax, which was unsigned by the party to be charged but was on that party's letterhead taken together constituted a writing sufficient to satisfy Texas' statute of frauds. *See id.*

43.  Similarly, in this case, including as set forth above, multiple undisputed facts exist establishing the status of all parties in view of the Note, including emails, texts, and business records. These writings specifically confirm Defendants' assumption of the Note in writing on multiple occasions. Further, the Note itself was a full written contract that contained all essential elements of the parties' agreement. Defendants do not, and cannot, dispute this fact. Thus, in order for Defendants to have assumed the Note, all that was needed is a writing by Defendants evidencing their assumption of said contract. Again, there exists multiple writings making this assumption more than clear. For example, the emails written by Mr. McGinnis on Big Thirst's letterhead is sufficient to satisfy Texas' statute of frauds, as well as the statements in the Big Thirst Business Plan provided to third parties.

ii    *Even if the Statute of Frauds is found to apply, exceptions preclude its application.*

a.    *Promissory Estoppel bars application of the statute of frauds.*

44.  Even if these writings were insufficient, the promissory estoppel exception to the statute of frauds is satisfied. "Promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury." *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972). "To invoke promissory

estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 581 (N.D. Tex. 2013). "Moreover, the agreement which was the subject of the oral promise must be in writing at the time the oral promise to sign was made." *Id.*

45.  Here, Mr. McGinnis, both for himself and on behalf of Big Thirst, did promise to sign the Note. Ex. 1 at 2-3, ¶ 6; Ex. 2 at 4, ¶ 13. Although he never did, this is sufficient to invoke the promissory estoppel exception to the statute of fraud as the agreement that was the subject of the oral promise (the contract between Mr. Wylie and Mrs. Donoho) was in writing at the time Mr. McGinnis' oral promise was made. Ex. 2 at 4, ¶ 13; Exhibit L at 98:5-101:15 & 282:2-15; Exhibit I at 13, ¶ 7. Mr. McGinnis promised—both orally and in writing—that Big Thirst would repay the loan, knowing Plaintiff was relying on those statements. *Id.* Plaintiff relied on these statements by funding Big Thirst's startup costs. Ex. 1 at 3, ¶ 6; Ex. 2 at 4, ¶ 13. Additionally, at the time of the Note, Mrs. Donoho was both an officer and director of Big Thirst, and Plaintiff relied on this, in addition to Mr. McGinnis's statements, in loaning the money for use by Big Thirst. Ex. 1 at 3, ¶ 6; Ex. 2 at 4, ¶ 13; Ex. I at 2, ¶ 3.04 & 12, ¶ 6; Ex. L at 187:4-188:8 & 282:2-15. Under *Moore Burger*, enforcement of the contract in this case is required to prevent injustice.

> b.    *The Main Purpose Doctrine bars application of the statute of frauds' suretyship provision.*

46.  Even if the Statute of Frauds is erroneously found to apply and that there is a suretyship, a recognized exception to the suretyship provision is the main purpose doctrine which applies where the promisor's primary objective was to secure a benefit for itself. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 827-828 (Tex. 2012). The main purpose doctrine requires a plaintiff to prove: (1) the defendant intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the

defendant's own use and benefit—that is, the benefit it received was the defendant's main purpose for making the promise. *Yates*, 422 S.W.3d at 642. Importantly, the question of intent to be primarily responsible for the debt is a fact question that <u>takes into account all the facts and circumstances of the case</u>. *Id*. (emphasis added). Here, the evidence shows: Defendants received and used the $50,000 to start Big Thirst; a majority of those funds were spent directly on Big Thirst expenses; and Big Thirst's business could not launch without these funds. Thus, Defendants' main purpose was self-benefit, not guaranteeing another's debt.

### 2. *Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of payment.*

47.    While Defendants contend that Mrs. Donoho "has fully paid the [Note] or loan made the basis of this suit" (D.I. 30 at 3, ¶ 30), Defendants have no evidence to support this contention. Rather, the reality is that Mrs. Donoho has made no payments under the Note because Defendants, not Mrs. Donoho, are obligated and liable under the Note.

### 3. *Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of waiver.*

48.    While Defendants contend some waiver of the payment occurred by Plaintiff, this is likewise unsupported by the actual facts in this case. *See* D.I. 30 at 2, ¶ 31. Rather, here, the very fact that Plaintiff consistently requested Defendants make payments under the Note and subsequent filing of the instant lawsuit clearly indicates that Plaintiff has not engaged in any conduct which would be considered a waiver of any of Plaintiff's rights under the Note.

### 4. *Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of unclean hands.*

49.    While Defendants contend that Plaintiff has unclean hands due to some unsupported allegation that Plaintiff should have insisted on payment by Mrs. Donoho, especially because she should have plenty of money. *See* D.I. 30 at 4, ¶ 32. Not only is this completely unsupported by, and

contrary to, the facts in this case, it further fails to understand the applicable law. Simply put, in Texas, the affirmative defense to a contract of unclean hands places the burden on the defendant to show (a) some unjust, unconscientious, or inequitable conduct marked by a lack of good faith, unconscionability, or violation of equitable principles, such as unjust, deceitful, or bad faith conduct; (b) a direct relation between the bad conduct and the subject matter of the lawsuit, such that the conduct is more than merely collateral to the cause of action; and (c) an injury to the defendant as a result of the bad conduct that is a serious harm or cannot be corrected without application of the doctrine. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 841 (5th Cir. 2004); *Westport Ins. Corp. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 662 F. Supp. 3d 727, 735 (S.D. Tex. 2023); *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 407 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 Fed. Appx. 256 (5th Cir. 2018).

50. Here, Defendants cannot provide even a scintilla of evidence to show that Plaintiff engaged in any such bad conduct; that any alleged bad conduct is related to the Note, its validity, or its enforcement; or that Defendants suffered any actual injury, including because, as discussed further below, Defendants actually gained an unearned benefit from the events. Moreover, Defendants' allegation that Plaintiff should insist Mrs. Donoho pay is nowhere near sufficient to meet the type of conduct required under the unclean hands doctrine.

### 5. _Defendants fail to provide more than a scintilla of evidence in support of their affirmative defense of failure to mitigate._

51. Defendants allege the affirmative defense of failure to mitigate, but fail to provide more than a scintilla of evidence to support it. "The mitigation of damages doctrine 'prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff.'" *Balfour Beatty*, 173 F. Supp. 3d at 406. "Texas mitigation law 'requires a claimant to mitigate damages if it can do so with "trifling expense or with reasonable exertions."'"

*Balfour Beatty*, 173 F. Supp. 3d at 406. "The party asserting failure to mitigate has the burden of proving facts establishing lack of mitigation and must prove the amount by which the damages were increased by the failure to mitigate." *Balfour Beatty*, 173 F. Supp. 3d at 406.

52.  While Defendants assert this defense, they cannot provide even a scintilla of evidence to support it, including in view of the overwhelming evidence to the contrary. Defendants have no evidence that Plaintiff has failed to mitigate its damages, and most certainly has no evidence of how much any allege damages of Plaintiff were allegedly increased by any such alleged failure to mitigate. Rather, all the Defendants can show is that Plaintiff attempted to recover the funds from Defendants, Defendants refused, and Plaintiff ultimately filed this lawsuit to protect his rights.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

NOW WHEREFORE, for at least those reasons stated in this response, Plaintiff has met his burden on summary judgment to show the evidence conclusively proves each element of Plaintiff's claims such that Plaintiff's Motion must be granted, and summary judgment should be entered in favor of Plaintiff and against Defendants, and Plaintiff requests this Honorable Court enter same. Plaintiff prays for such other and further relief, whether general or special, at law or in equity, to which Plaintiff may be shown to be justly entitled.

DATED: November 26, 2025                     Respectfully submitted,

                                                              Mousilli Law, PLLC

                                     BY:    */s/ Shea N. Palavan*
                                                Shea N. Palavan
                                                   TX Bar No. 24083616
                                                Lema Mousilli
                                                   TX Bar No. 24056016
                                                11807 Westheimer Road
                                                Suite 550, PMB 624
                                                Houston, Texas 77077
                                                Tel: (281) 305-9313
                                                service@mousillilaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service on this November 26, 2025, via electronic filing manager as follows:

John W. Thomas
**THOMAS WILLIAMS MCCONNELL PLLC**
2104 San Antonio St., 2ⁿᵈ Floor
Austin, Texas 78701
Tel: (512) 495-1447
jt@twmattorneys.com

Attorney for Defendants,
Big Thirst, Inc. and Matt McGinnis

*/s/ Shea N. Palavan*                         
Shea N. Palavan
