1:24-CV-01512-DAE
Plaintiff
EXHIBIT
M
\_\_\_\_

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement and Mutual Release (the "Agreement") is entered into and between Big Thirst, Inc. ("Big Thirst"), Lauren Wylie Donoho ("Donoho") and Matthew McGinnis ("McGinnis"; Big Thirst, Donoho and McGinnis are referred to collectively herein as the "Parties"). This Agreement takes effect on the last date on which a Party affixes their signature hereto (the "Effective Date").

## RECITALS

WHEREAS Big Thirst offers e-commerce services to customers in the spirits industry;

WHEREAS McGinnis is the CEO and the majority shareholder of Big Thirst;

WHEREAS Donoho is currently a shareholder of Big Thirst and was formerly an officer and director of Big Thirst;

WHEREAS Donoho developed certain intellectual property used by Big Thirst in connection with its e-commerce services including but not limited to an e-commerce platform, website, and data dashboard;

WHEREAS disputes arose regarding the operation Big Thirst and the ownership and control of its shares and assets;

WHEREAS Big Thirst filed a lawsuit related to those disputes styled *Big Thirst, Inc. v. Donoho et al.*, which is currently pending as Case No. 1:22-CV-00467-RP in the United States District Court for the Western District of Texas, Austin Division (the "Lawsuit");

WHEREAS Donoho asserted counterclaims against Big Thirst as well as third-party claims against McGinnis and the other directors of Big Thirst in the Lawsuit;

WHEREAS all of the parties in the Lawsuit deny the allegations against them;

WHEREAS the Parties wish to resolve the Lawsuit through this Settlement Agreement without the uncertainty and expense of further litigation;

WHEREAS the Parties mutually agree that, pursuant to the terms and conditions set forth in this Agreement, it is in their collective best interest for the Parties to settle their disputes and disagreements and for Big Thirst to redeem the shares owned by Donoho;

WHEREAS it is the intention of the Parties to fully, finally, absolutely, and forever resolve any and all claims and disputes between and among them, save and except those specifically reserved by the terms of this Agreement;

THEREFORE, in consideration of the foregoing, the mutual agreements herein, and other good and valuable consideration, the Parties make the following Settlement

Agreement.

## AGREEMENT

1. **Dismissal of Suit and Waiver of Sanctions**. The Parties shall, within two (2) business days after the Effective Date, file a Joint, Stipulated Motion to Dismiss the Lawsuit with Prejudice of all claims and causes of action that were or could have been asserted in the Lawsuit, along with a proposed order, in the forms attached hereto as **Exhibit A**. Additionally, Big Thirst and McGinnis hereby forever waive, forfeit, and abandon any and all rights to receive the sanctions imposed by the court against Donoho in the Lawsuit in the amount of $80,137.50, as well as any other fees, penalties, interest, or other related compensation. Donoho also hereby forever waives, forfeits, and abandons any and all rights to receive payment on any loans she claims to have made to Big Thirst, as well as any other fees, penalties, interest, or other related compensation. To avoid doubt, the Parties acknowledge that Hunter Wylie, Donoho's father, is not a party to this Agreement and he is not hereby waiving or releasing claims he may have, if any.

2. **Sale of Donoho's Shares**. Subject to the terms of this Agreement and the Stock Repurchase Agreement attached hereto as **Exhibit B** (together with the Stock Assignment attached thereto, the "Transfer Documents"), Donoho agrees to sell and convey to Big Thirst, and Big Thirst agrees to purchase from Donoho, free and clear of any encumbrances, all of Donoho's shares and interests in Big Thirst, Inc. specifically 2,700,000 shares of common stock, but excluding the amounts owing to Donoho under this Agreement and the Transfer Documents to avoid doubt (the "Repurchased Shares"). The purchase price for the Repurchased Shares is $370,000.00 (the "Purchase Price"), which shall be paid as further provided in and according to the terms of the Transfer Documents. In the event Big Thirst fails to pay the full Purchase Price when due under the Transfer Documents, and to cure same within the applicable notice and cure period, if any, as her sole and exclusive remedy, Donoho shall be entitled to retain all installments of the Purchase Price paid by Big Thirst and not proceed with the release of the Stock Assignment to Big Thirst as contemplated under the Transfer Documents and revoke the License as provided in Section 3 below. However, and to avoid doubt, upon payment of the Purchase Price in full, Donoho shall cause the executed Stock Assignment to be delivered to Big Thirst as provided in the Transfer Documents and the License shall automatically become irrevocable as provided in Section 3 below.

3. **License.** To the extent not owned by Big Thirst, Donoho hereby grants to Big Thirst a non-exclusive, fully assignable and sublicensable, worldwide, royalty free license (the "License") to use any and all intellectual property of any kind, including, without limitation, any inventions, developments, designs, concepts, names, marks, software, technology, and any other patentable, copyrightable, or proprietary works and items,

which were created by Donoho in connection with any of Donoho's work relating to Big Thirst and/or its affiliates, including but not limited to all aspects of the website, e-commerce platform, and data dashboard at issue in the Lawsuit. In the event Big Thirst fails to pay the full Purchase Price according to the terms of the Transfer Documents, and to cure same within the applicable notice and cure period, if any, Donoho may revoke the License on written notice to Big Thirst. However, and to avoid doubt, upon payment of the Purchase Price in full, the License shall automatically become irrevocable.

4. **Mutual General Releases**

    4.1. Subject to and except as provided in Section 4.3 below, McGinnis and Big Thirst, as well as their respective directors, officers, employees, shareholders, successors, predecessors, affiliates, agents, representatives and assigns, and other persons acting by, through, or on account of them, hereby generally and completely release Donoho, as well as her agents, representatives and assigns, and other persons acting by, through, or on account of her, from any and all claims, causes of action, liabilities, expenses, costs, attorneys' fees and obligations, of any kind, whether arising from statute, common law, case law, or otherwise, known or unknown, accrued or unaccrued, whether contractual or tortious or otherwise, whether arising in law or in equity, from the beginning of time through the Effective Date of this Agreement.

    4.2. Subject to and as except as provided in Section 4.3 below, Donoho as well as her successors, predecessors, agents, representatives and assigns, and other persons acting by, through, or on account of her, hereby generally and completely release McGinnis and Big Thirst, as well as their respective directors, officers, employees, shareholders, successors, predecessors, affiliates, agents, representatives and assigns, and other persons acting by, through, or on account of them, including but not limited to Big Thirst Marketing LLC, Mark Shilling, and Suzanne McGinnis, from any and all claims, causes of action, liabilities, expenses, costs, attorneys' fees and obligations, of any kind, whether arising from statute, common law, case law, or otherwise, known or unknown, accrued or unaccrued, whether contractual or tortious or otherwise, whether arising in law or in equity, from the beginning of time through the Effective Date of this Agreement).

    4.3. To avoid doubt and notwithstanding the foregoing or anything to the contrary herein, nothing herein shall be construed as a release or waiver of the obligations of the Parties under this Agreement and the Transfer Documents, including, without limitation, the obligation of Big Thirst to pay the Purchase Price, and the obligation of Donoho to cause the Stock Assignment to be delivered upon payment of the Purchase Price in full, according to the terms of the Transfer Documents, according. Additionally, the Parties acknowledge that Hunter Wylie, Donoho's father, is not a party to this Agreement and he is not hereby waiving or releasing claims he may have, if any.

D000009

5. **Confidentiality**

    5.1. The Parties agree that the terms of this Agreement shall remain confidential. The Parties may disclose to others that the Claims between them have been resolved to the satisfaction of all Parties. The Parties agree that notwithstanding the foregoing, any Party may disclose the terms of this Agreement to a third-party in the following circumstances:

    5.1.1. Insofar as disclosures are reasonably necessary to carry out and effectuate the Party's regular business operations, including making necessary disclosures to a Party's officers, directors, partners, lenders, insurers, or regulators;

    5.1.2. Insofar as disclosures are necessary to carry out, enforce and effectuate the terms of this Agreement;

    5.1.3. Insofar as disclosure is necessary to a Party's tax, financial, and legal advisors, or government regulators, or their insurers; and

    5.1.4. Insofar as disclosure is required by court order, subpoena or other compulsory or legal process.

6. **Additional Settlement Terms**.

    6.1. **Acknowledgment; No Admission**. The Parties agree and acknowledge that they are entering into this Agreement for the purpose of resolving Claims and disputes, and avoiding the substantial costs, expenses and uncertainties associated with such disputes. It is expressly agreed and acknowledged that neither the execution nor performance of any of the terms of this Agreement, or the settlement of the Lawsuit, shall be deemed to constitute and admission of liability or indication by any Party that any of the claims or potential claims have any merit.

    6.2. **Notices**. In the event either party fails to pay or perform any obligation when due hereunder, the non-defaulting party shall first give the defaulting party written notice thereof and the opportunity to cure such default within 15 days after receipt of such notice prior to exercising any rights and remedies; provided, however, with respect to any failure to make any payment when due, the defaulting party shall only be entitled to one opportunity to cure such payment default per calendar year. Any notices given in connection with this Agreement must be in writing and delivered personally, by United States mail (with tracking or return receipt requested), by a nationally recognized courier service (such as FedEx or UPS), or by email (if the recipient has provided an email address). Notice that is personally delivered will be deemed received when personally delivered. Notice sent by United States mail or courier service will be deemed received when tracking information confirms its delivery. Notice transmitted by email will be deemed received if successfully transmitted without an error

message. A party may change its contact information for notices from time to time by giving written notice to the other party in accordance with this provision.

|  |  |
|---|---|
| If to Big Thirst: | Attn: Matthew McGinnis, CEO<br>Email (to both): matt@bigthirst.com and matt@bigthirstmarketing.com |
| If to Donoho: | Attn: Lauren Wylie Donoho<br>401 N. Howard Street<br>Newberg, Oregon 97132<br>Email: laurenlmw@gmail.com |
| With a copy to: | Lloyd & Mousilli, PLLC<br>Email: notices@lloydmousilli.com |

7. **Representations and Warranties.** By their signatures below, each Party represents, warrants, and affirms to the other Party as follows:

   7.1. Such Party has full right, power, legal capacity, and authority to enter into and perform this Agreement and the Transfer Documents, and to consummate the releases and transactions contemplated hereby and thereby, and has obtained all necessary consents and approvals therefor, is voluntarily entering into this Agreement and the Transfer Documents without duress, and this Agreement and the Transfer Documents constitute a valid and binding agreement enforceable against such Party in accordance with their terms;

   7.2. Such Party's entry into and performance of this Agreement and the Transfer Documents will not violate any laws applicable to, or agreements binding on, such Party;

   7.3. Such Party has made any investigation into this Agreement and the Transfer Documents, and all related facts, as such Party deems necessary or desirable, and such Party has had the opportunity to consult with and receive advice from such Party's own independent legal and tax advisors about this Agreement and the Transfer Documents and the releases and transactions contemplated hereby and thereby, and such Party is not relying on any representations, warranties, agreements, or understandings, which are not expressly set forth in writing in this Agreement or the Transfer Documents;

   7.4. Except for the Lawsuit, such Party has not filed any claim, complaint, or report against a releasee under this Agreement with any court, arbitrator, or governmental agency;

   7.5. With respect to all claims released by such Party under this Agreement, such Party has not made any prior pledge, assignment, or conveyance of the such

released claims, in whole or part; and

7.6. With respect to the Repurchased Shares, Donoho represents, warrants, and affirms that to the best of her knowledge, she has valid title to the Repurchased Shares free and clear of any liens, encumbrances, and adverse claims, she has not made any pledge, assignment, or conveyance of the Repurchased Shares, in whole or part (except for the conveyance to Big Thirst provided for in the Transfer Documents).

8. **Terms and Conditions**

    8.1. **Choice of Law and Venue.** This Agreement is made according to, is governed by, and will be construed and enforced in accordance with, the law of the State of Texas (without regard to conflicts of laws rules). Exclusive venue for any claims arising from or relating to this Agreement shall be in a court of proper jurisdiction in the State of Texas.

    8.2. **Recovery of Attorney Fees.** In the event of any legal proceeding to enforce or interpret this Agreement, the prevailing Party shall be entitled to recover from the other Party their reasonable and necessary attorney fees and expenses incurred in connection therewith.

    8.3. **Entire Agreement; Disclaimer of Reliance.** This Agreement and the Transfer Documents contains the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any and all other and prior agreements, arrangements, or understandings between the Parties with respect to such subject matter, whether oral or written. Except for the express representations, warranties, and agreements made in this Agreement and the Transfer Documents, the Parties are not relying on any representations, warranties, agreements, statements, or understandings of any kind, oral or written, in entering into and performing this Agreement and the Transfer Documents.

    8.4. **Severability; Interpretation.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it shall be formed to be valid and enforceable while still reflecting the original intent of this Agreement to the greatest extent possible, and to the extent such reformation is not possible, the remainder of the Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. The parties have been advised by independent counsel of their choice and participated jointly in the negotiation and drafting this Agreement and the Transfer Documents, which shall not be construed against any party as the drafting party. As used herein, "claims" means any and all causes of action, claims, suits, damages, judgments, liens, liabilities, obligations, and demands

whatsoever, whether at law or in equity, contract or tort. Use of any form of the word "including" shall be construed to be without limitation to the listed items.

8.5. **Amendments and Waivers in Writing.** No amendment, modification, or waiver of any provision of this Agreement or the Transfer Documents will be enforceable against a Party unless it is made in a writing signed by the Party against whom it is to be enforced.

8.6. **Execution in Counterparts.** This Agreement may be executed electronically (e.g. by DocuSign) and in one or more counterparts with the same effect as if the Parties had signed the same document. All counterparts so executed and delivered will be an original that is to be construed together and shall constitute one and the same Agreement.

**Big Thirst, Inc.**

By: *Matt McGinnis*
Matthew McGinnis, CEO

Date: 10/9/2024

*Matt McGinnis*
Matthew McGinnis, individually

Date: 10/9/2024

*Lauren Wylie Donoho*
Lauren Wylie Donoho

Date: 10/2/2024

# STOCK REPURCHASE AGREEMENT

THIS STOCK REPURCHASE AGREEMENT (the "*Agreement*") is made effective as of the date signed by both parties as indicated on the signature page below (the "*Effective Date*") by and between BIG THIRST, INC., a Delaware corporation (the "*Company*"), and LAUREN WYLIE DONOHO (the "*Stockholder*").

The Stockholder and the Company have entered into that certain Confidential Settlement Agreement dated the same as this Agreement (the "*Settlement Agreement*");

As contemplated by the Settlement Agreement, Stockholder and the Company are entering into this Agreement, pursuant to which Stockholder is selling and conveying to the Company, and the Company is repurchasing, all of the Stockholder's equity and ownership interests in the Company (the "*Repurchased Shares*"), which includes 2,700,000 shares of the Company's common stock;

THEREFORE, in consideration of the foregoing, the mutual agreements herein, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Repurchase.

    1.1 Repurchase and Sale of Repurchased Shares. Subject to the terms and conditions of this Agreement, the Stockholder agrees to sell, assign and transfer to the Company, and the Company agrees to repurchase from the Stockholder, the Repurchased Shares and all of the Stockholder's right, title and interest therein.

    1.2 Purchase Price. The purchase price for the Repurchased Shares is $370,000.00 (the "*Purchase Price*"). Within three (3) business days after the Effective Date, the Company shall make an initial down payment of the Purchase Price in the amount of $37,000 (10% of the Purchase Price). The remaining unpaid balance of the Purchase Price ($333,000) shall accrue interest at a fixed rate equal to 7.5% per annum and the remaining principal and interest will be due and payable in equal monthly installments of $ $6,672.64 (payments will be due on the same day of the month as the Effective Date (or next business day if not on a business day)), and any and all remaining principal and interest shall be due and payable no later than then fifth anniversary of the Effective Date. However, the Company may prepay the outstanding balance, in whole or part, without penalty or premium at any time. Any prepayments will be applied first to interest and then to principal and the amount of the monthly installments due and payable will be calculated accordingly based on the five year term provided above. All payments will be electronically deposited into the following IOLTA account of Stockholder's legal counsel:

    | | |
    |---|---|
    | Account: | Lloyd & Mousilli, PLLC IOLTA |
    | Address: | 11807 Westheimer Rd., STE 550 PMB 944 |
    | | Houston, TX 77077 |
    | Bank: | Chase Bank |
    | Routing Number: | 111000614 |
    | Account Number: | 610962729 |

    1.3 Closing. The closing of the transaction contemplated hereby (the "*Closing*") is taking place on the Effective Date of this Agreement. At the Closing, the Stockholder shall execute the Stock

D000014

Assignment in the form attached hereto as **Exhibit A** (the "*Stock Assignment*") and deliver the same and any stock certificates representing the Repurchased Shares to Stockholder's legal counsel, who shall hold the same in escrow as security for the payment of the Purchase Price. Upon payment in full of the Purchase Price, the executed Stock Assignment and all stock certificates representing the Repurchased Shares shall be released from escrow and delivered to the Company. All terms of this Agreement survive the Closing.

1.4     Termination of Rights as the Stockholder.  Upon payment in full of the Purchase Price, the Repurchased Shares shall cease to be outstanding for any and all purposes, and the Stockholder shall no longer have any rights as a holder of the Repurchased Shares, including any rights that the Stockholder may have had under the Company's governing documents or otherwise. Additionally, until payment of the Purchase Price in full and provided the Company is not in default of payment of the Purchase Price beyond the applicable notice and cure period, the Repurchased Shares shall be treated as if already cancelled and the holder thereof shall not have the right to receive any dividends or other consideration (other than the Purchase Price as provided herein) or to vote or consent on any matter relating to the Company.

1.5     No Withholding.  Stockholder acknowledges and agrees that Company shall not deduct or withhold any amounts for tax obligations from Company's payments to Stockholder under this Agreement and Stockholder shall be solely responsible for payment of any taxes owed on amounts paid under this Agreement.

2.     Mutual General Release.

2.1     Release by Stockholder. Subject to and except as provided in Section 2.3 below, effective upon payment in full of the Purchase Price, Stockholder hereby generally releases, acquits, and forever discharges the Company and its affiliates, and their respective directors, officers, governing persons, shareholders, employees, agents, representatives, and insurers, from any and all causes of action, claims, suits, damages, judgments, liens, liabilities, obligations, and demands whatsoever, whether at law or in equity, contract or tort, known or unknown, asserted or unasserted, now accrued or that may accrue hereafter, or that arise out of or relate to facts or transactions that existed, occurred, happened, arose, or transpired at any time on or before the date upon which the Purchase Price is paid in full.

2.2     Release by Company. Subject to and except as provided in Section 2.3 below, the Company hereby generally releases, acquits, and forever discharges the Stockholder and their agents and representatives from any and all causes of action, claims, suits, damages, judgments, liens, liabilities, obligations, and demands whatsoever, whether at law or in equity, contract or tort, known or unknown, asserted or unasserted, now accrued or that may accrue hereafter, or that arise out of or relate to facts or transactions that existed, occurred, happened, arose, or transpired at any time on or before the date upon which the Purchase Price is paid in full..

2.3     Exclusions from Release.  To avoid doubt and notwithstanding the foregoing or anything to the contrary herein, nothing herein shall be construed as a release or waiver of the obligations of the Parties under this Agreement or the Settlement Agreement, including, without limitation, the obligation of Big Thirst to pay the Purchase Price according to the terms hereof and the obligation of Stockholder to cause the Stock Assignment to be delivered to Big Thirst upon payment of the Purchase Price in full as provided herein. Additionally, the Parties acknowledge that Hunter

D000015

Wylie, Donoho's father, is not a party to this Agreement or the Settlement Agreement and he is not hereby or thereby waiving or releasing claims he may have, if any.

3. **Representations and Warranties**. The Stockholder represents and warrants as follows as of the date of this Agreement and through the date upon which the Purchase Price is paid in full and the Stockholder's executed Stock Assignment is delivered to Big Thirst as provided in Section 1.3 above:

    3.1    **Ownership of Shares**. The Stockholder, to their knowledge, has good and marketable right, title and interest (legal and beneficial) in and to all of the Repurchased Shares, free and clear of all liens, pledges, security interests, charges, claims, equity or encumbrances of any kind.

    3.2    **Authorization**. The Stockholder has all necessary capacity, power, and authority to execute, deliver and perform the Stockholder's obligations under this Agreement and all agreements, instruments and documents contemplated hereby and to sell and deliver the Repurchased Shares being sold hereunder, and this Agreement constitutes a valid and binding obligation of the Stockholder.

    3.3    **No Conflict**. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby will not result in a breach by the Stockholder of, or constitute a default by the Stockholder under, any agreement, instrument, decree, judgment, order, or law, to which the Stockholder is a party or by which the Stockholder may be bound.

    3.4    **No Future Participation**. The Stockholder acknowledges that the Stockholder will have no future participation in any Company gains, losses, profits or distributions. If the Repurchased Shares increase in value by any means, or if the Company's equity becomes freely tradable and increases in value, the Stockholder acknowledges that the Stockholder is voluntarily forfeiting any opportunity to share in any resulting increase in value from the Repurchased Shares.

    3.5    **Purchase Price**. The Stockholder understands that there is no public market for the Repurchased Shares and agrees the Purchase Price has been arbitrarily determined and negotiated by the Stockholder and is not based on any particular financial statements, projections, or other valuation metrics or criteria.

    3.6    **Tax Matters**. The Stockholder has had an opportunity to obtain advice concerning the tax consequences of this Agreement and the transaction contemplated hereby from the Stockholder's own independent tax advisers, and the Stockholder is not relying on any advice from the Company or its representatives in entering into and performing this Agreement. The Stockholder understands that the Stockholder (and not the Company) shall be responsible for determining and timely paying and reporting the Stockholder's tax liability relating to this Agreement, the transaction contemplated hereby, and the Stockholder's ownership of the Repurchased Shares until the Stock Assignment and stock certificates for the Repurchased Shares are delivered to the Company as provided above.

    3.7    **No Assignments**. The Stockholder has not assigned, pledged, or otherwise transferred, in whole or in part, any interest in the Repurchased Shares or claims released hereunder.

4. **Indemnification for Misrepresentations**. The Stockholder shall indemnify, defend, and hold harmless the Company and its affiliates, and their respective directors, officers, governing persons, shareholders, employees, agents, representatives, and insurers, from and against any and all claims and liabilities arising from or relating to the breach or inaccuracy in any material respect of the Stockholder's express representations and warranties herein.

D000016

5. <u>Miscellaneous</u>.

    5.1    <u>Binding Effect; Assignment</u>. Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of, and be binding upon, the respective successors and permitted assigns of the parties. The releases in this Agreement shall also inure to the benefit of the releasees thereunder; otherwise, there are no third party beneficiaries with standing to this Agreement (including by way of subrogation). This Agreement is made in connection with the Settlement Agreement, which is intended to resolve all disputes between the parties and with the expectation that the Company will be dealing with the Stockholder to resolve any disputes that may arise under or relate to this Agreement and the Settlement Agreement. Accordingly, except for transfers to the Stockholder's heirs (including a trust for the benefit of the Stockholder's heirs) or legal representative occurring upon the death or legal incapacity of the Stockholder, the Stockholder may not transfer or assign any of her rights under this Agreement unless the Company in its discretion joins in such assignment as a party. To avoid doubt, this provision shall not be deemed to limit the Stockholder from making, without the Company's consent or joinder, any assignment of payments she receives hereunder whereby the Stockholder retains exclusive standing to enforce this Agreement against the Company and the assignee's recourse is limited to enforcing such assignment against Stockholder. No assignment of this Agreement will release the assignor of its obligations hereunder (and the assignor and assignee shall be jointly and severally responsible for the obligations of the assignor).

    5.2    <u>Governing Law; Venue; Attorneys' Fees</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas (without regard to choice of laws rules). The exclusive forum and venue for any disputes arising under or relating to this Agreement shall be a court of appropriate jurisdiction in the State of Texas. The prevailing party in any action to enforce or interpret this Agreement shall be entitled to recover its reasonable attorneys' fees and expenses from the nonprevailing party.

    5.3    <u>Notices</u>. In the event of any breach of this Agreement, the non-defaulting party shall give the defaulting party written notice thereof and 15 days after the defaulting party's receipt of such notice to cure such breach before the non-defaulting party may exercise any rights or remedies with respect to such breach; provided, however, with respect to any failure to make any payment when due, the defaulting party shall only be entitled to one opportunity to cure such payment default per calendar year. All notices under or relating to this Agreement shall be given in accordance with the Settlement Agreement, and, to avoid doubt, a party may change its contact information for notices as provided in the Settlement Agreement.

    5.4    <u>Entire Agreement; Disclaimer of Reliance</u>. This Agreement and the Settlement Agreement contains the entire agreement and understanding of the parties, and supersedes all other agreements or understandings, written or oral, with respect to the subject matter hereof. Except for the express representations, warranties, and terms of this Agreement and the Settlement Agreement, the parties disclaim reliance on any representations, warranties, projections, statements, agreements, or understandings.

    5.5    <u>Amendments and Waivers</u>. No amendment, modification, or waiver of any provision of this Agreement will be effective unless it is made in writing and signed by the party against whom it is to be enforced.

D000017

5.6     Further Assurances.  Each party hereto agrees to execute any additional documents and take any additional actions as may be necessary or reasonably requested by the other party in order to give effect to the intent of this Agreement and the transactions contemplated hereby.

5.7     Spouses Bound.  In the event Stockholder is or becomes married prior to the Company paying the Purchase Price in full and Stockholder delivering the Stock Assignment to the Company as provided herein, the Stockholder's spouse shall be bound by all terms of this Agreement to the extent the spouse has any rights or interests relating to the Repurchased Shares, and the Stockholder shall cause the Stockholder's spouse to execute and deliver the Stock Assignment and any other documents that may be necessary or reasonably requested by the Company in order to give effect to the intent of this Agreement and the transactions contemplated hereby.

5.8     Interpretation; Severability.  The parties have participated jointly in the negotiation and preparation of this Agreement and this Agreement shall not be construed against any party as the drafting party.  Whenever possible, each provision of this Agreement shall be interpreted and, if necessary reformed by the court, in such manner as to be effective and valid under applicable law while still giving effect to the original intent of this Agreement to the greatest extent possible.  Any provision of this Agreement that court, after giving effect to the prior sentence, holds is still prohibited by or invalid under applicable law shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  As used herein, "*claims*" means any and all causes of action, claims, suits, damages, judgments, liens, liabilities, obligations, and demands whatsoever, whether at law or in equity, contract or tort.  Use of any form of the word "*including*" shall be construed to be without limitation to the listed items.

5.9     Electronic Execution and Delivery; Counterparts.  This Agreement may be executed and delivered in counterparts and/or electronically (e.g. by DocuSign), and copies of such signatures shall be deemed originals for all purposes.

D000018

IN WITNESS WHEREOF, each of the parties have executed this Stock Repurchase Agreement as of the Effective Date set forth above.

**COMPANY**:

BIG THIRST, INC.

By: _Matt McGinnis_     10/9/2024
Name: Matt McGinnis
Title: CEO, Big Thirst

**STOCKHOLDER**:

_Lauren Wylie Donoho_     10/2/2024

D000019

# STOCK ASSIGNMENT

FOR VALUE RECEIVED, the undersigned does hereby sells, assigns and transfers to BIG THIRST, INC., a Delaware corporation (the "**Company**") all of the undersigned's equity and ownership interests in the Company, including 2,700,000 shares of the Company's common stock, which are in the Stockholder's name on the books of the Company, and does hereby irrevocably constitute and irrevocably appoint the Company's secretary as the undersigned's lawful attorney-in-fact, with full power of substitution, to transfer such stock on the books and in the records of the Company. Such power of attorney is coupled with an interest and shall survive the death, disability, bankruptcy, or incapacity of the undersigned.

Dated: 10/2/2024

**STOCKHOLDER**

Signed by: *Lauren Wylie Donoho*
La——D650C5491418479...

**SPOUSE**

DocuSigned by: [signature]
Jas——DC4D59A1D521441...

This Stock Assignment was executed pursuant to the terms of that certain Stock Repurchase Agreement by and between the Company and the Stockholder dated the same as this Stock Assignment. By signing above, the Stockholder and her Spouse acknowledge and agree to all terms of such Stock Repurchase Agreement.

D000020