**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| HUNTER WYLIE,<br>*Plaintiff*,<br>v.<br>BIG THIRST, INC. and MATT MCGINNIS,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:24-CV-01512-DAE |

**DEFENDANTS' SUPPLEMENTAL BRIEFING PURSUANT TO THE COURT'S SEPTEMBER 10, 2026 ORDER**

Defendants Big Thirst, Inc. and Matt McGinnis ("Defendants") file this Supplemental Briefing Pursuant to the Court's September 10, 2026 Order and respectfully show the Court as follows:

## I. Amount in Controversy

1. The rule governing dismissal for want of jurisdiction in federal cases is that the amount claimed by the plaintiff generally controls. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). However, that rule is not absolute. If a court is satisfied to a legal certainty "from the proofs…that the plaintiff was never entitled to recover that amount…the suit will be dismissed." *Id.* at 289. Moreover, under Rule 12(b)(1), "the party invoking diversity jurisdiction must show by a preponderance of the evidence that the amount-in-controversy requirement is met." *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155 (5th Cir. 2018) (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

2. When analyzing amount in controversy for purposes of subject matter jurisdiction, courts look to the state of affairs at the time suit is filed. *See St. Paul Mercury*, 303 U.S. at 290 ("events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

107 (1998) (legal expenses yet to be incurred do not confer standing). *See also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) ("Yet jurisdiction depends on the state of affairs when the case begins; what happens later is irrelevant") (citing *St. Paul Mercury*, 303 U.S. at 289-290).

3. The Note is a seven-year installment obligation and provides for eighty-four monthly payments of $1,048.90 beginning August 1, 2023, following an initial twenty-four-month interest-only period during which $5,250.00 in accrued interest was added to the $50,000.00 principal. (Dkt. 39-1 at 6-11). Critically, the Note contains **no acceleration clause**. Rather than acceleration of amounts due as a penalty, Section E provides a two percent penalty on late payments. (Dkt. 39-1 at 9-10). Nothing in the instrument permits the holder to declare unmatured installments immediately due. As a result, the holder of the Note may recover only those installments that have matured.

4. As of December 9, 2024, when Plaintiff filed suit, seventeen installments had matured — those due on the first of each month from August 2023 through December 2024. Those seventeen installments total $17,831.30. Adding the two percent late payment penalty of $20.98 per installment adds $356.66, for a total of $18,187.96.

5. Plaintiff pleaded that Defendants were "indebted to Mr. Wylie in the amount of $75,846.41" as of October 31, 2024. (Dkt. 1 ¶ 14.) That figure is the entire outstanding balance of the Note. It is not an estimate of what was then due and owing; it is what would have been owed only if the Note could be accelerated, which it cannot. Plaintiff's jurisdictional allegation therefore rests on a legal premise the instrument does not support. On the most favorable view of the record, the amount in controversy was $18,187.96, some **$57,658.45 short** of the jurisdictional threshold.

6. Plaintiff has argued that he has a claim for attorneys' fees which counts toward the amount in controversy. Although Plaintiff is correct that attorneys' fees may be included when determining the amount in controversy,[1] jurisdiction, and thus the amount in controversy, is measured based on the facts as of the time the complaint is filed, as described above. That rule applies to attorneys' fees as well. There is an apparent circuit split on this issue which the Fifth Circuit has yet to weigh in on, but the better reasoned decisions hold that the amount of attorneys' fees incurred as of the date of filing controls for purposes of amount in controversy.

7. As Judge Easterbrook wrote in *Gardynski-Leschuck v. Ford Motor Co.*:

> Just the other day the Supreme Court held that legal expenses yet to be incurred on the date a suit begins do not create a "case or controversy" within the meaning of Article III. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, ——, 118 S.Ct. 1003, 1019, 140 L.Ed.2d 210 (1998). For the same reason, legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount "in controversy" when the suit is filed.

*Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998). That is because the value of legal services that have not been and may never be incurred is not "in controversy" between the parties. *Id.* at 958.

8. The Ninth Circuit held the opposite in *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018). In particular, the court held that "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy." *Id.* at 788. That logic, however, fails to account for the dynamic pointed out by Judge Easterbrook in *Gardynski-Leschuck*, namely that the defendant may agree to settle at any time and thus hypothetical future attorneys' fees are not "in controversy" at the time the complaint is filed. *Gardynski-Leschuck*, 142 F.3d at 958 ("Yet this

---

[1] *See Choate v. State Farm Mut. Auto. Ins. Co.*, 62 F.3d 395 (5th Cir. 1995).

calculation includes the value of legal services that have not been and may never be incurred, and are therefore not 'in controversy' between the parties").

9. Here, Plaintiff has previously conceded that he had incurred no more than $5,000 in attorneys' fees in connection with preparation and filing of his complaint and other case initiation-related documents. (Unsworn Declaration of Lema Mousilli, Dkt. 10-5, at ¶ 4). Plaintiff's attorneys' fees are thus insufficient to satisfy the amount in controversy requirement.

10. Finally, exemplary damages are not available to Plaintiff and thus cannot serve to increase the amount in controversy. As described in Defendants' Motion for Summary Judgment (Dkt. 39 at ¶ 41), unjust enrichment is not an independent cause of action under Texas law, and federal courts therefore have granted motions to dismiss claims for unjust enrichment. *See Granting Hands LLC v. Rad Exotics LLC*, 2024 WL 3995404, at *12 (N.D. Tex. July 31, 2024); *Denicus v. Bosacker*, 2021 WL 2715978, at *8 (W.D. Tex. Jan. 26, 2021); *Llort v. BMW of N. Am., LLC*, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020); *Roach v. Berland*, 2015 WL 5097987, at *2-3 (N.D. Tex. Aug. 31, 2015). Because unjust enrichment is not a separate claim and should be dismissed, Plaintiff does not have a basis to claim exemplary damages as part of the amount in controversy.

## II. PRECLUSIVE EFFECT OF BIG THIRST V. LAUREN WYLIE DONOHO

11. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal common law, there are four requirements for claim preclusion to apply: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both suits. *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003). As described below, those

requirements are satisfied with respect to the now-dismissed case of *Big Thirst, Inc. v. Lauren Wylie Donoho*, Cause No. 1:22-CV-00467 in the United States District Court for the Western District of Texas, Austin Division (the "467 Case"). Plaintiff's claims here are accordingly barred by claim preclusion.

**A. Identity of Parties**

12. First, with respect to identity of parties, the Supreme Court has identified six exceptions to the rule that the parties must be identical in both suits. *Taylor*, 553 U.S. at 893 ("the rule against nonparty preclusion is subject to exceptions…[f]or present purposes, the recognized exceptions can be grouped into six categories"). One of those exceptions is where the party to the second suit is in "privity" with a party to the first suit, which the Supreme Court in *Taylor* described as "a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Id.* at 894 (internal quotations omitted).

13. Under Fifth Circuit precedent regarding when parties are in privity for purposes of claim preclusion, "parties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173–74 (5th Cir. 1992). Put another way, "As the preclusive effects of judgments have been expanded to include nonparties in more and more situations, however, it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper," and "[m]odern decisions search directly for circumstances that justify preclusion." *Id.* at 1173; *see also Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.) ("privity is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion") (citation omitted), cert. denied, 434 U.S. 832 (1977).

14. Wylie and Donoho are the only two parties to the Loan Agreement and Promissory Note on which this suit is founded. (Dkt. 39-1 at 6–11). That relationship is not incidental to this litigation; it is its foundation. Wylie has no relationship of any kind with Defendants. His sole path to them runs through the instrument he executed with his daughter and through her dealings with Big Thirst. McGinnis had no communication with Wylie whatsoever until approximately two years after the Note was signed. (Dkt. 39-1 at 2 (McGinnis Decl. ¶ 6)). The relationship between creditor and borrower under the very instrument sued upon is precisely the sort of "pre-existing substantive legal relationship[]" *Taylor* identifies. 553 U.S. at 894.

15. The relationship between Wylie and Donoho is therefore "sufficiently close to afford application of the principle of preclusion." *Southwest Airlines*, 546 F.2d at 95. They are the two parties to the agreement at issue in this suit, and Wylie's asserted right here exists only because Donoho borrowed from him and then contributed those funds to Big Thirst. Moreover, the economic consequence of this suit is to discharge Donoho's own obligation, because any sum Defendants pay Wylie reduces what Donoho owes her father under the Note. As the Fifth Circuit has explained, "the privity label simply expresses a conclusion that preclusion is proper," and "[m]odern decisions search directly for circumstances that justify preclusion." *Russell*, 962 F.2d at 1173. Those circumstances are present here.

16. Plaintiff may argue that the parties' settlement agreement in the prior case carved out any claims by Wylie, stating that he "is not a party to this Agreement and he is not hereby waiving or releasing claims he may have, if any." (Dkt. 45-15 ¶¶ 1, 4.3). Those provisions do not answer the question before the Court. They disclaim a *release*—a contractual defense defining what the settling parties gave up as between themselves. Claim preclusion, on the other hand, is an attribute of the judgment, and it operates by force of law rather than by agreement. Private

parties may define the scope of the rights they surrender to one another, but they cannot by contract enlarge or diminish the preclusive effect of a federal court's judgment, which is controlled by federal common law, not contract. *Taylor*, 553 U.S. at 891.

**B. Court of Competent Jurisdiction and Final Judgment on the Merits**

17. The requirements of a court of competent jurisdiction and a final judgment on the merits are also met here. The prior suit was before this Court, and it is undisputed that the Court in that case was a court of competent jurisdiction. Additionally, the prior case was voluntarily dismissed with prejudice (467 Case, Dkt. 138), which constitutes a final judgment for purposes of claim preclusion. *Brooks*, 336 F.3d at 362 (in a case involving a voluntary dismissal with prejudice, "[a] dismissal with prejudice is a final judgment on the merits" for purposes of claim preclusion).

**C. Same Cause of Action**

18. Finally, the same cause of action was involved in both suits. To determine whether two suits involve the same claim or cause of action for purposes of claim preclusion, the Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments, § 24. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Under that test, "The critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Id.* at 396 (emphasis in original).

19. In the 467 Case, Donoho asserted the right to repayment of the same $50,000 Wylie asserts here, and she asserted it as her own. She pleaded that she "contributed 90% of the working capital ($50,000)," and that "[t]he $50,000 was loaned by Mrs. Donoho to Big Thirst . . . and has yet to be repaid." (467 Case, Dkt. 118, ¶ 17.) She pleaded that McGinnis falsely represented "that she would be repaid her $50,000," and that she "loaned Big Thirst $50,000 . . . in reliance," seeking those sums as damages. (*Id.* ¶¶ 85, 88.) Big Thirst answered that it "received a loan in a disputed

amount from Donoho." (467 Case, Dkt. 105 ¶ 17.) As a result, the right to repayment of the money at issue here was litigated in the 467 Case as Donoho's right.

20. Donoho then resolved that claim for consideration. Big Thirst paid $370,000 for her shares and forgave $80,137.50 in sanctions, and Donoho "forever waive[d], forfeit[ed], and abandon[ed] any and all rights to receive payment on any loans she claims to have made to Big Thirst." (Dkt. 45-15 ¶ 1.) The claim Wylie brings here is the mirror image of the claim Donoho surrendered: the same $50,000, advanced to the same company, at the same time, on the same alleged promise of repayment. The claims in this case therefore arise from the same nucleus of operative facts as the claims regarding the $50,000 in the 467 Case, and the causes of action asserted by Wylie in this case are the same as Donoho's claims in the 467 case. *Petro-Hunt,* 365 F.3d at 396.

## III. Choice of Law

21. If the Court concludes it has subject matter jurisdiction, Texas choice-of-law rules govern. "A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Under Texas precedent, choice of law analysis proceeds issue by issue, with each issue being governed by the law of the state with the most significant relationship to that issue. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984) ("the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue").

22. Here, there are two causes of action. The first cause of action, Wylie's claim for breach of contract, involves two issues and implicates two different bodies of law. The first issue is the terms of the Note between Wylie and his daughter Donoho. The Note states that it "shall be

interpreted under, and governed by, the laws of the State of Oregon." (Dkt. 39-1 at 11). Texas courts honor a contractual choice of law as between the parties who made it. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (adopting Restatement (Second) of Conflict of Laws § 187; "[j]udicial respect for their choice advances the policy of protecting their expectations").

23. Defendants, however, are not parties to the Note, which gives rise to the second issue: if Defendants agreed to assume Donoho's obligations under the Note (they did not), what state's law governs that agreement? Restatement § 187 applies only where the parties to a contract agreed to a choice of law. When there is no choice of law agreement in a contract, the most significant relationship test controls. In particular, Texas courts identify the state with the most significant relationship using the contacts between transaction and locale set out in Restatement (Second) of Conflict of Laws § 188. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) ("[w]hen the parties to a contract, as in this case, have not themselves chosen what law is to govern their agreement, section 188(1) of the Restatement states the general rule"); *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228 (Tex. 2008).

24. Here, each § 188 contact points to Texas. The assumption Plaintiff alleges was made in Texas, by a Texas domiciliary acting for a corporation whose principal place of business is in Texas, to Donoho, then residing in Texas; its subject was the funding of a Texas company's operations, and the funds were deposited in a Texas bank account and spent on Texas expenses. (Dkt. 1 ¶¶ 2–3, 12). Plaintiff was not a party to that exchange. On his own account it occurred between McGinnis and Donoho, and the writings he offers to prove it are communications to which he was never a party. (Dkt. 39, ¶¶ 23–24). Oregon's only connection is the payee's residence,

which cannot outweigh contacts that are otherwise entirely Texan. Texas law therefore governs any assumption of the Note made by Defendants (there was none).[2]

25. Texas law likewise governs Plaintiff's unjust enrichment claim. A choice-of-law clause in an agreement Defendants never signed does not supply the law for a claim arising by operation of law rather than by agreement, and ¶ K of the Note by its terms reaches only "this Agreement." Restitution claims are governed by Restatement § 221, under which the weightiest contact is the place where the defendant received the benefit. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 193–94 (5th Cir. 2010). Whatever benefit Defendants received, they received it in Texas.

26. The remaining § 221 contacts point the same direction. There was no relationship between Plaintiff and Defendants to be centered anywhere because McGinnis had no communication with Plaintiff until approximately two years after the Note was signed. (Dkt. 39-1 at 2 (McGinnis Decl. ¶ 6)). Additionally, the acts said to have conferred a benefit were Donoho's deposits into Big Thirst's Texas bank account and her payment of the company's Texas expenses. (Dkt. 39 ¶ 9). Finally, Defendants are a Texas domiciliary and a corporation whose principal place of business is in Texas. (Dkt. 1 ¶¶ 2–3).

[2] Plaintiff's breach of contract claim is barred by the statute of frauds regardless of whether Texas or Oregon law applies. As described in Defendants' Motion for Summary Judgment, an agreement to answer for the debt of another is not enforceable unless in writing signed by the person against whom it would be enforced. (Dkt. 39, ¶ 13). Oregon law is, if anything, stricter: "[a]n agreement to answer for the debt, default or miscarriage of another" is "**void**" unless "it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party." Or. Rev. Stat. § 41.580(1), (1)(b). Plaintiff has produced no writing that satisfies either standard.

Respectfully submitted,

**GREGG LAW, P.C.**
910 West Avenue, Suite #3
Austin, Texas 78701
(512) 522-0702 (Phone)
(512) 727-6070 (Facsimile)

By: */s/ Curran M. Walker*
Peter T. Gregg
State Bar No. 00784174
pgregg@gregglawpc.com
Curran M. Walker
State Bar No. 24101288
cwalker@gregglawpc.com

***ATTORNEYS FOR DEFENDANTS BIG THIRST, INC. AND MATT MCGINNIS***

**CERTIFICATE OF SERVICE**

I certify by my signature above that a true and correct copy of the foregoing document was served on the persons as indicated below on September 17, 2026:

Lema Mousilli
Mousilli Law PLLC
11807 Westheimer Road, Suite 550
PMB 624
Houston, Texas 77077
service@mousillilaw.com

Shea Neal Palavan
Houstonip
5353 West Alabama Street
Suite 303
Houston, Texas 77056
shea@houstonip.com

*/s/ Curran M. Walker*
Peter Gregg / Curran M. Walker