**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HUNTER WYLIE,**<br>***Plaintiff*,**<br><br>**V.**<br><br>**BIG THIRST, INC. and MATT MCGINNIS,**<br>***Defendants*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 1:24-CV-01512-DAE**<br><br>**(JURY DEMANDED)** |

**PLAINTIFF'S SUPPLEMENTAL BRIEFING REGARDING SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Plaintiff, Hunter Wylie ("**Plaintiff**"), in the above-styled and numbered cause, and respectfully file this *Plaintiff's Supplemental Briefing Regarding Summary Judgment* (the "**Briefing**") in response the Court's Order requesting supplemental briefing (D.I. 62), and, in support thereof, would respectfully show unto this Honorable Court as follows:

## TABLE OF CONTENTS


Table of Contents ..... ii
Table of Authorities ..... iii
**A.** Cases ..... iii
**B.** Statutes ..... iv
II. Introduction ..... 1
III. Background ..... 1
IV. Argument and Authorities ..... 2
A. Issue One: Amount In Controversy Exceeds $75,000 To A Legal Certainty. ..... 2
B. Issue Two: The Previous State Litigation and Settlement Have No Preclusive Effect ..... 4
C. Issue Three: Under Choice of Law, Texas Law Governs The Claims Against Non-Signatories, And, In Any Event, Defendants Waived Any Forum Objection. ..... 6
1. Each of Defendants may likely invoke the forum-selection and choice-of-law provisions. ..... 6
2. Plaintiff's claims likely fall outside the forum-selection and choice-of-law provisions. 7
3. Defendants' litigation conduct has waived their ability to invoke these provisions. ..... 8
V. Conclusion and Prayer for Relief ..... 9

# <u>TABLE OF AUTHORITIES</u>

**A.** <u>Cases</u>

*Accelerated Christian Educ., Inc. v. Oracle Corp.*,
925 S.W.2d 66 (Tex. App.—Dallas 1996, *no writ*) .................... 7
*Adams v. Raintree Vacation Exch., LLC*,
702 F.3d 436 (7th Cir. 2012).................... 6
*Compania Financiara Libano, S.A. v. Simmons*,
53 S.W.3d 365 (Tex. 2001).................... 6
*Crescent Lumber & Shingle Co. v. Rotherum*,
218 F.2d 638 (5th Cir. 1955).................... 4
*Demes v. ABN Amro Services Co., Inc.*,
59 Fed. Appx. 151 (7th Cir. 2003).................... 5
*Doe v. Apostolic Assembly of Faith in Christ Jesus*,
452 F. Supp. 3d 503 (W.D. Tex. 2020).................... 7, 8
*Espinoza v. Allstate Tex. Lloyd's*,
222 F. Supp. 3d 529 (W.D. Tex. 2016).................... 2
*Franlink Inc. v. BACE Services, Inc.*,
50 F.4th 432 (5th Cir. 2022) .................... 6, 7, 8
*Garza v. Chavarria*,
155 S.W.3d 252 (Tex. App.—El Paso 2004, *no pet.*) .................... 4
*Glob. Oil Tools, Inc. v. Expeditors Int'l of Washington, Inc.*,
429 F. Supp. 3d 221 (E.D. La. 2019) .................... 9
*Greenwood v. Tillamook Country Smoker*,
857 S.W.2d 654 (Tex. App.—Houston [1st Dist.] 1993, *no writ*) .................... 7
*Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops*,
24 F.3d 743 (5th Cir.1994).................... 6
*Gutierrez v. Collins*,
583 S.W.2d 312 (Tex. 1979).................... 8
*Harland Clarke Holdings Corp. v. Milken*,
997 F. Supp. 2d 561 (W.D. Tex. 2014).................... 8
*Hernandez v. Scottsdale Ins. Co.*,
599 F. Supp. 3d 1226 (M.D. Fla. 2022) .................... 4
*In re Mirant Corp.*,
613 F.3d 584 (5th Cir. 2010).................... 9
*Jelec USA, Inc. v. Safety Controls, Inc.*,
498 F. Supp. 2d 945 (S.D. Tex. 2007) .................... 8
*Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*,
417 F.2d 129 (5th Cir. 1969).................... 2
*Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*,
575 F.2d 530 (5th Cir. 1978).................... 5
*Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc.*,
921 S.W.2d 254 (Tex. App.—Houston [1st Dist.] 1995), *judgment modified and remanded*,
962 S.W.2d 507 (Tex. 1998).................... 6
*Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc.*,
962 S.W.2d 507 (Tex. 1998).................... 6

*Leonard v. Ivey*,
No. 14-15-00908-CV, 2016 WL 7478374 (Tex. App.—Houston [14th Dist.] Dec. 29, 2016, *pet. denied*) ........ 6
*Liberto v. D.F. Stauffer Biscuit Co., Inc.*,
441 F.3d 318 (5th Cir. 2006) ........ 5
*Louisiana Revitalization Fund, LLC v. Starr Surplus Lines Ins. Co.*,
No. CV 22-1532, 2023 WL 11904068 (E.D. La. Jan. 24, 2023) ........ 9
*Martin v. Scenic Tours USA Inc.*,
No. CV 16-15809, 2018 WL 6680929 (E.D. La. Dec. 19, 2018) ........ 9
*Music Sales Corp. v. Morris*,
73 F. Supp. 2d 364 (S.D.N.Y. 1999) ........ 5
*Pittsburgh Corning Corp. v. Walters*,
1 S.W.3d 759 (Tex. App.—Corpus Christi–Edinburg 1999, *pet. denied*) ........ 8
*Schiro v. Farley*,
510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) ........ 5
*Sw. Intelecom, Inc. v. Hotel Networks Corp.*,
997 S.W.2d 322 (Tex. App.—Austin 1999, *pet. denied*) ........ 7
*Tiffany Trail Owners Ass'n, Inc.*,
215 S.W.3d 474 (Tex. App.—Eastland 2006, *no pet.*) ........ 6

**B.** Statutes

28 UNITED STATES CODE, Section 1332 ........ 2

## II. INTRODUCTION

1. Before the Court are the motions for summary judgment of both Plaintiff and Defendants, Big Thirst, Inc. ("**Big Thirst**") and Matt McGinnis ("**Mr. McGinnis**") (collectively, "**Defendants**"), and all corresponding briefing and exhibits. Following the close of briefing by each of Plaintiff and Defendants regarding their respective summary judgment motions, on September 10, 2026, the Court entered an Order requesting supplemental briefing regarding three (3) points: (1) the amount-in-controversy/legal certainty standard; (2) the preclusive effect, if any, of prior state-court litigation and a settlement; and (3) the governing law for claims against non-signatories and related contract/tort theories. D.I. 62.

2. The Court Ordered supplemental briefing on these three issues and set page limits and deadlines. *Id.* Plaintiff submits this supplemental brief pursuant to the Court's Order (D.I. 62) to address these issues in turn, establishing the amount in controversy exceeded $75,000 at filing; the prior federal action and settlement do not bar Plaintiff's claims; and Texas law governs due to Defendants' waiver.

## III. BACKGROUND

3. The record shows the $50,000 loan was obtained to fund Big Thirst's startup, acknowledged in contemporaneous emails and the August 2021 Business Plan, used for company expenses and deposits, and repeatedly treated by McGinnis as a company obligation to be repaid on a schedule beginning in mid-2023, yet Defendants have made no payments. *See* D.I. 42-6 & 42-14. Indeed, according to Mr. McGinnis, the funds "in the amount of $50,000 [were] to be used for startup expenses for Big Thirst" and were partially "deposited into the Big Thirst [], bank account with Frost Bank" and partially used "for business things." D.I. 42-3 at 5, ¶ 14. At the very least, according to Mr. McGinnis, at least $43,000 in funds went "[e]ither in expenditures directly for the company or deposited into the bank account of [the company]." *Id.* Pursuant to the terms of the Note, monthly

installments of $1,048.90 were to be made beginning August 1, 2023, yet Defendants have not made a single payment. *Id.* at 6, ¶ 16.

4. The Court noted that a prior settlement agreement in litigation involving the same parties exists and that the agreement itself acknowledges that Plaintiff is not a party to it. D.I. 62. Defendants previously referenced that settlement and record materials in their summary judgment briefing. The agreement between Lauren Donoho ("**Mrs. Donoho**") and Plaintiff purports to be governed by Oregon law, but the parties' briefing has proceeded under Texas law.

## IV. ARGUMENT AND AUTHORITIES

### A. Issue One: Amount In Controversy Exceeds $75,000 To A Legal Certainty.

5. Under the Court's Order, which cites *St. Paul Mercury*, the jurisdictional inquiry looks to whether it appears to a "legal certainty" that Plaintiff's claims are for less than $75,000.[1] The record shows the amount in controversy—measured at filing—includes principal, accrued interest, and contractually specified late-payment penalties, and exceeds $75,000 to a legal certainty, without counting fees and costs. Defendants' argument that only matured installments count is misplaced, and Plaintiff meets the correct standard without relying on post-filing fees or speculative components.

6. The Note provides for a principal amount of $50,000 to be loaned at a rate of 5.25% interest, and with monthly payments of $1,048.90 beginning August 1, 2023. D.I. 45-3. The Note further includes a 2% monthly late charge on any late amount after notice of default, plus attorneys' fees to the prevailing party. *Id.*

7. Under the Note, Defendants owe the $50,000 principal balance, approximately $9,250 in accrued interest at filing, and a 2% late-payment penalty that accrues "for any late payment" after

[1] *Espinoza v. Allstate Tex. Lloyd's*, 222 F. Supp. 3d 529, 532 (W.D. Tex. 2016) (*citing* 28 U.S.C. § 1332(a)(1)) ("Diversity jurisdiction exists 'where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States.'"); *see also Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129, 131 (5th Cir. 1969).

notice of default, which Plaintiff calculates to approximately $18,352.08 through November 2024, totaling about $77,599.11, exclusive of attorney's fees and costs. Further, Plaintiff's sworn declaration quantifies the balance due as of February 7, 2025 at over $80,000, exclusive of additional fees and costs accruing thereafter. D.I. 45-1 at 4-5, ¶ 11.

8. Here, while payment is not required for the first two (2) years, the initial principal amount of $50,000 still accrued interest at the rate of 5.25% per annum, so that the first payment in August 2023 was for the principal plus the first two (2) years of interests, *i.e.*, $55,491.72. Thus, the initial payment would have been for an amount of $55,491.72. The following table illustrates the amounts owed by Defendants on the Note up to the time of filing:

| **Payment Due Date** | **Total Amount (Principal + Interest)** | **Amount Due** | **Amount Paid** | **Overdue Amount** | **2% Penalty** |
|---|---|---|---|---|---|
| August 2023 | $50,000.00 + $5,491.72 | $1,048.90 | $0.00 | $55,491.72 | $1,109.83 |
| September 2023 | $55,491.72 + $242.78 | $1,048.90 | $0.00 | $55,734.50 | $1,114.69 |
| October 2023 | $55,734.50 + $243.84 | $1,048.90 | $0.00 | $55,978.33 | $1,119.57 |
| November 2023 | $55,978.33 + $244.91 | $1,048.90 | $0.00 | $56,223.24 | $1,124.46 |
| December 2023 | $56,223.24 + $245.98 | $1,048.90 | $0.00 | $56,469.22 | $1,129.38 |
| January 2024 | $56,469.22 + $247.05 | $1,048.90 | $0.00 | $56,716.27 | $1,134.33 |
| February 2024 | $56,716.27 + $248.13 | $1,048.90 | $0.00 | $56,964.40 | $1,139.29 |
| March 2024 | $56,964.40 + $249.22 | $1,048.90 | $0.00 | $57,213.62 | $1,144.27 |
| April 2024 | $57,213.62 + $250.31 | $1,048.90 | $0.00 | $57,463.93 | $1,149.28 |
| May 2024 | $57,463.93 + $251.40 | $1,048.90 | $0.00 | $57,715.34 | $1,154.31 |
| June 2024 | $57,715.34 + $252.50 | $1,048.90 | $0.00 | $57,967.84 | $1,159.36 |
| July 2024 | $57,967.84 + $253.61 | $1,048.90 | $0.00 | $58,221.45 | $1,164.43 |
| August 2024 | $58,221.45 + $254.72 | $1,048.90 | $0.00 | $58,476.17 | $1,169.52 |
| September 2024 | $58,476.17 + $255.83 | $1,048.90 | $0.00 | $58,732.00 | $1,174.64 |
| October 2024 | $58,732.00 + $256.95 | $1,048.90 | $0.00 | $58,988.96 | $1,179.78 |
| November 2024 | $58,988.96 + $258.08 | $1,048.90 | $0.00 | $59,247.03 | $1,184.94 |
| | | | | | |
| Total: | | | | $59,247.03 | $18,352.08 |
| **Grand Total:** | | | | | **$77,599.03** |

9. Defendants' matured-installment theory undervalues the amount in controversy by disregarding the Note's express late charge mechanism "for any late payment" following notice of default and accrued contractual interest – no acceleration is necessary. Those are not penalties on

unmatured installments; they are bargained-for charges on delinquent amounts that were late by the time of filing. Defendants also rely on non-binding authority to exclude recoverable attorneys' fees beyond amounts incurred at filing. Rather, the Fifth Circuit standard looks to the amount "in controversy," and, where a fee-shifting provision makes attorneys' fees recoverable by contract, such recoverable fees are included in the jurisdictional calculus. Regardless, Plaintiff's calculations exceed $75,000 without counting attorneys' fees. To the extent Defendants suggest exemplary damages are needed to reach the threshold, Plaintiff need not rely on exemplary damages because the principal, accrued interest, and contractual late charges at filing already exceed $75,000, exclusive of interest under 28 U.S.C. § 1332 and exclusive of costs.

10. Defendants concede no payments have been made, and, thus, Defendants have defaulted under the Note by failing to pay the amounts due thereunder. *See* D.I. 45-14 at 285:21-286:2. Defendants' filings have not identified any contrary cap or limitation that would reduce the recoverable amount below the jurisdictional threshold. To the extent statutory attorney's fees and out-of-pocket costs are recoverable under applicable law, those would only further confirm jurisdiction.[2]

**B. <u>Issue Two: The Previous State Litigation and Settlement Have No Preclusive Effect.</u>**

11. The Court observed there "has been a prior settlement agreement in this litigation involving the same parties," and highlighted the provision stating that "Hunter Wylie is not a party to the agreement." Claim and issue preclusion do not apply here because (a) Plaintiff was not a party to the prior state-court litigation or the settlement and (b) the settlement expressly preserves Plaintiff's claims, and the record forecloses Defendants' attempted reliance on *Taylor v. Sturgell*.

12. The prior litigation between Defendants and Mrs. Donoho, and their October 2024

[2] *See Garza v. Chavarria*, 155 S.W.3d 252, 256 (Tex. App.—El Paso 2004, *no pet.*); *Crescent Lumber & Shingle Co. v. Rotherum*, 218 F.2d 638, 639 (5th Cir. 1955); *Hernandez v. Scottsdale Ins. Co.*, 599 F. Supp. 3d 1226, 1231 (M.D. Fla. 2022).

settlement, ***twice*** states that Plaintiff is not a party and is not releasing any claims and expressly carved out Plaintiff's claims and therefore have no preclusive effect against Plaintiff. *See* D.I. 42-16 at 2, ¶ 1, at 3, ¶ 4.3, & at 9-10, ¶ 2.3. Further, Defendant McGinnis confirmed, under oath, that the settlement does not affect Plaintiff's potential claim. These carve-outs, which the Court properly notes in its Order, defeat any contention that the settlement released or extinguished Plaintiff's claims or merged into the prior judgment. They also underscore that no issue material to Plaintiff's claims was "actually litigated" to judgment in the prior matter – the foundational requirement for issue preclusion.[3]

13. Defendants' argument that private parties cannot contract around claim preclusion misses the point: Plaintiff was not a party to the settlement or the earlier action, and the carve-out confirms that no party purported to release Plaintiff's rights. This is the precise opposite of the requirement that the parties must objectively manifest intent for a settlement to create claim preclusion.[4] There was no judgment adjudicating Plaintiff's claims or issues actually litigated and decided as to him. The prerequisites for nonparty preclusion are absent; there is no identity of parties, and Defendants' privity theory is incompatible with the settlement's explicit recognition that Plaintiff retained his own claims. "[S]ettlement agreements have preclusive effect only as to those parties who were *intended* to be bound by the agreement."[5] The claims here are asserted by the person who loaned the funds and who was expressly excluded from the settlement, based on Defendants' conduct and obligations they acknowledged, and were preserved from the earlier resolution.

14. Because Plaintiff was neither a party, nor in privity with any party, to the prior action for preclusion purposes, and the settlement ***twice*** preserves his claims, neither res judicata nor collateral

[3] *See Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 326 (5th Cir. 2006).
[4] *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 377 (S.D.N.Y. 1999) (*citing Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)) (holding issues resolved via settlement agreement do not support issue preclusion).
[5] *Demes v. ABN Amro Services Co., Inc.*, 59 Fed. Appx. 151, 152 (7th Cir. 2003) (*citing Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 538–539 (5th Cir. 1978)).

estoppel bars this action.[6]

**C. <u>Issue Three: Under Choice of Law, Texas Law Governs The Claims Against Non-Signatories, And, In Any Event, Defendants Waived Any Forum Objection.</u>**

15. The governing law for Plaintiff's claims against non-signatory Defendants is Texas law under ordinary conflicts principles and based on the parties' litigation conduct. The Note's Oregon clause does not bind non-signatories for tort and related non-contract theories, and Defendants' extensive litigation in this forum waives any forum objection.

***1. <u>Each of Defendants may likely invoke the forum-selection and choice-of-law provisions.</u>***

16. The Note contains an Oregon choice-of-law clause and Oregon forum selection clause binding its signatories—Plaintiff and Mrs. Donoho, with Mrs. Donoho signing on behalf of Defendant Big Thirst. D.I. 42-4 at 6-7. Here, Plaintiff's claims here are asserted against Defendants, with only Defendant Big Thirst being a signatory to the Note. Thus, under basic agency principles, when Mrs. Donoho signed the Note as an agent for Defendant Big Thirst, Defendant Big Thirst became bound by, and able to invoke, the contract's forum-selection and choice-of-law provisions.[7]

17. However, because only Defendant Big Thirst signed the Note, the non-signatory, Defendant McGinnis cannot generally invoke its forum-selection and choice-of-law provisions unless shown to be closely related.[8] Here, the record reflects that Defendants have treated the $50,000 loan reflected

[6] *See Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc.*, 921 S.W.2d 254, 260-261 (Tex. App.—Houston [1st Dist.] 1995), *judgment modified and remanded*, 962 S.W.2d 507 (Tex. 1998) (*citing Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops*, 24 F.3d 743, 745 (5th Cir.1994)); *Leonard v. Ivey*, No. 14-15-00908-CV, 2016 WL 7478374, *5 (Tex. App.—Houston [14th Dist.] Dec. 29, 2016, *pet. denied*); *Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001); *Jistel v. Tiffany Trail Owners Ass'n, Inc.*, 215 S.W.3d 474, 481 (Tex. App.—Eastland 2006, *no pet.*).
[7] *See Franlink Inc. v. BACE Services, Inc.*, 50 F.4th 432, 441-442 (5th Cir. 2022).
[8] *See id.* at 442 (*citing Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439-442 (7th Cir. 2012)) (factors considered in determining whether "non-signatories are closely related [include] (1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly.").

in the Note as corporate debt used for Defendant Big Thirst's operations, that Defendant McGinnis reviewed the loan document before execution, and that Defendants' own litigation statements attribute repayment responsibility to Defendant Big Thirst. On these facts, McGinnis's relationship to the transaction and alleged benefits likely make enforcement foreseeable and reflect knowing exploitation of the Note's benefits by Defendant McGinnis, making invocation by Defendant McGinnis, at most, a contested "closely related" question.

18. Thus, if properly done, each of Defendants are likely to be able to invoke the relevant provisions. However, in any event, as shown below, Defendants waived any reliance on these provisions by their litigation conduct in this Court.

***2. Plaintiff's claims likely fall outside the forum-selection and choice-of-law provisions.***

19. Even if Oregon law applied by contract as between Plaintiff and Defendants, that would not automatically govern Defendants on independent tort, ratification, and quasi-contract theories.[9] In Texas, courts are not bound by the parties' selection of a forum with regard to any cause of action if the interests of the public and potential witnesses strongly favor jurisdiction in a forum other than that which the parties have selected.[10] Again, all of the conduct and witnesses are located in Texas, and involve Texas entities and individuals.

20. Further, where no provision specifically covers the claims, Texas applies the Restatement (Second) of Conflict of Laws "most significant relationship" test to tort and quasi-contract claims. Factors include where the injury and conduct occurred, the domicile of the parties, and where the relationship is centered.[11] Here, the operative contacts are centered in Texas, including Defendants'

[9] *Id.*
[10] *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, *pet. denied*) (*citing Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996, *no writ*); *Greenwood v. Tillamook Country Smoker*, 857 S.W.2d 654, 657 (Tex. App.—Houston [1st Dist.] 1993, *no writ*)).
[11] *See Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 537 (W.D. Tex. 2020).

business operations, banking, communications, and the use of loan proceeds for Texas corporate operations, as well as testimony and litigation activity occurring in Texas. The Note's jurisdiction clause, moreover, expressly addresses disputes "sounding in contract, tort, or other areas of law," but Texas law permits enforcement of such language only against parties and closely related non signatories; where claims or parties fall outside that scope, Texas conflicts rules apply.

21. Even if Oregon law governs the Note's interpretation and enforcement as to signatories, to the extent the at-issue provisions do not cover Plaintiff's claims or the claims against non-signatory Defendant McGinnis, Texas law governs non-contract claims and equitable claims because Texas has the most significant relationship to the alleged conduct and the parties for those claims under Texas conflicts principles because the conduct, performance, and enrichment at issue are centered in Texas.[12] Defendants' own admissions and writings in Texas support this – the contacts underlying the claims—including alleged conduct, witnesses, business operations, banking, and communications—center in Texas. Further, Defendants repeatedly acknowledged in Texas that the $50,000 family loan funded Big Thirst's startup and that repayment would be made by the company beginning in 2023. *See* D.I. 45-11 at 13.

22. Thus, while the forum-selection and choice-of-law provisions assert coverage over any disputes relative to the agreement, the interests of justice support a finding that the provisions should not be applied and Texas law should govern.

***3. Defendants' litigation conduct has waived their ability to invoke these provisions.***

23. Lastly, regardless of the above issue of applicability of the provisions, Defendants have waived said provisions. Defendants have actively litigated this case in this Court for nearly two (2)

[12] *Id.*; *see also Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 581-584 (W.D. Tex. 2014); *Franlink*, 50 F.4th at 441; *Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 951-952 (S.D. Tex. 2007); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 770 (Tex. App.—Corpus Christi–Edinburg 1999, *pet. denied*) (*citing Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).

years, including filing a motion to dismiss (January 2025), answering (September 2025), moving for summary judgment (November 2025), responding to Plaintiff's motion (December 2025), and moving for a hearing in April 2026, without seeking transfer or otherwise invoking the Note's Oregon forum clause. Defendants more definitively waived any applicability of the relevant provisions, where they failed to bring such issue to the Court's attention in a responsive pleading which challenged venue.[13] This lack of assertion of said provisions and subsequent substantial participation is inconsistent with an intent to enforce the forum-selection clause and constitutes waiver under Fifth Circuit law.[14]

24. After waiver, the Court should not enforce a contractual forum provision *sua sponte*, particularly where the parties have fully briefed the merits, discovery is complete, and enforcing a waived clause would greatly prejudice Plaintiff after extensive proceedings. The record reflects Defendants' omission of any venue or forum motion during the pleadings and dispositive-motion phases. Accordingly, without having previously invoked the provisions, and having engaged in motion practice multiple times in this Court, Defendants have waived any right to these provisions.

25. Thus, to the extent any clause could have applied, Defendants relinquished it, and the case should proceed under Texas law for non-contract theories, with the Court declining to enforce any waived forum clause *sua sponte*.

## V. CONCLUSION AND PRAYER FOR RELIEF

26. In sum, the answers to the Court's questions are: (1) The amount in controversy exceeds $75,000 to a legal certainty, and the Court has diversity jurisdiction; (2) The prior state litigation and

[13] *See Martin v. Scenic Tours USA Inc.*, No. CV 16-15809, 2018 WL 6680929, *3 (E.D. La. Dec. 19, 2018).

[14] *See In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010); *Glob. Oil Tools, Inc. v. Expeditors Int'l of Washington, Inc.*, 429 F. Supp. 3d 221, 228-229 (E.D. La. 2019); *Louisiana Revitalization Fund, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 22-1532, 2023 WL 11904068, *8-*9 (E.D. La. Jan. 24, 2023).

settlement do not preclude Plaintiff's claims, because they expressly preserved Plaintiff's claims and Defendants admitted as much; and (3) Texas law governs the non-signatory claims and related theories, and their promises and ratification occurred in Texas, and, in any event, Defendants waived any potential forum objection by substantially litigating in this Court.

27. Plaintiff respectfully requests that this Honorable Court find subject-matter jurisdiction satisfied; reject any preclusion defense based on the prior settlement; hold that Texas law governs the non-contract claims and claims against non-signatories, and that any contractual forum/jurisdiction clause was waived by Defendants' litigation conduct and should not be enforced *sua sponte*; and proceed to adjudicate the merits consistent with the existing summary judgment record. Therefore, Plaintiff respectfully requests that the Court deny Defendants' motion and grant Plaintiff's motion for summary judgment.

DATED: September 17, 2026

Respectfully submitted,

**MOUSILLI LAW, PLLC**

BY: *<u>/s/ Shea N. Palavan</u>*

Shea N. Palavan
TX Bar No. 24083616
Lema Mousilli
TX Bar No. 24056016
11807 Westheimer Road
Suite 550, PMB 624
Houston, Texas 77077
Tel: (281) 305-9313
service@mousillilaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service on this September 17, 2026, via electronic filing manager as follows:

Peter T. Gregg
Curran M. Walker
**GREGG LAW, P.C.**
910 West Avenue, Suite #3
Austin, Texas 78701
Tel.: (512) 522-0702
Fax: (512) 727-6070

*Attorneys for Defendants,*
*Big Thirst, Inc. and Matt McGinnis*

*/s/ Shea N. Palavan*
Shea N. Palavan