**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| HUNTER WYLIE,<br>*Plaintiff*,<br><br>v.<br><br>BIG THIRST, INC. and MATT MCGINNIS,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:24-CV-01512-DAE |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING REGARDING SUMMARY JUDGMENT**

Defendants Big Thirst, Inc. and Matt McGinnis (together, "Defendants") file this Response to Plaintiff's Supplemental Briefing Regarding Summary Judgment, and in support thereof Defendants respectfully show the Court as follows:

## I. AMOUNT IN CONTROVERSY

1. Plaintiff argues in his Supplemental Briefing that, at the time this lawsuit was filed, the amount of $77,599.03 was due on the Note (Dkt. 64 at 2-3), but that argument rests entirely on a gross mischaracterization of the terms of the Note. In particular, Plaintiff argues that "the initial payment [in August 2023] would have been for an amount of $55,491.72," which amount Plaintiff arrives at by adding the entire amount of the principal to all accrued interest. (Dkt. 64 at 3). That approach to calculating the amount owed plainly contradicts the clear terms of the Note.

2. First, whereas the Note provides that it is for a term of seven years (Dkt. 39-1 at 6), Plaintiff argues here that the full amount of principal and interest came due after only two years. Moreover, the Note includes a table laying out exactly how much is due and when, and that table demonstrates conclusively that Plaintiff is wrong about the amount in controversy. (Dkt. 39-1 at 6-9). In the table, the third column from the left shows the amount that is due each month. For the first 24 months of the Note, no payments are due.

3. Beginning in month 25, the table shows that the outstanding principal and interest accrued to that point are to be paid off in monthly installments of $1048.90 until the Note is paid off in month 84. Plaintiff filed suit in December of 2024, which corresponds to month 41 in the table. Thus, under the unambiguous terms of the Note, 17 payments of $1048.90 (or $17,831.30) were due at the time of filing, falling far short of the $75,000 amount-in-controversy requirement. Additionally, as laid out in Defendants' Supplemental Briefing, adding the 2% late penalty to those payments only contributes $356.66 to the amount due. As a result, the Note itself demonstrates to a legal certainty that the amount in controversy is far less than the $75,000 threshold for the Court to have subject matter jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (if a court is satisfied to a legal certainty "from the proofs…that the plaintiff was never entitled to recover that amount…the suit will be dismissed").

4. With respect to the amount of attorneys' fees to be included in the amount in controversy, Plaintiff argues only that courts look to the "amount in controversy." (Dkt. 64 at 4). However, as Defendants set forth in their supplemental briefing, the amount in controversy with respect to attorneys' fees is best understood at the amount of fees actually incurred as of filing, not some hypothetical amount a plaintiff may incur in the future. (Dkt. 63 at ¶¶ 6-8).

5. Finally, Plaintiff appears to concede that he is not counting exemplary damages toward the amount in controversy, arguing that "Plaintiff need not rely on exemplary damages because the principal, accrued interest, and contractual late charges at filing already exceed $75,000…." (Dkt. 64 at 4).

## II. PRECLUSIVE EFFECT OF BIG THIRST V. LAUREN WYLIE DONOHO

6. Plaintiff's arguments regarding the preclusive effects of the prior lawsuit rest largely on the claim that the settlement agreement preserved Plaintiff's claims. In terms of the

elements of claim preclusion, Plaintiff is effectively arguing that his claims here were not asserted in the prior lawsuit, as evidenced by the parties' intent as recited in the settlement agreement. However, that position has been previously rejected by the Fifth Circuit in *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009). In that case, Oreck "contend[ed] that the district court should have abandoned the transactional test entirely and determined the scope of res judicata by the parties' actual intentions as reflected in the Settlement Agreement." *Id.* The Fifth Circuit refused to accept that position, writing that "[t]here is no authority from this circuit supporting Oreck's position, especially since the final judgment in *Oreck I* simply dismissed the case with prejudice without incorporating the Settlement Agreement…or any express reservations." *Id.*

7. Critically, *Oreck* went further and addressed the authorities cited for the proposition that parties' intent controls, two of which Plaintiff relies on here: *Liberto v. D.F. Stauffer Biscuit Co.* and *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.* As the *Oreck* court observed, *Liberto* was distinguishable because, unlike in *Oreck* (and in this case), the judgment there expressly incorporated a settlement agreement. *Oreck*, 560 F.3d at 402 n.3; *Liberto v. D.F. Stauffer Biscuit Co.,* 441 F.3d 318, 327 (5th Cir. 2006). And *Kaspar Wire Works* addressed issue preclusion, not claim preclusion. *Oreck*, 560 F.3d at 402 n.3; *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 532 (5th Cir. 1978).

8. This latter distinction is also important here, as Plaintiff's Supplemental Briefing relies in numerous places on authorities regarding issue preclusion rather than claim preclusion. (*See, e.g.*, Dkt. 64 at 5 n.4 (citing S.D.N.Y. case regarding issue preclusion)). Issue preclusion requires "that the issue has been actually litigated in the prior litigation." *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989). Claim preclusion, on the other hand, has no such requirement; it asks instead whether the same cause of action was involved in both suits. *Brooks v. Raymond*

*Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) (setting forth the four elements of claim preclusion). As set forth in *Oreck*, that question is resolved using the transactional test, "which requires that the two actions be based on the same nucleus of operative facts." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009). As set forth in Defendants' Supplemental Briefing, that test is met here. (Dkt. 63 at ¶¶ 18-20).

9. Additionally, allowing the settlement agreement to control the scope of claim preclusion here would rewrite the stipulation of dismissal the parties filed. The 467 Case ended in a stipulation of dismissal under Rule 41(a)(1)(A)(ii) that took effect upon filing and required no judicial act at all. (467 Case, Dkt. 138); (*see id.*, Dkt. 139 (quoting *Yesh Music v. Lakewood Church*, 727 F.3d 356, 362 (5th Cir. 2013)). Its operative sentence is unqualified: the parties "stipulate[d] and agree[d] to the dismissal with prejudice of all claims and counterclaims that were or could have been asserted herein." It states no exception, mentions neither Wylie nor the settlement agreement, and reserves nothing. The parties thus agreed to an unqualified dismissal, and under *Oreck* it is that dismissal, not the settlement agreement, that controls the scope of claim preclusion. *Oreck*, 560 F.3d at 402.

10. Plaintiff also argues that claim preclusion does not apply because he was not a party to the prior case. However, claim preclusion can apply to non-parties when they are in privity with a party, and Plaintiff here is in privity with Lauren Wylie Donoho, as explained in Defendants' Supplemental Briefing. (Dkt. 63 at ¶¶ 12-16).

## III. <u>CHOICE OF LAW</u>

11. As an initial matter, Plaintiff's claims that (1) the Note binds "its signatories—Plaintiff and Mrs. Donoho, with Mrs. Donoho signing on behalf of Defendant Big Thirst," and (2) Big Thirst is "a signatory to the Note" are contradicted by the Note itself. According to the Note,

it is made "by and among Hunter Wylie (hereinafter, known as 'LENDER') and Lauren Wylie Donoho (hereinafter, known as 'BORROWER')." (Dkt. 39-1 at 6). Moreover, Donoho signed under the heading BORROWER, in her own name, with no entity named and no representative capacity indicated. Plaintiff's claim that Big Thirst is a signatory also contradicts Plaintiff's own Complaint, which pleads that McGinnis "on behalf of Big Thirst expressly assumed the Contract" (Dkt. 1 ¶ 12) — an allegation that presupposes Big Thirst was *not* a party.

12. Plaintiff also argues in various places that Defendants have waived any objection to this forum. However, Defendants have made no such objection and have accordingly understood the Court's question to be directed to choice of law, not choice of forum.

13. Additionally, although it is unclear whether Plaintiff is arguing that Defendants have also "waived" the application of Oregon law to the Note, that argument should in any case be rejected. As Defendants set out in their supplemental briefing (Dkt. 63 at ¶ 21), Texas choice of law analysis proceeds issue by issue. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984). Here, the Note and the right and obligations it created are governed by Oregon law pursuant to ¶ K of the Note, and Texas law honors that choice as between Wylie and Donoho. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (adopting Restatement (Second) of Conflict of Laws § 187; "[j]udicial respect for their choice advances the policy of protecting their expectations").

14. Whether Defendants agreed to assume Donoho's obligations (they did not) is a separate issue, which is governed by the "most significant relationship" test of Restatement (Second) of Conflict of Laws § 188. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). As set forth in Defendants' Supplemental Briefing, that test heavily favors application of Texas law. (Dkt. 63 at ¶ 24).

Respectfully submitted,

**GREGG LAW, P.C.**
910 West Avenue, Suite #3
Austin, Texas 78701
(512) 522-0702 (Phone)
(512) 727-6070 (Facsimile)

By: *_/s/ Curran M. Walker_*
Peter T. Gregg
State Bar No. 00784174
pgregg@gregglawpc.com
Curran M. Walker
State Bar No. 24101288
cwalker@gregglawpc.com

***ATTORNEYS FOR DEFENDANTS BIG THIRST, INC. AND MATT MCGINNIS***

## CERTIFICATE OF SERVICE

I certify by my signature above that a true and correct copy of the foregoing document was served on the persons as indicated below on September 24, 2026:

Lema Mousilli
Mousilli Law PLLC
11807 Westheimer Road, Suite 550
PMB 624
Houston, Texas 77077
service@mousillilaw.com

Shea Neal Palavan
Houstonip
5353 West Alabama Street
Suite 303
Houston, Texas 77056
shea@houstonip.com

*/s/ Curran M. Walker*
Peter Gregg / Curran M. Walker