**FILED**
September 25, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNTER WYLIE | § | |
| | § | No. 1:24-CV-01512-DAE |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| BIG THIRST, INC.; | § | |
| and MATTHEW | § | |
| MCGINNIS | § | |
| | § | |
| *Defendants*. | § | |

ORDER DISMISSING FOR LACK OF SUBJECT MATTER JURISDICTION

Before the Court are Hunter Wylie's ("Plaintiff") and Big Thirst, Inc.'s (Defendant) respective Motions for Summary Judgment. (Dkts. ## 39; 45.) In its September 10, 2026, Order for Supplemental Briefing, the Court noted its ongoing responsibility to ensure that it has subject matter jurisdiction over an action. (Dkt. # 62); see Fed. R. Civ. P. 12(h)(3). In that Order, the Court instructed the parties to supply additional information concerning (1) the amount in controversy; (2) the effects of the parties' state court settlement on claim and/or issue preclusion judicata; and (3) in the event this Court has subject matter jurisdiction, whether it is required to apply Oregon law (the law purportedly governing the Note (see Dkt. # 39-1 at 11) or Texas law. (See Dkt. # 62.)

After careful consideration of the parties' Supplemental Briefs (Dkts. ## 63; 64) and Responses (Dkts. ## 66; 67), the Court finds this matter

suitable for disposition without a hearing. It finds that the amount in controversy does not exceed $75,000 to a legal certainty. Accordingly, it must **DISMISS** the case and **DENY** the parties' Motions for Summary Judgment as moot.

BACKGROUND

What began as a loan between father and daughter has evolved into a multi-year litigation spanning multiple states and judicial systems. (See Dkts. ## 39 at 1–3; 41 at 2–6.) Although they dispute whether she signed it in her personal capacity or as a representative of Big Thirst, neither party disputes that Mr. Wylie and Mrs. Donoho executed a $50,000 promissory note ("the Note") on July 22, 2021. (Dkt. # 39-1 at 6–11.) The Note provides for a seven-year installment payable in sixty monthly payments of $1,048.90 beginning August 1, 2023. (Id. at 6.) During the first twenty four months, however, the payments covered only $5,250.00 in accrued interest added to the $50,000.00 principal amount. (See id. at 6–9.) Defendants observe that "the Note contains no acceleration clause." (Dkt. # 63 at 2.) Under "ADDITIONAL LOAN TERMS," Section E, entitled "Additional Provisions Regarding Default," provides:

> **c. Penalty for Late Payment.** There shall also be imposed upon BORROWER a 2% penalty for any late payment computed upon the amount of any principal and accrued interest whose payment to LENDER is overdue under this loan agreement and for which LENDER has delivered a notice of default to BORROWER. Payment is considered late seven days after the due date (the first of the month).

(Dkt. # 39-1 at 10.) Nothing in the instrument permits the holder to declare unmatured installments immediately due. (See id.) As a result, the holder of the Note may recover only those installments that have matured.

## LEGAL STANDARD

Federal courts like this Court are courts of limited jurisdiction. See U.S. Const. art. 3, § 2. Federal statute provides that "[federal] district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states." 28 U.S.C. §§ 1332(a), (a)(1). Before it can exercise jurisdiction under § 1332(a), however, this Court must assure itself that the amount in controversy exceeds $75,000 to "a legal certainty" E.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90 (1938); cf. Turner v. HomeFirst Agency Inc., No. CV 23-01203, 2024 WL 3152251 (M.D. La. June 24, 2024). And this amount is fixed at the time of filing. St. Paul Reinsurance Co. Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir.1998).

"There are two types of attacks against a court's subject-matter jurisdiction: 'facial' and 'factual.'" Reardon v. Am. Airlines, Inc., 167 F.4th 294, 299 (5th Cir. 2026) (quoting Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)). "The former challenges subject-matter jurisdiction on the pleadings alone, and the court must presume the factual allegations in the complaint are true." Id. In attempting to ascertain whether the amount in

controversy exceeds $75,000 to a legal certainty, the Court may consider "affidavits, testimony, or other evidentiary materials" to ensure it has subject matter jurisdiction. Reardon, 167 F.4th at 300.

In short, "there is substantial authority that the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quoting Kling v. Hebert, 60 F.4th 281, 284 (5th Cir. 2023)) (citation modified). An unsworn declaration under 28 U.S.C. § 1746 qualifies as it is competent summary judgment evidence. See Eltalawy v. Lubbock Indep. Sch. Dist., 816 F. App'x 958, 961 n.6 (5th Cir. 2020); Matthews v. United States, No. 3:25-CV-1410-S, 2026 WL 63989, at *4 n.2 (N.D. Tex. Jan. 8, 2026). "Finally—and importantly—a dismissal for lack of jurisdiction is not an adjudication on the merits and, therefore, the plaintiff may pursue the claim elsewhere." McFarland v. Landry, No. 3:25-CV-01667, 2026 WL 801269, at *3 (W.D. La. Mar. 23, 2026) (citing Fed. R. Civ. P. 41(b)).

## DISCUSSION[1]

As a threshold matter, the Court will apply state law rules of contract interpretation to confirm that it is construing the disputed part of the Note ("Section E") correctly. See Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995); cf., e.g., Bittner v. Borne Chem. Co., 691 F.2d 134, 135

[1] The following accepts, *arguendo*, that Defendants assumed the Note. Because the Court ultimately dismisses the case for lack of subject-matter jurisdiction, however, this is not to be construed as any commentary on the merits of the case. Cf. McFarland, 2026 WL 801269, at *3.

(3d Cir. 1982) (holding that, in the bankruptcy context, "when [a] claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law").

Although the parties dispute whether Oregon or Texas law applies, the Court's interpretation of the Note is the same under the substantive law of either State. See, e.g., Parrott v. Int'l Bancshares Corp., 167 F.4th 728, 741 (5th Cir. 2026) ("When construing a contract, the terms are typically given 'their plain, ordinary, and generally accepted meaning.'" (quoting In re Davenport, 522 S.W.3d 452, 456–57 (Tex. 2017)); State v. Heisser, 249 P.3d 113, 120 (Or. 2011) ("'When considering a written contractual provision, the court's first inquiry is what the words of the contract say, not what the parties say about it.' Accordingly, courts should first 'examine[] the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.'" (first quoting Eagle Indus., Inc. v. Thompson, 900 P.2d 475, 478 (Or. 1995); and then quoting Yogman v. Parrott, 937 P.2d 1019, 1021 (Or. 1997))).

Under either Oregon or Texas law, the terms of the Note are clear: "There shall also be imposed upon BORROWER a 2% penalty for any late payment computed upon the amount of any principal and accrued interest whose payment to LENDER is overdue under this loan agreement . . . ." (Dkt. # 39-1 at 10.) The Note's terms indicate that "BORROWER will make payment(s) to LENDER in monthly payments according to the following schedule starting August 1, 2023." (Id. at 6.) This suit was filed on December

9, 2024. (Dkt. # 1.) Accordingly, on that date, the Court concludes that the plain language of the contract indicates that seventeen installments as defined in the Note had matured, so any claim Plaintiff could bring on the Note is capped at $18,187.96. (Dkt. # 39-1 at 6–11); see Parrott, at 741; Heisser, 249 P.3d at 120. Try as they might, Plaintiff cannot overcome the plain meaning of the Note. (See Dkt. # 63 at 7–8.) In short, that the text of the contract that suspended *all* payments for two years and then required *only* interest (without any payments made on the principal until two more years—*i.e.*, August 2025) could produce liability for 2% of the principal beginning on August 1, 2023, strains credulity. The Court cannot indulge Plaintiff's magical mathematics—its inquiry is limited to the plain and ordinary meaning of the Note's text. See Parrott, 167 F.4th at 741; Heisser, 249 P.3d at 120.

Thus, with the amount for which Plaintiff could sustain a claim on the Note's terms at $18,187.96, the Court's final inquiry is how much in attorney's fees, if any, Plaintiff had incurred at the time of filing. See Greenberg, 134 F.3d at 1253. As Defendants observe, the Fifth Circuit has not yet opined on an apparent circuit split regarding when an attorney's fee(s) may count towards the amount-in-controversy. (Dkt. # 63 at 3–4.) Compare Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 959 (7th Cir. 1998) (per Easterbrook, J.) (holding that "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount "in controversy' when the suit is filed" (citing Steel Co. v. Citizens

for a Better Env't, 523 U.S. 83 (1998))), with Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (per Ikuta, J.) (holding that, in the context of fee-shifting statutes, "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy")).

The Court is persuaded by the Seventh Circuit's holding in Gardynski-Leschuck because it suggests that the Supreme Court's decision in Steel Co., which controls across all circuits, forecloses the jurisdictional bootstrapping of prospective attorney's fees that may or may not materialize. See Gardynski-Leschuck, 142 F.3d at 959. To wit, a contrary conclusion appears to run afoul of Article III by prompting courts to issue advisory opinions and encouraging dilatory litigation tactics. Cf. id.; Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 667 (5th Cir. 1971) (holding that a court without jurisdiction "should apply its brakes, cease and desist the proceedings, and shun advisory opinions").[2] Even were the Court to add the Plaintiff's attorney's fees at the time of filing, which are alleged to be in excess of $5,000—and further assuming, *arguendo*, that the sum was closer to

[2] To the extent that Plaintiff suggests this Court's subject-matter jurisdiction can be waived or determined via a party's admission, they are incorrect. (Dkt. # 67 at 4). It is axiomatic that "a party may neither consent to nor waive federal subject matter jurisdiction." Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999). A federal court's obligation to assure itself of its own subject matter jurisdiction applies in each phase of litigation. See id.; Fed. R. Civ. P. 12(h)(3).

$10,000—the Court holds that the amount in controversy is closer to $30,000 than $75,846.41 as Plaintiff claims. (Dkt. # 1 at 4.) Accordingly, it is not satisfied that the amount in controversy exceeds $75,000 to a legal certainty, so it must **DISMISS** the case for lack of subject matter jurisdiction. See St. Paul Mercury, 303 U.S. at 288–90.

## CONCLUSION

For the reasons discussed above, Court **DISMISSES** the case for lack of subject matter jurisdiction. It **DENIES AS MOOT** the parties' respective Motions for Summary Judgment (Dkts. ## 39; 45) as well as Defendants' Motion for Leave to File a First Amended Answer (Dkt. # 65). The **CLERK** is **DIRECTED** to **CLOSE** the case.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, September 25, 2026.

David Alan Ezra
Senior United States District Judge